IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL S. RULLE FAMILY DYNASTY TRUST, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:10-cv-00231-PD |
| | : | |
| v. | : | Hon. Paul S. Diamond |
| | : | |
| AGL LIFE ASSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

ORDER

AND NOW, this          day of                    , 2010, upon consideration of Defendant's,

AGL Life Assurance Company's, Motion to Dismiss, and any opposition thereto, it is hereby

ORDERED and DECREED that the Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL S. RULLE FAMILY DYNASTY TRUST,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 2:10-cv-00231-PD** |
| **v.** ) | **Hon. Paul S. Diamond** |
| ) | |
| **AGL LIFE ASSURANCE COMPANY,** ) | |
| **Defendant.** ) | |

<u>**DEFENDANT AGL LIFE ASSURANCE COMPANY'S MOTION PURSUANT TO
RULES 12(b)(6) AND 9(b) TO DISMISS THE COMPLAINT**</u>

Defendant, AGL Life Assurance Company, by his undersigned counsel, and pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 9(b), respectfully requests that this Court dismiss

in its entirety the Complaint of Plaintiff, Michael S. Rulle Family Dynasty Trust.  The grounds

for this Motion are set forth in the attached Memorandum of Law, which is hereby incorporated

in full.

Dated: March 26, 2010

Respectfully submitted,

_____/s_____

Mathieu J. Shapiro
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania  19103-1895
Phone:  (215) 665-3000
Fax:  (215) 665-3165

Of Counsel:

-- and --

Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York  10022
Phone: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendant
AGL Life Assurance Company

4456737

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **MICHAEL S. RULLE FAMILY DYNASTY TRUST,** | ) ) | |
| **Plaintiff,** | ) | **Civil Action No. 2:10-cv-00231-PD** |
| **v.** | ) | **Hon. Paul S. Diamond** |
| **AGL LIFE ASSURANCE COMPANY,** | ) ) | |
| **Defendant.** | ) | |

---

**DEFENDANT AGL LIFE ASSURANCE
COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS**


Mathieu J. Shapiro
Obermayer Rebmann Maxwell &
    Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania  19103-1895
Phone:  (215) 665-3000
Fax:  (215) 665-3165

Of Counsel:

Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP LLP
919 Third Avenue
New York, New York  10022
Phone: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendant
AGL Life Assurance Company

4456737

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................ 3

LEGAL ARGUMENT ......................................................................................... 6

I.   The Breach of Contract Claim Should Be Dismissed Because The Plain Language Of The Contract Shows That There Was No Breach ...................................................... 7

   A.   Plaintiff's Account Was Properly Valued According To The Terms Of The Contract...... 8

   B.   There Is No Other Viable Basis For The Breach Of Contract Claim. ................................ 9

II.   The Federal And State Securities Fraud Claims Should Be Dismissed Because Of Plaintiff's Failure To Plead Fraud With Particularity As Required By Rule 9(b) And The Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) And (2) .................................. 10

III.   Plaintiff Fails To Plead The Essential Elements Of A Federal Or Pennsylvania Securities Law Violation ................................................................................................... 12

   A.   AGL Had No Duty To Notify Plaintiff That Madoff Was Involved In Funds In Which The Tremont Fund Invested .................................................................................... 13

   B.   The Omission Was Not Material ................................................................... 14

   C.   There Is No Adequate Allegation of Scienter ................................................. 15

IV.   The Pennsylvania Securities Fraud Claim Should Be Dismissed Because The Investment Is Not A Security Under Pennsylvania Law ......................................................... 17

V.   Plaintiff's Remaining Claims Are Governed By The Law of Pennsylvania ...................... 18

   A.   The Contractual Choice Of Law Provision Does Not Control These Claims .................. 18

   B.   Pennsylvania's Choice Of Law Rules Establish That Pennsylvania Law Governs These Claims ....................................................................................................... 20

VI.   The Breach Of Fiduciary Duties Claim Should Be Dismissed Because AGL Owed No Such Duties To Plaintiff............................................................................................ 26

VII.   The Breach Of Common Law Duty Of Good Faith And Fair Dealing Claim Should Be Dismissed Because It Is Precluded Under Pennsylvania Law............................................ 31

i

**VIII.** The Negligence And Gross Negligence Claim Should Be Dismissed Because AGL Owed Plaintiff No Duty Outside Of The Policy And The Claim Is Barred By The Economic Loss Doctrine .................................................................................................................................. 31

**IX.** The Negligent Misrepresentation Claim Is Not Cognizable At Law And Lacks Any Factual Support In The Complaint ................................................................................................. 33

   A. The Alleged Misrepresentations Are Non-Actionable Parol Statements ......................... 33

   B. Pennsylvania's "Economic Loss" And "Gist of the Action" Doctrines Bar Recovery .... 35

   C. Plaintiff Fails To State A Prima Facie Claim For Negligent Misrepresentation .............. 36

**X.** Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because Such A Claim Cannot Stand When There Is An Undisputed Contract That Governs The Transaction Between The Parties ............................................................................................................................. 38

CONCLUSION ........................................................................................................................ 39

4456737

# TABLE OF AUTHORITIES

### FEDERAL CASES

*2-J Corp. v. Tice*, 126 F.3d 539 (3d Cir. 1997)....................................................32

*Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491 (E.D. Pa. 2008) ............................22, 38

*ASCG, Inc. v. Coffman*, No. 98-35685, 2000 U.S. App. LEXIS 21015 (9th Cir. Aug. 16, 2000) ..............................................................................................7

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ....................................................6, 7, 10, 15, 16, 33, 36

*Basic, Inc. v. Levinson*, 485 U.S. 224, 236, 108 S.Ct. 978 (1988)................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................6, 10, 27, 33

*Berkowitz v. Conrail, Inc.*, No. Civ. A. 97-1214, 1997 WL 611606 (E.D. Pa. Sept. 25, 1997) ..............................................................................................13

*Binary Semantics Ltd. v. Minitab, Inc.*, Civ. A. No. 4:07-CV-1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008)..............................................................27

*Black Box Corp. v. Markham*, 127 Fed. Appx. 22 (3d Cir. 2005) ................................19

*Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394 (E.D. Pa. 2002).....................................................22, 31, 35

*City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463 (M.D. Pa. 1985) ............................13

*Coram Healthcare Corp. v. Aetna U.S. Healthcare*, 94 F. Supp. 2d 589 (E.D. Pa. 1999)............19

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995) ............................32

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)............................................10

*Fox v. Equimark Corp.*, 782 F. Supp. 295 (W.D. Pa. 1991)..........................................11

*Grimm v. Discover Fin. Serv.*, Civ. A. Nos. 08-747, 08-832, 2008 U.S. Dist. LEXIS 89709, 2008 WL 4821695 (W.D. Pa. Nov. 4, 2008) ................................................19

*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007) ..................................18, 20

*Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989 (3d Cir. 1987) ................................38

*Huber v. Taylor*, 469 F.3d 67 (3d Cir. 2006) ..............................................20

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) ......................................15

*In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993) ...................14, 15

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) ..........................................14

*In re Nutrisystem Sec. Litig.*, 653 F. Supp. 2d 563 (E.D. Pa. 2009) .............................16

*In re TCW/DW N. Am. Gov't. Income Trust Sec. Litig.*, 941 F. Supp. 326 (S.D.N.Y. 1996)........37

*In re: Exxon Valdez Polar Equip. Inc. v. Exxon Mobil Corp.*, 318 Fed. Appx. 545 (9th Cir. 2009) ..................................................................................................................7

*Institutional Investors Group v. Avaya*, 564 F.3d 242 (3d Cir. 2009) ...........................15

*Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569 (E.D. Pa. 1994) .........18

*Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)..................................................18

*Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693 (E.D. Pa. 2008) ....................11, 12

*Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1990)........26

*McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007) ......................................12

*N. Am. Roofing & Sheet Metal Co., Inc. v. Bldg. & Constr. Trades Council of Philadelphia & Vicinity*, No. 99-2050, 2000 WL 230214 (E.D. Pa. Feb. 29, 2000)..............35

*New England Data Servs., Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987) ......................11

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir. 1993) ...................4

*Pryor v. NCAA*, 288 F.3d 548 (3d Cir. 2002) ..................................................................4

*Rock v. Voshell*, 397 F. Supp. 2d 616 (E.D. Pa. 2005) ..................................................32

*Rosen v. Commc'n Serv. Group*, 155 F. Supp. 2d 310 (E.D. Pa. 2001) ...........10, 11, 12

*Slemrod v. Yardley Sav. and Loan Ass'n*, Civ. A. No. 88-9078, 1990 WL 158620 (E.D. Pa. Oct. 15, 1990) ..................................................................................................13

*Smith v. Lincoln Benefit Life Co.*, Civ. A. No. 08-01324, 2009 U.S. Dist. LEXIS 24941 (W.D. Pa. Mar. 23, 2009)...................................................4, 18, 19, 20, 21, 22, 30

*Specialty Ins. v. Royal Indem. Co.*, 324 F. Supp. 2d 674 (E.D. Pa. 2004).....................32

iv

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644 (W.D. Pa. 1999) ................................................................................................................32, 35

*Taylor v. First Union Corp. of S. Carolina*, 857 F.2d 240 (4th Cir. 1988) .................2, 13, 33, 36

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...............................................15

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) .......................................................14, 24

*Wallace v. Sys. & Computer Tech. Corp.*, No. Civ. A. 95-CV-6303, 1997 WL 602808 (E.D. Pa. Sept. 23, 1997) ........................................................................................................4

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007).........................................................16

*Zavecz v. Yield Dynamics*, 179 Fed. Appx. 116 (3d Cir. 2006)................................................7, 20

## ALASKA STATE CASES

*Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936 (Alaska 1990)..............................................22

*Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743 (Alaska 1987).................................................22

*Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374 (Alaska 1984) .....................................................23

*Cousineau v. Walker*, 613 P.2d 608 (Alaska 1980) .......................................................................23

*Edenshaw v. Safeway, Inc.*, 186 P.3d 568 (Alaska 2008)..............................................................21

*Estate of Polushkin ex rel. Polushkin v. Maw*, 170 P.3d 162 (Alaska 2007)..................................7

*Fairbanks N. Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020 (Alaska 1986)..........................7

*Foster v. Cross*, 650 P.2d 406 (Alaska 1982) ...............................................................................23

*Indus. Commercial Elec., Inc . v. McLees*, 101 P.3d 593 (Alaska 2004) ......................................23

*Johnson v. Curran*, 633 P.2d 994 (Alaska 1981).........................................................................33

*O.K. Lumber Co., Inc. v. Providence Washington Mut. Ins. Co.*, 759 P.2d 523 (Alaska 1988) ...............................................................................................................................30, 31

*S. Alaska Carpenters Trust Fund v. Jones*, 177 P.3d 844 (Alaska 2008).......................................23

*Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079 (Alaska 2008) .......................................21

*State v. Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d 1329 (Alaska 1981)................................7

v

*Still v. Cunningham*, 94 P.3d 1104 (Alaska 2004)........................................................................33

*Valdez Fisheries Dvpt. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657 (Alaska 2002) .........................................................................................................................................7


PENNSYLVANIA STATE CASES

*Atchison Casting Corp. v. Deloitte & Touche, LLP*, No. 003193, 2003 WL 1847665 (Pa. Com. Pl. Mar. 14, 2003) ..............................................................................................29

*Bortz v. Noon*, 729 A.2d 555 (Pa. 1999)...............................................................................23, 36

*Chenot v. Metro. Life Ins. Co.*, 47 Pa. D & C.4th 332 (Pa. Com. Pl. 2000) .................................30

*Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134 (Pa. 2008) .................................21, 31

*Decker v. Nationwide Ins. Co.*, 83 Pa. D. & C.4th 375 (Pa. Com. Pl. 2007)................................30

*Elliott v. Clawson*, 204 A.2d 272 (Pa. 1964) ...............................................................................27

*Estate of Evasew*, 584 A.2d 910 (Pa. 1990)..................................................................................26

*Estate of Thomas*, 344 A.2d 834 (Pa. 1975) .................................................................................26

*eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002)................21, 26, 27, 32

*Frowen v. Blank*, 425 A.2d 412 (Pa. 1981) ...................................................................................26

*Henry v. First Fed. Sav. & Loan Ass'n of Greene County*, 459 A.2d 772 (Pa. Super. 1983)........31

*Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916 (Pa. Super. Ct. 2002)..........................................7

*Silver v. Silver*, 219 A.2d 659 (Pa. 1966).....................................................................................26

*Smith v. Renaut*, 299 A.2d 188 (Pa.Super. 1989) ........................................................................13

*Villoresi v. Femminella*, 856 A.2d 78 (Pa. Super. 2004) .............................................................38

*Wiernik v. PHH U.S. Mortgage Corp.*, 738 A.2d 616 (Pa. Super. Ct. 1999) .........................22, 38

*Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425 (Pa. 2004).....................................................33

*Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 31053838 (Pa.Com.Pl. Sept. 11, 2002) ........................................................................................................................................13

vi

**FEDERAL STATUTES**

Private Securities Litigation Reform Act, 15 U.S.C. 78u-4(b)(2) ....................................10, 11, 15

Securities Exchange Act of 1934, 15 U.S.C. §78j ...........................................................................6

**STATE STATUTES**

Pennsylvania Securities Act, 70 P.S. § 1-101, *et seq.*....................................................6, 11, 12, 17

**OTHER AUTHORITIES**

E.D. Pa. R. Civ. P. 5.........................................................................................................................2

Fed. R. Civ. P. 9 ......................................................................................1, 2, 10, 11, 12, 15, 16

Fed. R. Civ. P. 12 ............................................................................................................................1

Restatement (Second) of Conflict of Laws .............................................................................20, 24

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ...........................................................................6, 11, 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| **MICHAEL S. RULLE FAMILY DYNASTY TRUST,** | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 2:10-cv-00231-PD** |
| v. | ) | **Hon. Paul S. Diamond** |
| **AGL LIFE ASSURANCE COMPANY,** | ) | |
| Defendant. | ) | |
| | ) | |

---

**DEFENDANT AGL LIFE ASSURANCE COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Defendant AGL Life Assurance Company ("Defendant" or "AGL") respectfully submits this memorandum in support of its motion, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss in its entirety the Complaint of The Michael S. Rulle Family Dynasty Trust ("Plaintiff" or the "Rulle Trust").

## PRELIMINARY STATEMENT

This action is no more than an attempt by a highly sophisticated investor to make AGL, which issued an insurance policy to Plaintiff, responsible for losses that arose from an investment that he selected within that policy.  Michael Rulle ("Rulle"), an experienced hedge fund manager, requested AGL to issue a flexible premium life insurance policy through which he could invest substantial sums of money in a tax-protected manner.  Rulle, through the Rulle Trust he created, selected a fund that eventually became known as the Tremont Opportunity Fund III ("Tremont Fund"), in which he invested the premiums paid under his policy with AGL.

The Tremont Fund invested the monies it received with numerous funds and fund managers pursuant to its stated multi-manager investment strategy.  One of the funds in which

Tremont invested, in turn, allocated its assets to the management of Bernard Madoff.  More than seven years after Plaintiff initiated its investment, authorities exposed the massive fraud perpetrated by Madoff and the billions of dollars of investor losses Madoff had caused.  Funds that had invested with Madoff consequently lost much, if not all, of their value.  As a result, the value of the Tremont Fund suffered to the extent it had invested indirectly in Madoff-managed accounts.  Plaintiff's policy account correspondingly lost value.

Although there is no suggestion that AGL was in any way responsible for Tremont's investments or Madoff's fraud, Plaintiff nevertheless seeks to have AGL shoulder the losses attributable to Madoff's fraud.  There is no basis in law to support that result, and none of the eight claims for relief contained in the Complaint can be otherwise sustained.  Plaintiff first asserts a breach of contract claim, arguing that the loss in value ultimately associated with the Madoff fraud is "expressly precluded from consideration in the valuation" of his account within the policy.  *See* Compl. ¶34.[1]  None of the policy's terms, however, support Plaintiff's claim—in fact, they expressly contradict that conclusion.

Plaintiff's claims for federal and state law securities fraud should also be dismissed.  *First*, the Complaint fails entirely to plead the degree of detail required by Rule 9(b).  *Second*, even on the bare details provided, it is clear that the claims would be dismissed because the alleged statements or omissions were, as a matter of law, either not actionable, not material or not susceptible to plausible reliance.

Plaintiff's remaining claims also fail as a matter of law.  Plaintiff asks the Court to impose a host of fiduciary duties on AGL beyond the specific contractual duties AGL undertook.

---

[1] "Compl." is used hereinafter in reference to Plaintiff's Complaint, and "Compl. Ex. A" is used to reference pages exhibited with the complaint.  "Mem. Ex." is used hereinafter to reference exhibits attached to Defendant's Memorandum.  The exhibits to Defendant's Memorandum are filed separately in hard copy per E.D. Pa. R. Civ. P. 5.1.2 (6).

In addition to courts' general refusal to impose duties when an express contract governs the parties' relationships, here the arms-length nature of the parties' agreement, and the fact that AGL merely provided a policy through which Plaintiff chose to make an investment in a third party fund, fatally undermine any implication of such duties.  Moreover, the duties sought to be imposed are at odds with the parties' respective obligations under the policy and [are] inconsistent with the language of the private placement memorandum relied on by Plaintiff.  *See* Compl. ¶¶26-32.  For the same reasons, Plaintiff's claims for breach of a common law duty of good faith and fair dealing, negligence, negligent misrepresentation and unjust enrichment should be rejected on the merits, as well as on the principle that a plaintiff may not pursue a tort theory when a contract governs the duties the parties owe to one another.

Because Plaintiff fails to assert a viable claim for relief, the Complaint should be dismissed in its entirety.

## **BACKGROUND**[2]

AGL offers to customers certain financial products, including variable life insurance policies that are "designed to allow policyholders to invest a portion of their premiums in optional investment accounts which are offered under the policy" so that the "gains inside the policy are shielded from income taxes."  Compl. ¶14.  The policies are sold in private placements only to accredited investors who meet certain minimum financial tests.  Michael Rulle, the grantor of the Rulle Trust, is a highly sophisticated investment professional who ran the hedge fund at Hamilton Partners Ltd. and was previously a top executive of CIBC Oppenheimer.  At the time he applied for the AGL policy, Rulle had a stated net worth exceeding $23 million and $11,750,000 of life insurance in force. Policy, pp. 9-11 at Compl. Ex. A., pp. 44, 47.  In or

---

[2] AGL moves based on the facts alleged in the Complaint, which AGL assumes to be true solely for the purposes of this motion.

around October 2001, AGL and Rulle, through his Trust, entered into a Flexible Premium

Variable Life Insurance Contract (the "Policy" or "Contract").  Compl. ¶15.

Prior to the issuance of the Policy, Rulle received from AGL, the AGL Life Assurance

Company Private Placement Memorandum ("AGL PPM"), dated October 2, 2001, which

attached the American Masters Opportunity Fund, L.P., Confidential Private Placement

Memorandum, dated January 1, 2001 (the "Tremont PPM"), and the Limited Partnership

Agreement of the American Masters Opportunity Insurance Fund, L.P, also dated January 1,

2001 (the "LPA").[3] Mem. Exs. 1-3.  The American Masters Opportunity Insurance Fund, L.P.

later became known as the Tremont Opportunity Insurance Fund, L.P., which later became the

Tremont Opportunity Fund III, L.P. (hereinafter, collectively referred to as the "Tremont Fund").

The risks involved with the investment in the Tremont Fund that Rulle was considering

and the limits of AGL's involvement with Tremont's underlying investments were extensively

described in the AGL PPM and its accompanying documents.  The AGL PPM clearly and

prominently stated, "The Account Value under the Policy will . . . vary with the investment

---

[3] In addition to attaching the Policy and application materials, the Complaint references the private placement memorandum used "[i]n connection with [Plaintiff's] selection of investment alternatives under the Policy/Contract." Compl. ¶26.  The private placement memorandum received and relied on by Plaintiff for the selection of its investment was the AGL PPM dated October 2, 2001 and its accompanying documents, the Tremont PPM and the LPA.  These documents are attached as Memorandum Exhibits 1-3 (hereinafter, Mem. Exs. 1-3).  The Complaint goes on to identify in ¶¶26-31 a Private Placement Memorandum issued in 2008 (the "2008 Tremont PPM") and an accompanying Limited Partnership Agreement (the "2008 LPA").  Those documents, which Plaintiff failed to attach to its Complaint, are attached as Mem. Exs. 4 and 5, respectively.  These documents, in addition to those attached to the Complaint, are appropriately considered on a motion to dismiss pursuant to 12 (b)(6) because they are referenced and relied on in the Complaint.  *Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2002) ("documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiffs' complaint and are central to the claim*; as such they may be considered by the court") (emphasis in original) (internal citations omitted); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (same; "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied"); *Wallace v. Sys. & Computer Tech. Corp.*, No. Civ. A. 95-CV-6303, 1997 WL 602808, at *5 (E.D. Pa. Sept. 23, 1997) ("a court may properly refer to the factual allegations contained in the complaint, exhibits attached thereto, documents referenced therein, matters of public record, and undisputedly authentic documents attached as exhibits to the defendant's motion to dismiss if plaintiff's claims are based on those documents") (citing *Pension Benefit Guar. Corp.*, 998 F.2d at 1196)); *Smith v. Lincoln Benefit Life Co.*, Civ. A. No. 08-01324, 2009 U.S. Dist. LEXIS 24941, at *13 (W.D. Pa. Mar. 23, 2009) (same) (internal citations omitted).

4

performance of the Investment Accounts.  The Policy Owner bears the entire investment risk under the Policy."  AGL PPM, Mem. Ex. 1, p. 1.  Moreover, the document warned with respect to the Tremont Fund under the Policy, "THERE CAN BE NO ASSURANCE THAT THE INVESTMENT OBJECTIVE OF ANY INVESTMENT ACCOUNT WILL BE ACHIEVED." AGL PPM, Mem. Ex. 1, p. 37.

Both the AGL PPM (Mem. Ex. 1, p. 38) and the Tremont Fund PPM (Mem. Ex. 2, p. iii, 1) disclosed that the Fund used a multi-manager investment strategy by which the General Partner of the Fund (Tremont Partners, Inc.) makes investments through a variety of managers pursuing various strategies and trading techniques.  The General Partner retained full discretion in selecting these managers.[4]  Nowhere in the materials is any fund manager identified, not the Rye Funds identified by Plaintiff in its Complaint that were victimized by Madoff, or any other. *See* Compl. ¶9.

When Plaintiff accepted the Policy, it directed that 100% of its net premiums be allocated to the Tremont Fund.  Policy, p. 13 at Compl. Ex. A, p. 34.  *See* Compl. ¶5 (alleging that Plaintiff was given discretion to invest some or all of its premium in the Tremont Fund), ¶24 ("Plaintiff was allowed to choose how the Policy/Contract was allocated" and it allocated the annual net premium to the Tremont Fund).  The Policy detailed the method by which Plaintiff's holdings under the agreement would be valued in accordance with the value of the Tremont Fund (Policy, pp. 13-15 at Compl. Ex. A., pp. 34-36), and stated, "The Account Value of this Contract on any date is the value of the Investment Accounts plus the value of the Borrowed Fund." (Policy, p. 15 at Compl. Ex. A., p. 36).

---

[4] The General Partner, Tremont Partners, Inc., is not affiliated with AGL.  Under the terms of the Limited Partnership Agreement, AGL (together with other insurance companies) are limited partners with no right to manage or control the Partnership in connection with any matter, including investment decisions or the selection of fund managers. LPA, Mem. Ex. 3, pp. 8-11.

In December 2008, after AGL was informed of the Tremont Fund's exposure to Bernard

Madoff's fraudulent investment activities and the consequent loss in the Fund's value, AGL

promptly notified its affected policyholders, including Plaintiff, who had invested in the Tremont

Fund Investment Account, about the loss in value of the Investment Account and, therefore, their

reduced Policy values.[5]

## LEGAL ARGUMENT

Plaintiff's Complaint, filed January 19, 2010, contains the following eight counts:

(1) breach of contract; (2) breach of fiduciary duty; (3) breach of common law duty of good faith

and fair dealing; (4) federal securities fraud pursuant to 15 U.S.C. §78j(b) and 17 C.F.R.

§240.10b-5(b); (5) securities fraud under the Pennsylvania Securities Act, 70 P.S. §1-101, *et*

*seq.*; (6) negligence and gross negligence; (7) negligent misrepresentation; and (8) unjust

enrichment.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

pleading that offers 'labels and conclusions' or a 'formulaic recitation' of the elements of a cause

of action will not do. . . . Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S.

at 555). Thus, a court should "begin [its] analysis by identifying the allegations in the complaint

that are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951. The court should "next

---

[5] The Complaint incorrectly alleges that Plaintiff received such notification from AGL on or about November 30, 2008. Compl. ¶22. But as the Complaint elsewhere correctly notes, Madoff's fraud was not exposed until Madoff's arrest on December 11, 2008. Compl. ¶6.

consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.*

For the reasons discussed below, the Complaint wholly fails to allege "sufficient factual matter . . . [that] state[s] a claim to relief that is plausible on its face[,]" and should thus be dismissed in its entirety. *Id.* at 1949. In addition, several of the claims suffer from a lack in a basis in law to support them.

## I.      The Breach of Contract Claim Should Be Dismissed Because The Plain Language Of The Contract Shows That There Was No Breach

Pennsylvania courts enforce choice of law provisions in contracts. *Zavecz v. Yield Dynamics*, 179 Fed. Appx. 116, 120 (3d Cir. 2006) ("[i]n contract disputes, Pennsylvania courts generally honor the parties' choice of law provisions") (citing *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. Ct. 2002)). Here, as Plaintiff acknowledges, the Policy contains a choice of law provision selecting Alaska law to govern the Policy's terms. Policy, pp. 1, 3, 9 at Compl. Ex. A., pp. 22, 24, 30.

Contract interpretation under Alaska law is a matter of law to be decided by the courts where the facts and surrounding circumstances are not in dispute. *State v. Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d 1329, 1331 n. 5 (Alaska 1981) (internal citations omitted); *Fairbanks N. Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020, 1024 (Alaska 1986) ("Generally, interpretation of words in a contract is a task for the court.") (internal citations omitted); *see also Valdez Fisheries Dvpt. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 665 n. 13 (Alaska 2002) (same; upholding lower court's dismissal of plaintiff's contract claim). Courts must "ascertain and give effect to the reasonable intentions of the contracting parties." *In re: Exxon Valdez Polar Equip. Inc. v. Exxon Mobil Corp.*, 318 Fed. Appx. 545, 546 (9th Cir. 2009) (citing *Estate of Polushkin ex rel. Polushkin v. Maw*, 170 P.3d 162, 167 (Alaska 2007)).

7

"A contract is ambiguous only if, taken as a whole, it is reasonably subject to differing interpretations." *ASCG, Inc. v. Coffman*, No. 98-35685, 2000 U.S. App. LEXIS 21015, at *4 (9th Cir. Aug. 16, 2000) (citing *Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d at 1331 n. 4).  Here, there is only one reasonable reading of the Policy as to the matters alleged, and that reading belies Plaintiff's claim.

      A.     *Plaintiff's Account Was Properly Valued According To The Terms Of The Contract*

Plaintiff claims that AGL breached the Contract by devaluing Plaintiff's policy account because of a loss suffered by the Tremont Fund, the Investment Account in which all of Plaintiff's net premiums were invested.  This theory is explicitly contradicted by the unambiguous provisions of the Policy, which tie Plaintiff's policy account value to the value of the Investment Account.

The Policy states clearly that "[t]he Account Value will increase or decrease in accordance with the increases and decreases in the value of the Investment Accounts in which the Account Value is invested."  Policy, p. 14 at Compl. Ex. A., p. 35.  The Policy further provides that "[t]he Account Value of this Contract on any date is the value of the Investment Accounts plus the value of the Borrowed Fund." Policy, p. 15 at Compl. Ex. A., p. 36.[6]

The value of an Investment Account, according to the Policy, reflects a number of circumstances, including, among others:

- The investment income and realized and unrealized capital gains credited to such assets . . .;

- Any amounts transferred from an Investment Account . . . ;

---

[6] The Borrowed Fund, which is not relevant to this action, is simply an amount deducted from the Investment Account that is equivalent to the principal of and held as collateral for any outstanding loans taken out by the policyholder on the contract. Policy, p. 9, 15 at Compl. Ex. A., p. 30, 36.

- Realized and unrealized capital losses charged against those assets . . . .

Policy, p. 13 at Compl. Ex. A., p. 34.

The Tremont Fund, chosen by Plaintiff for the investment of all of its policy premiums, suffered capital losses as a result of losses incurred by funds in which it invested, which ultimately derived from the fraud perpetrated by Bernard Madoff. Thus, the value of the Investment Account was accordingly reduced, and consequently, Plaintiff's policy account lost value. Remarkably, Plaintiff acknowledges this to be the correct operation of the Policy: "The policy provided that Plaintiff's account was to be valued in accordance only with the capital gains or losses and interest of the funds in which it invested." Compl. ¶4. Of course, that is precisely what happened.

Plaintiff's sole contention is that Plaintiff's account was to be valued solely based on "investment performance" and administrative charges, and that losses ultimately derived from Madoff's fraudulent action cannot be considered. Compl. ¶¶34-36. This argument is nonsensical and at odds with the plain language of the Policy on which Plaintiff relies. Losses that the Tremont Fund experienced because certain funds in which it invested reported losses due to the Madoff fraud is indisputably a capital loss of the Tremont Fund. Nowhere does the contract support Plaintiff's further gloss on that language that an actual loss of investment value which traces down to fraud by a second-tier fund manager is excluded. Plaintiff's claim is therefore wholly meritless on the clear language, as well as logic, of the Policy.

B. *There Is No Other Viable Basis For The Breach Of Contract Claim.*

Although not asserted as a basis for the breach of contract claim in Count I (Compl. ¶¶34-37), Plaintiff suggests in other parts of the Complaint that AGL also breached the Policy by investing Plaintiff's premiums with Tremont, thereby causing some of that money to be invested by Tremont in funds or accounts ultimately victimized by Madoff. Compl. ¶¶6 and 53.

9

This theory, if properly considered as part of the contract claim, nevertheless fails on even the most cursory reading of the Policy, which provides explicitly that "Net Premiums are allocated to or among Investment Accounts in accordance with [the Rulle Trust's] instructions . . . ." Policy, p. 12 at Compl. Ex. A., p. 33. Plaintiff elected to invest 100% of its Policy premiums with Tremont; AGL would, therefore, have been in breach of the contract had it *not* invested Plaintiff's monies as directed. Compl. Ex. A., p. 48. Moreover, there is no allegation anywhere that AGL even knew what managers Tremont was investing with, let alone that AGL was aware that one of those managers was itself placing money with Madoff. Without such an allegation of fact—which on the face of the PPMs would lack credibility—this contention must be rejected. *Twombly,* 550 U.S. at 555, 561-70 (to survive a motion to dismiss, the complaint must set forth factual allegations sufficient to "raise a right to relief above the speculative level"); *Iqbal,* 129 S.Ct. at 1949-50 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." (internal citations omitted)); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (plaintiff required to plead "more than the possibility of relief to survive a motion to dismiss").

**II.     The Federal And State Securities Fraud Claims Should Be Dismissed Because Of Plaintiff's Failure To Plead Fraud With Particularity As Required By Rule 9(b) And The Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) And (2)**

Plaintiff's fraud claims do not satisfy Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he rule ordinarily mandates plaintiffs to plead the 'who, what, when, and where' details of the alleged fraud . . . . [P]laintiffs must employ some means to 'inject[ ]

10

precision and some measure of substantiation into their allegations of fraud.'" *Rosen v. Commc'n Serv. Group*, 155 F. Supp. 2d 310, 316-17 (E.D. Pa. 2001) (internal citations omitted). The purpose of Rule 9(b) is threefold: "(1) to place the defendants on notice and to enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." *Fox v. Equimark Corp.*, 782 F. Supp. 295, 298 (W.D. Pa. 1991) (quoting *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987)).  Likewise, securities fraud claims under the Pennsylvania Security Act, 70 P.S. §1-101, *et seq.*, must satisfy Rule 9(b) and meet substantially the same elements as federal securities fraud claims brought under Rule 10b-5.  *See Rosen*, 155 F. Supp. 2d at 320 n.14 (noting that "the PSA is modeled after Rule 10b-5 of the federal securities laws, and requires virtually the same elements of proof"); *Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693, 712 (E.D. Pa. 2008).

Similarly, under the Private Securities Litigation Reform Act (the "PSLRA"), a complaint alleging federal securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see Rosen*, 155 F. Supp. 2d at 317.  "The Reform Act also requires the complaint to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [ i.e., scienter].'" *Rosen*, 155 F. Supp. 2d at 317 (E.D. Pa. 2001) (citing 15 U.S.C. § 78u-4(b)(2)).

Notwithstanding the stringent particularity requirements for pleading fraud, it is difficult even to determine from the Complaint what statements or omissions form the bases of Plaintiff's claim.  Paragraphs 57 through 59 appear to attempt to allege a misstatement, but Plaintiff never

11

says precisely what the alleged misstatement is, when it was made or by whom.  No reference is made to the contents of the Policy or the PPM materials as the source of this alleged misrepresentation, no doubt because no such statements appear.  Similarly, the Complaint alleges a fraudulent omission in asserting that "Defendant failed to disclose to Plaintiff that the premiums entrusted to Defendant would be invested in fund groups controlled by Madoff." (Compl. ¶62)  But Plaintiff provides no information as to what makes this omission fraudulent; indeed, there is no allegation that AGL even knew that Madoff was a manager used by a fund in which Tremont invested.  Plaintiff's conclusory assertions do not even approach the level of particular detail that would satisfy Rule 9(b) or the PSLRA.

### III.     Plaintiff Fails To Plead The Essential Elements Of A Federal Or Pennsylvania Securities Law Violation

To state a claim for federal securities fraud under Rule 10-b(5), Plaintiff must show (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) made in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss.  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (internal citations omitted).  Similarly, to plead a claim under §§ 1-401(b) and 1-501(g) of the Pennsylvania Securities Act (which tracks the language of Rule 10b-5 promulgated by the SEC under the analogous federal law), a plaintiff must establish: 1) a representation or omission; 2) which is material to the transaction at hand; 3) made or concealed falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance.  *Majer*, 541 F. Supp. 2d at 712 (internal citations omitted); *see also Rosen*, 155 F. Supp. 2d at 321 n. 14.

12

The only specific misrepresentation or omission pled for both claims is that AGL "failed to disclose that the premiums entrusted to Defendants would be invested in fund groups controlled by Madoff." Compl. ¶¶62, 70. This alleged omission is not actionable for several reasons.

A.      AGL Had No Duty To Notify Plaintiff That Madoff Was Involved In Funds In Which The Tremont Fund Invested

There is no general duty to disclose information unless disclosure is necessary to make Defendants' other statements, whether mandatory or volunteered, not misleading. *Taylor v. First Union Corp. of S. Carolina*, 857 F.2d 240, 243-44 (4th Cir. 1988) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 236, 108 S.Ct. 978, 987 n. 17 (1988)); *Berkowitz v. Conrail, Inc.*, No. Civ. A. 97-1214, 1997 WL 611606, at *13-14 (E.D. Pa. Sept. 25, 1997); *Slemrod v. Yardley Sav. and Loan Ass'n*, Civ. A. No. 88-9078, 1990 WL 158620, at *4 (E.D. Pa. Oct. 15, 1990). Otherwise, an omission is generally actionable "only when there is an independent duty," such as a fiduciary duty, "to disclose the omitted information." *City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463, 473 (M.D. Pa. 1985); *Smith v. Renaut*, 299 A.2d 188, 192 (Pa.Super. 1989) ("While a concealment may constitute fraud, [under Pennsylvania law,] mere silence is not sufficient in the absence of a duty to speak"); *Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 31053838, at *2 (Pa.Com.Pl. Sept. 11, 2002) (In fraud action under Pennsylvania law, "for silence to be actionable there must be a duty to speak").

Here, Plaintiff has not identified any statements by AGL that were allegedly made misleading by the nondisclosure of Madoff's identity as an ultimate fund manager selected by Tremont. What the PPMs disclosed was that the Tremont Fund used a multi-manager concept whereby assets were placed with "a variety of managers utilizing different, and if possible, non-correlated investment strategies and trading techniques." AGL PPM, Mem. Ex. 1, p. 38; Tremont

13

PPM, Mem. Ex. 2, p. 1.  Plaintiff does not contend that investments were directly placed with

Madoff, but rather that Tremont invested in various other limited partnerships under the Rye

name that Plaintiff contends were "controlled" by Madoff.[7]  But nowhere do the PPMs or Policy

identify any underlying fund manager by name or description, nor does Plaintiff identify any

representation that money would not be placed with Madoff or that would otherwise have limited

the Tremont Fund's discretion to allocate assets to his firm.  To the contrary, the offering

materials make clear that selection of managers was solely the responsibility of the General

Partner (Tremont PPM, Mem. Ex. 2, pp. 1-3), and that AGL, as a Limited Partner, had no role in

the management of the Tremont Fund. *See* LPA, Mem. Ex. 3, p. 8, § 3.01. Having made no

affirmative representations that would have created any expectation that funds would not be

invested with Madoff, there is no basis for holding AGL liable for a securities law violation for

not disclosing that funds might be so invested.

> B.      *The Omission Was Not Material*

"[A]n omitted fact is material if there is a substantial likelihood that a reasonable

[investor] would consider it important in deciding how to [act]."  For an omission to be deemed

material, "there must be a substantial likelihood that [its disclosure] would have been viewed by

the reasonable investor as having significantly altered the 'total mix' of information made

available." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) (quoting

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448-49 (1976) (internal citations omitted)).

Moreover, to be actionable, an omission must have been misleading at the time it occurred rather

than in hindsight after the occurrence of subsequent events. *In re NAHC, Inc. Sec. Litig.*, 306

---

[7] While for purposes of this motion Defendant does not dispute that allegation, it notes that the Rye limited partnerships were separate and distinct funds, which, in turn, gave money to  Madoff to manage.

F.3d 1314, 1330 (3d Cir. 2002) (defendants "are not obligated to predict future events unless there is reason to believe that they will occur") (internal citations omitted).

Plaintiff includes only conclusory statements in ¶¶63 and 64 of the Complaint that "Defendant's misrepresentations and/or omissions were material . . ." without specifying any factual details as to why that conclusion follows, in violation of Fed. R. Civ. P. 9(b) and the holding of *Iqbal,* 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). As Plaintiff's theory makes clear, the only ostensible relevance of knowing that Madoff was an underlying fund manager, was that he was engaged in a massive fraud. Thus, the identity of Madoff as a fund manager did not become "material" until his fraud was exposed in December 2008. None of the parties are alleged to have been aware or to have had reason to suspect that Madoff was engaged in a massive Ponzi scheme until news of his arrest broke. Prior to the exposure of Madoff's fraud, the identity of Madoff as a manager of some of the ultimate funds in which Tremont invested was simply not information that Rulle, as "a reasonable [investor] would consider . . . important in deciding how to [act]." *In re Donald J. Trump Casino*, 7 F.3d at 369 (internal citations omitted).

C.      *There Is No Adequate Allegation of Scienter*

The Third Circuit defines scienter as constituting "either reckless or conscious behavior." *Institutional Investors Group v. Avaya*, 564 F.3d 242, 267 (3d Cir. 2009) (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534-35 (3d Cir. 1999)). For a federal securities fraud claim to survive a motion to dismiss, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (citing 15 U.S.C. 78u-4(b)(2)). The Supreme Court recognized that the PSLRA's "strong inference standard

15

unequivocally raised the bar for pleading scienter." *Id.* at 321.  A fraud claim satisfies the "strong inference" standard only if a reasonable person would find that "the facts . . . give rise to a 'strong,' i.e., a powerful or cogent inference that is at least as compelling as any opposing inference." *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *see In re Nutrisystem Sec. Litig.*, 653 F. Supp. 2d 563, 573-74 (E.D. Pa. 2009) (dismissing securities fraud claims because "taken in its entirety plaintiff's complaint fails to raise an inference of scienter that is strong in light of competing nonculpable inferences").

Although the PSLRA does not apply to Plaintiff's claim under the PSA, that claim must still meet the pleading requirements found in Rule 9(b) and the Supreme Court's holding in *Iqbal.* 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [P]leadings that . . . are no more than conclusions [] are not entitled to the assumption of truth.").

Plaintiff once again merely mimics the necessary element of the statutes, conclusorily asserting that the misrepresentations and omissions were "made knowingly, with reckless disregard for their truth or falsity and/or without a genuine belief that the information disclosed was accurate and complete in all material respects." Compl. ¶64.  The Complaint provides not even a hint as to how AGL was to know that Tremont had invested in a fund that had in turn placed money with Madoff, especially in view of the repeated disclosures in the PPM that the General Partner, and not AGL, was exclusively responsible for the selection of investments.  In fact, the lack of transparency even to the General Partner of investments made by the managers it selected (in this case the Rye funds) was explicitly disclosed as a "Main Partnership Risk" in the PPM.  *See* AGL PPM, Mem. Ex. 1, p. 39 ("The General Partner may not always be provided with detailed information regarding all of the investments made by the Managers because certain

16

of this information may be considered proprietary.")  In the absence of any supporting factual allegations, it is impossible to conceive what the basis can be for attributing to AGL knowledge of Madoff and his long-concealed fraudulent scheme.

Because the Complaint is inherently deficient in setting forth the necessary elements of a securities fraud claim under federal and Pennsylvania law, those claims fail and should be dismissed.

## IV.     The Pennsylvania Securities Fraud Claim Should Be Dismissed Because The Investment Is Not A Security Under Pennsylvania Law

Plaintiff's claim under the Pennsylvania Security Act must be rejected for the independent reason that the Policy is not a security under the Act.  Specifically, the definition of "Security" under the Act expressly provides that "'Security' does not include: Any insurance or endowment policy or annuity contract under which an insurance company admitted in this State promises to pay a sum of money (whether or not based upon the investment performance of a segregated fund) either in a lump sum or periodically for life or some other specified period." 70 P.S. § 1-102(t)(iii).

The AGL Policy issued to Plaintiff falls squarely within that exclusion.  Under the terms of the Policy, Plaintiff was entitled to receive a lump sum pursuant to the Option he elected of the "greater of (a) the Face Amount [initially $17.6 million] in effect on the date of [Rulle's] death, and (b) the Account Value on the date of [Rulle's] death multiplied by the minimum Death Benefit Factor show in Contract Schedule F." Policy, p. 10 at Compl. Ex. A, p. 31. Because the Act specifically states that the "investment performance of a separate account" is irrelevant to the statutory exclusion of an insurance policy, the fact that Plaintiff suffered loss of

17

value is irrelevant.  The Policy and AGL, a Pennsylvania-registered insurer,[8] fit squarely within

this statutory exemption, and Plaintiff's claim against AGL under the Act should thus be

dismissed.

## V.      Plaintiff's Remaining Claims Are Governed By The Law of Pennsylvania

### A.      The Contractual Choice Of Law Provision Does Not Control These Claims

The Complaint sets forth five additional causes of action: breach of fiduciary duty, breach

of common law duty of good faith and fair dealing (asserted to be a tort under Alaska law),

negligence and gross negligence, negligent misrepresentation and unjust enrichment.  Because

each of these claims sound in tort, they are not governed by the choice of law provision of the

contract.  *See* Policy, pp. 1, 3, 9 at Compl. Ex. A., pp. 22, 24, 30 ("This Contract . . . is governed

by the laws of the Governing Jurisdiction," which the parties agree is Alaska).

Where federal jurisdiction is based on diversity of citizenship, the court applies the

choice of law rules of the forum state. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir.

2007) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Applying

Pennsylvania's choice of law rules, it is clear that Alaska law applies only to the Policy, and that

the contract's governing law provision provides no room for its extension to Plaintiff's tort

claims.

Pennsylvania law makes this conclusion clear.  Where a choice of law provision is

narrowly drafted to apply to the terms of the contract, the provision is correctly limited to a

plaintiff's contract claims. *Smith v. Lincoln Benefit Life Co.*, Civ. A. No. 08-01324, 2009 U.S.

Dist. LEXIS 24941, at *19 (W.D. Pa. Mar. 23, 2009) (holding that "[w]hile contractual claims

---

[8] The Court may take judicial notice that AGL is an insurance company admitted in Pennsylvania.  Indeed, Plaintiff concedes that AGL is an insurance company that enters into insurance contracts in Pennsylvania.. Compl. ¶3.

are governed by choice of law provisions contained in an insurance contract, said provisions, 'do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship'") (citing *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994)).  "[T]o determine whether a choice of law provision in a contract will govern both a plaintiff's contract and tort claims, a court must examine the provision in question to determine based on [its] narrowness or breadth, whether the parties intended [the clause] to encompass all elements of their association." *Smith*, 2009 U.S. Dist LEXIS 24291, at *19-20 (interpreting provision that stated "This policy is subject to the laws of the state where the app (sic) was signed" and holding that "[b]y narrowing the language of the choice of law provision, it is clear that the parties intended for said provision to govern only contract claims arising under the policy and not all elements of their association") (citations omitted); *Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25-26 (3d Cir. 2005) (recognizing that "several courts have construed [narrowly-drafted] choice of law provisions in a manner that limits their application to the underlying agreement itself, and not to related fraud or non-contractual claims," and holding that arbitral panel did not manifestly disregard the law when it determined that provision stating "this agreement will be governed by, construed and enforced in accordance with the laws of [Pennsylvania,]" did not cover claimant's non-contractual claim); *Grimm v. Discover Fin. Serv.*, Civ. A. Nos. 08-747, 08-832, 2008 U.S. Dist. LEXIS 89709, 2008 WL 4821695, at *7 (W.D. Pa. Nov. 4, 2008)) (noting that a "[n]arrow choice of law provision[] stating that a contract's terms or enforcement are to be governed, or construed, by the laws of another state is generally interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue" and holding that a provision stating that "[t]his Agreement will be governed by the laws of [Delaware] and applicable federal laws" did not cover plaintiff's

19

tort claims); *Coram Healthcare Corp. v. Aetna U.S. Healthcare*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999) (holding that provision stating that "This Agreement shall be governed by the laws of [Delaware]" was not broadly drafted to apply to tort claims, and noting that parties could have used language such as "all matters" if they intended the provision to apply beyond contract claims).

  B. *Pennsylvania's Choice Of Law Rules Establish That Pennsylvania Law Governs These Claims*

  Because the choice of law provision is inapplicable, the law governing Plaintiff's tort claims must be analyzed under Pennsylvania's choice of law rules relating to tort claims.

  Pennsylvania's choice of law rules combine government interest analysis and the most significant relationship test of § 145 of the Restatement (Second) of Conflicts of Laws. *Smith*, 2009 U.S. Dist. LEXIS 24941, at \*23; *see also Zavecz*, 179 Fed. Appx. at 120-21. The first step in the choice of law analysis is to determine whether the laws of the potentially applicable jurisdictions differ in any relevant way. *Hammersmith*, 480 F.3d at 230; *Smith*, 2009 U.S. Dist. LEXIS 24941, at \*23-24. If no relevant difference is found, then there is no conflict, and the states' laws may be referred to interchangeably. *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006). If, however, "there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or 'unprovided-for' situation." *Hammersmith*, 480 F.3d at 230. "A 'true' conflict exists when both states have an interest in applying their own law. A 'false' conflict exists when only one state has an actual interest in applying its law. The situation will be considered 'unprovided for' when neither has an interest in applying its own law." *Smith*, 2009 U.S. Dist. LEXIS 24941, at \*24-25 (internal citations omitted).

If the Court determines that a 'true' conflict exists, it must determine which state has the most significant contacts with the controversy, as provided by the Restatement (Second) of Conflicts. This analysis requires more than a 'mere counting of contacts.  Rather, the Court must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issues.  If the Court determines that a 'false' conflict exists, the Court applies the law of the interested state.  Finally, if the Court determines that the situation is unprovided for, it will apply the substantive law of the *loci delicti*, i.e., the law of the place where the alleged wrong occurred.

*Id.* at *25-26.

Here, with respect to Plaintiff's claims for breach of fiduciary duties (except for the alleged insurer-specific fiduciary duty, which is discussed separately below), negligence, and unjust enrichment, there appears to be no relevant differences between the laws of Pennsylvania and Alaska, thus requiring no further choice of law analysis.

*Breach of Fiduciary Duty:  Compare Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1090 (Alaska 2008) ("a fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence") (internal citations omitted) *with eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 22-23 (Pa. Super. Ct. 2002) (implying fiduciary duties only where parties are in special relationships involving confidentiality or the repose of special trust, "where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other").

*Negligence:  Compare  Edenshaw v. Safeway, Inc.*, 186 P.3d 568, 571 (Alaska 2008) (stating elements of negligence; plaintiff must "show[] that the defendant owed [plaintiff] a duty; that the defendant breached that duty; that [plaintiff] was injured; and that the breach of duty was the proximate cause of [plaintiff's] injury") *with Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134, 140 n.2 (Pa. 2008) (holding that to make out a claim of negligence, plaintiff must

21

show that defendant had a duty or obligation, recognized by law; that defendant breached that

duty; that plaintiff suffered actual loss or damages; and that there was a causal connection

between defendant's breach and the resulting injury).

*Unjust Enrichment*:  *Compare Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746

(Alaska 1987) (stating elements of unjust enrichment claim; plaintiff must show: "1) a benefit

conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit;

3) acceptance and retention by the defendant of such benefit under such circumstances that it

would be inequitable for him to retain it without paying the value thereof") *with Alpart v. Gen.*

*Land Partners, Inc.*, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) (a plaintiff claiming unjust

enrichment must show: "1) the plaintiff conferred benefits upon the defendant; 2) the defendant

appreciated and accepted such benefits; 3) it would be inequitable for the defendant to retain the

benefit without payment of the value") (citing *Wiernik v. PHH U.S. Mortgage Corp.*, 738 A.2d

616, 622 (Pa. Super. Ct. 1999)).

Pennsylvania and Alaska law do differ with regard to Plaintiff's breach of duty of good

faith and fair dealing claim, which, in Alaska, is cast as a fiduciary duty.  Pennsylvania, by

contrast, characterizes the duty as a contractual obligation that cannot be pled concurrently with

a breach of contract claim that alleges the same underlying conduct.  *See Smith*, 2009 U.S. Dist.

LEXIS 24941, at *34-38 (summarizing Pennsylvania law prohibiting good faith and fair dealing

claims concurrent with breach of contract claims); *Blue Mountain Mushroom Co., Inc. v.*

*Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 400 (E.D. Pa. 2002) ("Pennsylvania law does

not recognize a separate claim for breach of implied covenant of good faith and fair dealing").

Alaska, on the other hand, allows the cause of action to be pled as a tort, apparently alongside

22

breach of contract claims.  *See Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 947 (Alaska 1990).

The laws of the two jurisdictions with regard to the tort of negligent misrepresentation may also diverge.  Pennsylvania articulates the tort of negligent misrepresentation as comprising the following elements: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).  The elements of the negligent misrepresentation tort in Alaska have been stated as follows: "First, the tortfeasor must have made a statement in the course of business, employment, or some other enterprise in which he had a pecuniary interest.  Second, the statement must have been false when the tortfeasor made it.  Third, the victim must have justifiably relied upon the statement to his detriment.  Fourth, the tortfeasor must have failed to exercise reasonable care when making the statement." *S. Alaska Carpenters Trust Fund v. Jones*, 177 P.3d 844, 857 (Alaska 2008) (citing *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 380 (Alaska 1984)).  The relevant difference between the two articulations of the tort is that Alaska's formulation does not expressly state that materiality of the misstatement is required.  However, Alaska courts do require materiality of misrepresentation as a predicate for rescinding contracts, suggesting that Alaska law is not actually dissimilar to that of Pennsylvania. *Indus. Commercial Elec., Inc . v. McLees*, 101 P.3d 593, 598-99 n. 18 (Alaska 2004) (internal citations omitted); *Foster v. Cross*, 650 P.2d 406, 409 (Alaska 1982); *Cousineau v. Walker*, 613 P.2d 608, 612 (Alaska 1980).

In any case, Pennsylvania has a clear interest in the application of its law with respect to both the breach of duty of good faith and fair dealing claim and the negligent misrepresentation

23

claim.  The rule prohibiting cumulative good faith and fair dealing torts from being pled in

contract actions is grounded in the policies of protecting Pennsylvania parties from having to

defend duplicative claims and of guarding against exposure to tort damages for contract injuries.

Similarly, with respect to negligent misrepresentation claims, Pennsylvania certainly has an

interest in protecting Pennsylvania defendants from suits based on misstatements or omissions of

immaterial, irrelevant information, and in preventing a deluge of irrelevant information from

being forcibly disclosed by potential defendants fearful of liability from non-disclosure.  The

rationale for the materiality requirement in federal securities cases is apposite.  *See TSC Indus.*,

defining materiality for federal securities fraud and explaining:

> Some information is of such dubious significance that insistence on its disclosure may
> accomplish more harm than good. . . .  [I]f the standard of materiality is unnecessarily
> low, not only may the corporation and its management be subjected to liability for
> insignificant omissions or misstatements, but [it] also . . . may cause [management] to
> bury the shareholders in an avalanche of trivial information – a result that is hardly
> conducive to informed decisionmaking.

426 U.S. at 448-49.  Pennsylvania's interests would be impaired if Alaska law was applied to

either claim.  Thus, there exists either a false conflict in favor of applying Pennsylvania law, or a

true conflict requiring analysis under the most significant contacts test.

Pennsylvania courts look to the Restatement (Second) of Conflict of Laws §145 to

resolve true conflicts under the most significant contacts test.  Section 145 provides that the

following contacts should be considered in the analysis: (a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred, (c) the domicile, residence,

nationality, place of incorporation and place of business of the parties, and (d) the place where

the relationship, if any, between the parties is centered."  Analysis of the instant case under §145

reveals that Pennsylvania's law should apply because of both the quantity and quality of its

24

connections to the claims.  Pennsylvania is the place where the alleged injury occurred, as it is the legal situs of the Investment Account that was allegedly devalued improperly (Policy, pp. 5, 9 at Compl. Ex. A., pp. 26, 30).  Pennsylvania is also the place where the alleged conduct causing the alleged injury occurred because AGL's administration of the Policy and its accounts took place in Pennsylvania, and AGL issued its communications from this state.  Pennsylvania is also the place of incorporation and place of business of the Defendant, AGL.  AGL executed the Policy in Pennsylvania, and issued endorsements to the Policy (Policy, pp. 6-8, Compl. Ex. A., pp. 41-43) from this state.  It was also to Pennsylvania that Plaintiff sent its Policy premiums.

By comparison, Alaska is relevant to the instant action only because it is the place of the Policy's delivery and the residence of the Rulle Trust.  While the Trust is legally sited in Alaska, none of the material contacts relating to the Trust's purchase of the Policy relate to that state.  To the contrary, as the application and Trust instrument demonstrate: (1) Michael Rulle and his wife were residents of New Jersey at the time the Policy was applied for and issued; (2) while the initial application for the Policy was submitted in April 2001, the Trust was not formed until September 27, 2001 for the purpose of holding insurance policies, just days before the Policy was issued and delivered; (3) the Trust was prepared by New Jersey counsel; (4) the only Alaska resident was the Administrative Trustee; (5) subject to certain restrictions, Michael Rulle had power during his lifetime to distribute net income and principal to the beneficiaries of the Trust, which included himself, his wife and children; and (6) with the exception of the Alaska Trust Company, the parties to the agreement executed it outside of Alaska.  Not least important, the decision to invest in the Tremont Fund was made by Michael Rulle long before the Trust was created, after AGL provided him with information about various investment options for the

25

Policy. *See* Affidavit of John Hillman, dated March 25, 2010; The Michael S. Rulle Family

Dynasty Trust Agreement of 2001, Mem. Ex. 6. [9]

In view of the minimal, non-material contacts with Alaska, and the axis of contacts with

Pennsylvania, Pennsylvania law should govern Plaintiff's breach of good faith and fair dealing

claim and negligent misrepresentation claim, to the extent there is any perceived conflict.

## VI.    The Breach Of Fiduciary Duties Claim Should Be Dismissed Because AGL Owed No Such Duties To Plaintiff

Fiduciary duties are implied only in a narrow set of cases involving parties in special

relationships of trust.  Pennsylvania courts hold that "a 'special relationship' is one involving

confidentiality, the repose of special trust or fiduciary duties." *eToll*, 811 A.2d at 22 (internal

citations omitted).  A special relationship of this kind "generally involves a situation where by

virtue of the respective strength and weakness of the parties, one has the power to take advantage

of or exercise undue influence over the other." *eToll*, 811 A.2d at 22 (citing *Estate of Evasew*,

584 A.2d 910, 913 (Pa. 1990)).  "A confidential relationship is marked by such a disparity in

position that the inferior party places complete trust in the superior party's advice and seeks no

other counsel, so as to give rise to a potential abuse of power." *eToll*, 811 A.2d at 23.

Cases finding fiduciary duties illustrate the types of close relationships that must exist for

such duties to be implied. *See Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d

1277, 1283 (Pa. 1990) (special relationship exists between attorney and client); *Frowen v. Blank*,

425 A.2d 412, 418 (Pa. 1981) (special relationship exists between 86 year old widow with no

formal education and her sole business counselor); *Estate of Thomas*, 344 A.2d 834, 836 (Pa.

1975) (special relationship between healthy attorney-scrivener and "extremely weak . . .

---

[9] The Affidavit of John Hillman, dated March 25, 2010, and The Michael S. Rulle Family Dynasty Trust Agreement of 2001 are submitted with Defendant's Motion solely with regard to the choice of law issue, and not in support of any of Defendant's arguments on the merits of any of Plaintiff's claims.

4456737

intermittently confused" testator who was on her deathbed); *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966) (special relationship between widow and sons upon whom she relied to manage her property).

Unlike the above cases, AGL and Plaintiff operated at all times at arm's length and with a parity of bargaining power. *See eToll*, 811 A.2d at 23 (holding that "[i]f parties to routine arm's length commercial contracts for the provision of needed goods or services were held to have a 'special relationship,' virtually every breach of contract would support a tort claim") (internal citations omitted); *Binary Semantics Ltd. v. Minitab, Inc.*, Civ. A. No. 4:07-CV-1750, 2008 WL 763575, at *12 (M.D. Pa. Mar. 20, 2008) (dismissing fiduciary duty claim because one did not arise from arms-length marketing and promotion agreement) *reconsidered by, Binary Semantics Ltd. v. Minitab, Inc.*, Civ. A. No. 4:07-CV-1750, 2008 WL 1981591, at *3 (M.D. Pa. May 1, 2008) (holding that, under *Twombly*, "plaintiffs' conclusory allegations that a fiduciary relationship . . . existed" notwithstanding, "it is simply implausible that a fiduciary relationship existed" where there was "no special relationship involving confidentiality, no special trust, and no strong and weak party[;] . . . [it] was an arms-length business transaction"); *Elliott v. Clawson*, 204 A.2d 272, 273-74 (Pa. 1964) (no special relationship between parties to arm's length contract). Plaintiff, a wealthy and sophisticated investment manager, approached AGL to acquire a life insurance product that would permit investment gains to accrue on a tax-deferred basis. To that end, Plaintiff procured the Policy from AGL and invested the net premiums paid under the Policy in an investment fund of Plaintiff's choosing. Nothing in the arm's length relationship between these two sophisticated parties bartering over the purchase of a life insurance policy remotely resembles the sort of reliant dealings that might give rise to a fiduciary duty under the law.

27

Plaintiff's effort to craft fiduciary duties where none exist is belied both by the very documents on which Plaintiff relies and well-established Pennsylvania law.  For example, Plaintiff claims that a fiduciary duty arose because AGL "retained exclusive control over selection of investment managers" as well as the addition of investment options.  Compl. ¶¶59. The first allegation is patently untrue in view of the documents relied on by the Complaint:  AGL did not control the selection of the underlying investment managers, including the funds that invested with Madoff.  AGL PPM, Mem. Ex. 1, p. 38; Tremont PPM, Mem. Ex. 2, p. 2; LPA, Mem. Ex. 3, p. 8, § 3.01  On the other hand, it is of no consequence that AGL had the option of adding other investment options, since the allegations of the Complaint arise from the option that was offered, not an option that was excluded.  What is relevant is that at the time the Policy was offered to Plaintiff, there were only two Investment Accounts available to him—a money market account and the Tremont Fund—and Plaintiff instructed AGL to invest 100% of the net premiums in Tremont, having received and reviewed the Tremont PPM.  In short, Plaintiff got from AGL what Plaintiff bargained and agreed to pay for: a flexible premium life insurance policy that included Tremont as its primary investment option.

Plaintiff next alleges that restrictions placed on its ability to communicate with the Tremont Fund created a fiduciary duty on the part of AGL.  Compl. ¶40.  The Tremont PPM makes clear, however, that the purpose of prohibiting contact with the Tremont Fund by Contract Owners, like Plaintiff, was to protect the Contract Owners' tax-favored position with respect to their investments.[10]  Ironically, had AGL allowed the contacts Plaintiff now suggests it should

---

[10] The relevant portion of the Tremont PPM states: "[I]n an effort to prevent the Contract Owners from being treated as the owners of the assets of the Portfolio for federal tax purposes, the General Partner will have sole discretion in determining the allocation of Portfolio assets.  In this regard, Contract Owners will not have any right to require the General Partner (or any Manager) to acquire or dispose of any particular asset, to make, fund or allocate funds to any investment or to incur or pay any particular liability of a Portfolio.  The General Partner (and any Manager) will not discuss with, directly or indirectly consult with or receive, require or rely upon the advice of

4456737

have had the freedom to undertake, such contacts may have been used to justify a claim against

AGL if the favorable tax treatment was thereupon lost.  In any event, Plaintiff does not even

allege that in the seven years preceding the exposure of the Madoff fraud, it sought any

information about Tremont and its investments from or through AGL, let alone information that

would have identified Madoff and his fraudulent scheme.

Finally, Plaintiff alleges that a fiduciary duty arose because AGL "asserted an exclusive

right to control all aspects of the account" and had an obligation "to exercise its best judgment in

determining how to protect and increase Plaintiff's investment."  Compl. ¶¶41-42.  There is

simply nothing in the documents relating to the Policy to support such a contention.  Plaintiff

bore and accepted the responsibility for determining how to allocate its premiums, both initially

by directing that all premiums be allocated to the Tremont Fund, and thereafter by directing that

additional premiums be likewise invested.  *See* Policy, p. 13 at Compl. Ex. A., p. 34; Compl ¶¶5,

19, 24.  At all times, Plaintiff remained free to transfer all or part of its funds out of Tremont into

the money market option.  Again, as discussed above, AGL had a contractual duty to follow

Plaintiff's investment directives, which it indisputably did.

Beyond the lack of a factual basis for this claim, Pennsylvania's "gist of the action"

doctrine bars fiduciary duty claims that are grounded in contractual obligations.  *Atchison*

*Casting Corp. v. Deloitte & Touche, LLP*, No. 003193, 2003 WL 1847665, at *3 (Pa. Com. Pl.

Mar. 14, 2003) (contribution claim dismissed because "gist of the action" doctrine barred tort

cause of action where third party defendants' alleged fiduciary duties arose out of their

employment relationship, which was governed by contract with third party plaintiff).  Here, the

---

any person which the General Partner (or Manager) knows or should know is a Contract Owner, beneficiary of a
Contract or fiduciary or beneficiary of a trust that is a Contract Owner with regard to management of any Portfolio
assets." Tremont PPM, Mem. Ex. 2, p. 4.

entire relationship between the parties is governed by the Policy, which expressly details the rights and obligations each party agreed to assume with respect to the other.

Finally, while Plaintiff seeks to impose a special fiduciary duty found to exist under inapplicable Alaska law between insurers and policyholders, Plaintiff's reliance on that duty is misplaced because it applies only to insurers' handling of insurance coverage claims. *O.K. Lumber Co., Inc. v. Providence Washington Mut. Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988) ("The fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing.  Thus, an insurer has an obligation to investigate claims and to inform the insured of all settlement offers and the possibility of excess recovery by the injured claimant.") (internal citations omitted). *But cf. Decker v. Nationwide Ins. Co.*, 83 Pa. D. & C.4th 375, 379 (Pa. Com. Pl. 2007) (Under Pennsylvania law, insurer's duty of good faith and fair dealing is contractual in nature; "no fiduciary duty exists between an insurance company and its insured[;] . . .  Instead, the relationship between the insurer and insured is one of buyer and seller.") (citations omitted); *Chenot v. Metro. Life Ins. Co.*, 47 Pa. D & C.4th 332, 335 (Pa. Com. Pl. 2000) (Under Pennsylvania law, "the law governing fiduciary relationships does not govern the relationship between an insured and an insurance company").  This duty is inapplicable here, where coverage under the life insurance policy has not been triggered—Rulle is still alive—and consequently no claims under the policy have been made.  The claims in Plaintiff's Complaint relate solely to the investment aspects of the Policy, and thus a special insurer duty would not be implicated, even under Alaska law.

Lacking any legal basis for imposing a fiduciary duty on AGL, or a factual basis supporting a breach, Plaintiff's claim should be dismissed.

30

**VII.    The Breach Of Common Law Duty Of Good Faith And Fair Dealing Claim Should Be Dismissed Because It Is Precluded Under Pennsylvania Law**

Plaintiff's claim for breach of a common law duty of good faith and fair dealing should be dismissed because, under Pennsylvania law, the claim sounds in contract and cannot coexist with Plaintiff's breach of contract claim.  *See Smith*, 2009 U.S. Dist. LEXIS 24941, at *33-39 (summarizing Pennsylvania law prohibiting good faith and fair dealing claims alongside contract claims); *Blue Mountain Mushroom Co.*, 246 F. Supp. 2d at 400 ("Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing").[11]

Moreover, as amply demonstrated above, there is no basis for alleging that AGL did not fulfill its obligations under the Policy.  AGL allocated Plaintiff's net premiums exactly as Plaintiff directed; the fact that that the investment ultimately felt the consequences of the fraud perpetrated by Madoff demonstrates neither a breach of contract, nor of any implied covenant.[12]

**VIII.   The Negligence And Gross Negligence Claim Should Be Dismissed Because AGL Owed Plaintiff No Duty Outside Of The Policy And The Claim Is Barred By The Economic Loss Doctrine**

To state a claim for negligence, a plaintiff must plausibly allege, among other things, that the defendant breached a duty that it owed to the plaintiff.  *See Cooper*, 960 A.2d at 140 n.2 (2008) (setting out elements of negligence cause of action); *see also Henry v. First Fed. Sav. & Loan Ass'n of Greene County*, 459 A.2d 772, 774 (Pa. Super. 1983) ("Since gross negligence is simply a greater degree of negligence, it must also be predicated upon some duty owed" to the plaintiff.).  Plaintiff's negligence claim simply recasts its breach of fiduciary duties claim,

---

[11]   Although Alaska law does not apply, even if it did, as discussed above, the duty of insurers to handle coverage claims in good faith is simply inapplicable to this case. *See O.K. Lumber Co.*, 759 P.2d at 525.

[12]   Plaintiff's additional allegation that AGL is liable for "improperly removing Plaintiff's monies from Plaintiff's account" (Compl. ¶53) is wholly specious.  As the Complaint acknowledges, AGL did not remove any monies—the premiums were placed with Tremont as instructed.  When Tremont reported lost value following the revelation of the Madoff fraud, a corresponding loss in the value of Plaintiff's Investment Account resulted.

alleging that AGL owed Plaintiff duties to manage, monitor, maintain, preserve, and exercise "generally the degree of prudence, caution and good business practice that would be expected of any reasonable investment professional."  Compl. ¶74.  But, as discussed above in section VI of this Memorandum, AGL owed no duties to Plaintiff beyond those provided for in the parties' negotiated agreement, the Policy.  Absent a duty, there can be no breach, and Plaintiff's claim must accordingly fail.

Plaintiff's claim for negligence also fails because Pennsylvania law bars recovery through the tort of negligence for purely economic losses.  *Rock v. Voshell*, 397 F. Supp. 2d 616, 627 (E.D. Pa. 2005).  "The economic loss doctrine provides that 'no cause of action [can] be maintained in tort for negligence or strict liability where the only injury [is] 'economic loss' – that is, loss that is neither physical injury nor damage to tangible property.'" *Id.* (citing *2-J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997)).  Here, Plaintiff alleges no injuries other than the loss in value of its investment account under the policy, placing Plaintiff's negligence claim squarely within the prohibition of Pennsylvania's economic loss rule.

Additionally, "courts have held that the economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Rock*, 397 F. Supp. at 627 (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  Under Pennsylvania's "'gist of the action' doctrine, 'a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts and not by the larger social policies embodied in the law of torts.'" *Rock*, 397 F. Supp. at 627 (citing *eToll*, 811 A.2d at 14); *see Specialty Ins. v. Royal Indem. Co.*, 324 F. Supp. 2d 674, 678 n.5 (E.D. Pa. 2004) (dismissing negligence claim that arose from the same set of facts as a contract claim under "economic loss" and "gist of the action" doctrines); *Sunquest Info. Sys., Inc. v. Dean*

32

*Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999) (under Pennsylvania's "gist of the action doctrine," plaintiff cannot maintain a tort claim "when that theory is 'merely another way of stating its breach of contract claim . . .'") (internal citations omitted).

## IX.    The Negligent Misrepresentation Claim Is Not Cognizable At Law And Lacks Any Factual Support In The Complaint

Plaintiff points to two alleged statements made by AGL as being negligent misrepresentations.  *First*, Plaintiff alleges that AGL "affirmatively represented that no more than 5% to 6% of Plaintiff's monies would be invested in any one fund."  Compl. ¶¶5, 80.  *Second*, Plaintiff alleges that AGL "misrepresented and deceived Plaintiff by referring to the Madoff accounts as 'equity market neutral.'" Compl. ¶¶5, 81.  As discussed above, Plaintiff wholly fails to document who, when and under what circumstances these alleged statements were made.  Plaintiff therefore has fallen far short of its pleading obligations. *See Iqbal*, 129 S. Ct. at 1949 ("[a] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)).  On the merits, however, these claims should also be rejected.  Both statements, assuming they were ever made, not only contradict clear language in the Policy, but are non-actionable parol statements.  In any event, AGL owed no duties to Plaintiff, other than those prescribed by the parties' agreement, that can be the basis of this claim.  Finally, the documents relied on by Plaintiff demonstrate that Plaintiff could not have reasonably relied on any such parol statement.

### A.    The Alleged Misrepresentations Are Non-Actionable Parol Statements

In Alaska, whose law governs the terms of the Policy, "[u]nder the terms of the parol evidence rule, an integrated written contract cannot be varied or contradicted by prior negotiations or agreements." *Still v. Cunningham*, 94 P.3d 1104, 1109 (Alaska 2004); *see Johnson v. Curran*, 633 P.2d 994, 996 (Alaska 1981) (whether a written contract is completely or

33

partially integrated, it supersedes inconsistent terms of prior agreements).  Pennsylvania law is in

accord. *Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425, 436 (Pa. 2004) ("[a]ll preliminary

negotiations, conversations, and verbal agreements are merged in and superseded by the

subsequent written contract").

> Here, the Policy is an integrated contract.  It states:
>
> Entire Contract
> . . .  This Contract and Application, a copy of which is attached, together
> with any Contract Schedules, any Riders constitute the entire Contract.
> Any waiver or change of any provision in this Contract must be in writing
> and signed by an officer of our Company.

Policy, p. 18 at Compl. Ex. A., p. 39.  Fundamentally, Plaintiff, through its negligent

misrepresentation claim, seeks to rewrite the terms of its agreement with AGL.  The statement

that no more than 5% to 6% of Plaintiff's premiums would be invested in any single fund, if

enforced, would create an unwritten cap on the provision that "Net Premiums are allocated to or

among Investment Accounts in accordance with [Plaintiff's] instructions . . . ." (Policy, p. 12 at

Compl. Ex. A., p. 33) and is inconsistent with Plaintiff's election to invest 100% of its Policy

premiums with the Tremont Fund (Policy, p. 13 at Compl. Ex. A., p. 34).  To the extent that

Plaintiff meant to suggest that the cap applied to investments that Tremont made with managers,

the Policy contains no provision stating a limit for the percentage of funds allotted to any

ultimate fund or investment made by the Tremont Fund, and such a limit cannot be read into the

contract now.  Moreover, Plaintiff's alleged cap is expressly at odds with the Tremont PPM,

which indicated that up to 55% of the assets could be allocated to one investment without

violating the diversification rules of the Internal Revenue Code. *See* Tremont PPM, Mem. Ex. 2,

p. 4.

The alleged statement that "the Madoff accounts" would be "equity market neutral" is likewise wholly unsupported by any factual allegations detailing this.  Notably, this allegation completely contradicts the entire premise of Plaintiff's fraud claims that AGL "failed to disclose to Plaintiff that the premiums entrusted to Defendant would be invested in fund groups controlled by Madoff."  Compl. ¶62.  It would be impossible for AGL to have discussed Madoff's strategy without having disclosed Madoff as a fund manager.  In fact, there is absolutely nothing to show that AGL was aware of Madoff's role in the Rye funds, let alone that AGL commented on his strategies.

     B.    *Pennsylvania's "Economic Loss" And "Gist of the Action" Doctrines Bar Recovery*

As discussed above, Pennsylvania law bars negligence-based claims that allege only economic losses.  This Court has applied the doctrine to dismiss negligent misrepresentation claims.  *Blue Mountain Mushroom Co.*, 246 F. Supp. 2d at 402-03 (dismissing on summary judgment negligent misrepresentation claims under "economic loss" and "gist of the action" doctrines); *N. Am. Roofing & Sheet Metal Co., Inc. v. Bldg. & Constr. Trades Council of Philadelphia & Vicinity*, No. 99-2050, 2000 WL 230214, at *7-8 (E.D. Pa. Feb. 29, 2000) (granting motion to dismiss negligent misrepresentation claims because plaintiff "claimed nothing but economic losses").  Here, dismissal is appropriate because Plaintiff has alleged only the economic loss of diminished value of his investment account under the Policy.

Dismissal is independently warranted under Pennsylvania's "gist of the action doctrine" which "bars plaintiffs from bringing a tort claim that merely replicates a breach of an underlying contract." *Blue Mountain Mushroom Co.*, 246 F. Supp. 2d at 402-03 (finding that defendant's "duties to Plaintiffs stem from the contract and not social policy" and thus dismissing negligent misrepresentation claims in the alternative under the "gist of the action doctrine").  In an

35

apparent effort to evade the parol evidence rule, Plaintiff cloaks its claim in the garb of a

negligent misrepresentation.  Courts applying the "gist of the action" doctrine, however, do not

permit such ploys, and Plaintiff's attempt should likewise be rejected. *Sunquest Info. Sys.*, 40 F.

Supp. 2d at 651 (under Pennsylvania's "gist of the action doctrine," "a plaintiff cannot assert a

fraud or negligent misrepresentation claim when that theory is 'merely another way of stating its

breach of contract claim . . .'") (internal citations omitted).

C.      *Plaintiff Fails To State A Prima Facie Claim For Negligent Misrepresentation*

Even if the alleged statements are deemed to be properly pled in tort, Plaintiff has failed

as a matter of law to plead the requisite elements for this claim.  The tort of negligent

misrepresentation in Pennsylvania comprises four elements: (1) a misrepresentation of a material

fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity;

(3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting

in justifiable reliance on the misrepresentation.  *Bortz*, 729 A.2d at 500.  Moreover, like any

action in negligence, there must exist a duty owed by one party to the other.  *Id*. at 501.

Plaintiff's claim is inherently deficient in meeting these requirements.

*First*, as discussed above, AGL owed no duties to Plaintiff that would give rise to a duty

to disclose outside of those prescribed by the Policy.

*Second,* Plaintiff's claim fails because it is facially implausible that Plaintiff would have

credited, much less relied, on either statement.  Plaintiff's claim must be facially plausible, not

merely possible, to withstand a motion to dismiss.  *Iqbal*, 129 S.Ct. at 1949.

Plaintiff could not have possibly relied on a statement that only 5% to 6% of its

premiums would ever be invested in a single fund selected by Tremont.  The 2008 Tremont

PPM, which Plaintiff references at ¶¶26-31 of the Complaint, explicitly refutes the statement,

36

stating, "While the Partnership intends to invest with various Managers, the Partnership will likely have, at any time and from time to time, up to thirty percent (30%) of its total Portfolio invested with a single Manager."  2008 Tremont PPM, Mem. Ex. 4, p. 2.  It is therefore implausible that Plaintiff would have relied on a parol statement to the contrary.  *See also* Tremont PPM, Mem. Ex. 2, p. 4 (one investment could constitute up to 55% of the Fund).

It is also implausible as a matter of law that Plaintiff could have relied on a statement that his investment would be "equity market neutral."  Not surprisingly, the Policy's valuation provisions expressly contemplate the possibility that the chosen investments might suffer capital losses and gains.  Policy, pp. 13, 15 at Compl. Ex. A., pp. 34, 36.  Moreover, the objectives of an investment are not statements upon which investors may reasonably rely.  *See In re TCW/DW N. Am. Gov't. Income Trust Sec. Litig.*, 941 F. Supp. 326, 338-39 (S.D.N.Y. 1996) (holding statement of investment objective identified in prospectus was not a material misrepresentation because it was "simply not the kind of statement which a reasonable investor would consider important in deciding whether or not to invest," and reasoning "if it were reasonable for an investor to consider such a statement, the Court presumes that many, if not most securities offerings would expose their issuers to federal securities law liability").

Finally, there is no basis for concluding that AGL was negligent for failing to uncover a fraud that fooled thousands of investors, and regulators, for many years.  It is thus implausible as a matter of law that Plaintiff would have relied on the alleged statement when purchasing the Policy.

For the reasons discussed above, Plaintiff's negligent misrepresentation claim fails and should be dismissed.

**X.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because Such A Claim Cannot Stand When There Is An Undisputed Contract That Governs The Transaction Between The Parties**

Under Pennsylvania law, to sustain a claim of unjust enrichment, Plaintiff "must allege that: (1) the plaintiff conferred benefits upon the defendant; (2) the defendant appreciated and accepted such benefits; and (3) it would be inequitable for the defendant to retain the benefit without payment of the value." *Alpart*, 574 F. Supp. 2d at 507 (citing *Wiernik*, 736 A.2d at 622). An unjust enrichment claim asks the court to imply a "'quasi-contract' [which] imposes a duty 'not as the result of any agreement, whether express or implied, but in spite of the absence of an agreement' where the circumstances demonstrate that it would be inequitable for the defendant to retain the benefit conferred without payment." *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. 2004) (internal citations omitted).  As such, "[a] plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties." *Alpart*, 574 F. Supp. 2d at 507 (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)); *Villoresi*, 856 A.2d at 84.

Here, where there is no dispute as to the existence of the Policy that governs the parties' relationship, Plaintiff's unjust enrichment claim must be dismissed.

4456737

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court to dismiss the

Complaint in its entirety.

Dated: March 26, 2010                    Respectfully submitted,

                                         _____/s_____
                                         Mathieu J. Shapiro
                                         Obermayer Rebmann Maxwell & Hippel LLP
                                         One Penn Center, 19th Floor
                                         1617 John F. Kennedy Blvd.
                                         Philadelphia, Pennsylvania  19103-1895
                                         Phone:  (215) 665-3000
                                         Fax:  (215) 665-3165

Of Counsel:                              -- and --

Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York  10022
Phone: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendant
AGL Life Assurance Company

4456737

## <u>CERTIFICATE OF SERVICE</u>

I, Mathieu J. Shapiro, hereby certify that a true and correct copy of the foregoing

Defendant AGL Life Assurance Company's Motion to Dismiss was electronically filed on

March 26, 2010 using CM/ECF which will send notification of such filing to the following

counsel of record:

Nicholas Noel, III
nnoel@noelandkovacs.com

William R. Connelly
wconnelly@connellylaw.net

/s

_____
MATHIEU J. SHAPIRO