managers thus insuring a wide diversification of the investment and a significant reduction in the risk of loss.

60. Over the course of the period October 2001 through December 2008, Plaintiff requested information from AGL concerning the diversification of the investment. The last such inquiry occurred in or about September 2008 when Plaintiff was advised by AGL representative, Stanley Geyelen, that the top ten portfolio holdings allocated by investment managers were as follows:

| Fund | Allocation |
|---|---|
| Rye Select Broad Market Prime Fund LP<br>Equity Market Neutral | 10.35% |
| Rye Select Broad Market Prime LP<br>Equity Market Neutral | 6.53% |
| Rye Select Broad Market XL Fund LP<br>Equity Market Neutral | 3.76% |
| Green Light Capital Qualify LP<br>Long/short equity | 3.09% |
| Scoggin Capital Management LP II<br>Event Driven | 2.70% |
| Stark Investments LP<br>Multi-strategy | 2.28% |
| Draw Bridge Special Opportunities Fund LP<br>Event Driven | 2.27% |
| Rye Select Equities Fund<br>Long/short equity | 2.24% |
| High Bridge Asia Opportunities Fund LP<br>Multi-strategy | 2.19% |
| D.B. Zwirn Special Opportunities Fund LP | 2.05% |

61. Although the reportings of AGL regarding the diversification of the funds appeared to indicate an allocation among managers which were diversified and for which

there was no high concentration in any one manager, in fact, the designated Rye Select Fund managers were not separate managers as represented by AGL but instead were all funds that were directly transferred to Madoff. Of the top ten funds identified by AGL as having separate managers as of September 30, 2008, in fact four of them were not separate managers at all but instead were direct fees to Madoff resulting in some 23% of the investment funds ultimately being controlled by a single individual – Bernard Madoff.

62. Contrary to the representations that had been made by AGL, and as required by the AGL PPM, the allocations of 23% of the funds were not consistent with those representations and are not consistent with the proper allocation of diversified fund of funds as expected pursuant to usual industry practices or the Plaintiff's stated investment objectives and were therefore unsuitable.

63. Just prior to the outing of Bernard Madoff's Ponzi Scheme in December 2008, Tremont Opportunity Fund issued and distributed in August 2008 the Tremont Private Placement Memorandum which was then modified to allow for a 30% allocation to any money manager. Plaintiff was not advised of this modification to the diversity requirements of the Tremont Opportunity Fund and Defendants failed to provide any explanation or call attention to this modification permitting higher allocations and less diversity in the fund. Such modification was a marked and significant deviation from the AGL PPM in the prior private placement memorandums offered by the partnership.

64. It is highly suspicious that the Tremont Opportunity Fund modified their private placement memorandum in 2008 just before the outing of Madoff's Ponzi Scheme to reflect a higher allocation among property managers in an amount consistent with the

amount allocated to the Rye Select Funds. The Defendant failed to advise Plaintiff that these higher diversification allowances had been enacted, and more importantly, that they in fact had been employed, which resulted in a significantly higher concentration of Plaintiff's moneys to be held in the hands of the Madoff controlled funds which AGL now claims were lost pursuant to AGL's valuation of Plaintiff's account.

**COUNT I**

**Breach of Contract**

65. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 64 and incorporates the same herein by reference.

66. By the express terms of the Policy, Plaintiff's account was to be valued in accordance only with investment performance, and applicable administrative charges. In addition, any other "losses" were expressly precluded from consideration in the valuation of the account.

67. Rather than causing Plaintiff's account to be valued in accordance with the terms and conditions of the Policy, however, AGL caused a portion of the account to be valued at zero, based solely on the fraudulent activities of Madoff.

68. Defendants' actions in causing a portion of Plaintiff's account to be valued at zero based solely on the fraudulent actions of Madoff constitute a breach of the provisions of the Policy and are further contrary to law.

69. As a direct and proximate result of AGL's breach, Plaintiff has suffered damages and is entitled to recover damages against Defendants, as well as the return of all fees paid to Defendants.

## COUNT II

### Breach of Fiduciary Duty

70. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 69 and incorporate the same herein by reference.

71. Pursuant to the express terms of the Policy, AGL retained exclusive control over selection of investment managers, contractual dealings with such investment managers, and all changes in investment accounts, including, but not limited to, establishment of additional investment accounts, other investment options, substitution of new portfolios, combination and elimination of investment accounts and transfer of assets from one investment account to another.

72. The Policy further provided that Plaintiff was expressly restricted from any contact, communication, either direct or indirect, with the general partner, Tremont Partners, and with the Partnership. Thus, only the insurance company, AGL, could have any communication or contact with the general partner or the Partnership.

73. By asserting the exclusive right to control all aspects of the investment account, AGL assumed a fiduciary duty to Plaintiff and was obligated to act in good faith and with due care in representing the interests of Plaintiff.

74. Defendant, in conjunction with Phoenix Equity, as brokers/broker-dealer, owed a common law duty of care to the Plaintiff as a fiduciary and as agent of the Plaintiff to manage the investment of the Plaintiff's funds with care, competence and diligence.

75. AGL knew or should have known how to perform its obligations pursuant to the Policy and its fiduciary obligations arising from the Policy in monitoring the safety and performance of Plaintiff's assets in a prudent and professional manner.

76. Had Defendant met its fiduciary duties to the Plaintiff, it would have investigated the Tremont Opportunity Fund and found that its general partner, Tremont Partners, was heavily connected with and invested with Madoff as a feeder-fund to Madoff. Defendant should have investigated Tremont Opportunity Funds connections with Madoff through the Tremont Partnership. The Defendant should have required Tremont Partners to disclose what, if any, due diligence investigations had been performed by Tremont Partners or Tremont Opportunity Group with respect to moneys invested or to be invested with Madoff.

77. Had Defendant conducted proper due diligence investigation it would have, in the exercise of sound and reasonable judgment, declined to have the Tremont Opportunity Fund as one of the two Investment Account options available in its insurance product.

78. Had Defendant adequately investigated, monitored and followed-up on the investment of moneys made by Plaintiff through the Policy and placed with Tremont Opportunity Fund, they would have determined that the reported diversification of investment among money managers was in fact highly concentrated and not adequately diversified as required by the Policy and the AGL PPM.

79. As a direct and proximate result of Defendant's breaches, Plaintiff has suffered damages and is entitled to recover damages against Defendant, as well as the return of all fees paid to Defendant.

80. Defendant is further liable for punitive damages as a result of its wanton and grossly negligent course of conduct.

## COUNT III

### Common Law Duty of Good Faith and Fair Dealing

81. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 80 and incorporates the same herein by reference.

82. There is implied in every contract a duty of good faith and fair dealing that neither party will do anything to deprive the other of the fruits of the contract.

83. The Policy contained said implied duty of good faith and fair dealing, as a matter of law.

84. By failing to act in accordance with the provisions of the Policy, and by improperly diminishing the account value set forth in Plaintiff's account, Defendant has not only deprived Plaintiff of the fruits of the contract, but has caused further losses to Plaintiff. Said actions constitute breaches of the implied covenant of good faith and fair dealing.

85. Further, the fiduciary relationship inherent in every insurance contract under Alaska law gives rise to an implied covenant of good faith and fair dealing. Defendant's breach of said implied covenant gives rise to an action in tort.

86. Defendant's breaches of the implied covenant of good faith and fair dealing entitle Plaintiff to damages caused by Defendant's breaches, as well as punitive damages.

## COUNT IV

### Securities Fraud Pursuant to 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)

87. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 86 and incorporates the same herein by reference.

88. Pursuant to the Policy, Plaintiff elected to invest its moneys in an investment account option entitled "American Masters Opportunity Insurance Fund, L.P. Account," later named Tremont Opportunity Fund. As stated in the Policy, the objective of such account option was to achieve long-term capital appreciation and consistently generate positive returns irrespective of stock market volatility or direction while focusing on the preservation of capital.

89. Defendants represented that Plaintiff's investment would be placed in such accounts, consistent with Plaintiff's investment objectives and the terms of the Policy and Prospectus provided to Plaintiff by Defendant.

90. Rather than investing the premiums in accordance with the terms of the Policy, Defendant caused a portion of Plaintiff's moneys to be transferred to investment funds that were controlled, taken and lost by Madoff in a fraudulent scheme.

91. Section 10(b) of the Securities Exchange Act, 15 U.S.C. §78j(b) forbids the "use or employ[ment of] . . . any manipulative or deceptive device or contrivance," "in connection with the purchase or sale of any security," and "in contravention of [SEC] rules and regulations."

92. SEC regulations forbid the making "of any untrue statement of a material fact or to omit or state a material fact necessary in order to make the statements made, in

the light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of any security.

93. The AGL PPM contain multiple false and misleading statements as well as omitted material information that should have been contained therein as to constitute a reckless state of mind and the dissemination of the materials. The false and misleading statements contained in the AGL PPM are as follows:

- It stated that the Tremont Opportunity Fund had a "multi-manager concept" which would provide significant diversification and lessening of risks associated with the investment.
- It gave multiple standards for evaluation of the investment which implied that it was actually tracking the value of the investment.
- It failed to state that AGL had not done any due diligence on any funds, including the Tremont Opportunity Fund, either prior to offering or during the time of the Policy.
- It failed to state that almost 23% of the entire investment pool would be in the hands of one manager, thereby effectively eliminating or greatly reducing the concept of diversification.

Such conduct as described above is reckless and materially misleading and in violation of both federal and state security laws.

94. Defendant's misrepresentations and/or omissions were material to Plaintiff, based both on Plaintiff's investment objectives, expectations under the terms of the Policy and as a matter of sound and prudent investment principles.

95. Defendant's misrepresentations and/or omissions were material and misleading at the time they were made (or failed to be made) and were made knowingly, with reckless disregard for their truth or falsity and/or without a genuine belief that the information disclosed was accurate and complete in all material respects.

96. Defendant's misrepresentations and/or omissions were made in connection with the purchase or sale of a security pursuant to the prospectus furnished to Plaintiff by Defendant, upon which Plaintiff relied in entering into the Policy with Defendant.

97. But for Defendant's misrepresentations and/or omissions, Plaintiff would not have placed the premium moneys with AGL for investment.

98. Defendant's misrepresentations and/or omissions were a substantial factor in causing the economic loss suffered by Plaintiff.

**COUNT V**

**Violation of Alaska and Pennsylvania Securities Acts**

99. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 98 and incorporates the same herein by reference.

100. The Alaska Securities Act at AS 45 Chapter 55 §900(a)(7) identifies the variable rate life insurance policy product which is the subject matter of this litigation as a security governed by the provisions of the Alaska Securities Act.

101. Under AS 45:55-10(a) et seq., a person may not in connection with the offer, sale or purchase of a security, directly or indirectly employ a device, scheme or artifice to defraud, nor may they make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, and in the light of the circumstances under which they are made, not misleading, nor may they engage in

any act, practice or course of business that operates or would operate as a fraud or deceit upon a person.

102. Sections 1-401(b) and 1-501(g) of the Pennsylvania Securities Act provides that one who, inter alia, "makes any untrue statement of material fact or omits stating a material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading . . . [is] liable to the person purchasing the security."

103. The Defendant's misrepresentations and/or omissions as set forth in Count IV supra, also constitute a violation of the Alaska Securities Act and the Pennsylvania Securities Act.

104. Pursuant to the Alaska Securities Act and the Pennsylvania Securities Act, Defendant is liable to Plaintiff for all amounts paid to Defendant in connection with the investment, plus interest at the legal rate from the date of payment.

**COUNT VI**

**Professional Negligence, Gross Negligence, and Negligence**

105. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 104 and incorporates the same herein by reference.

106. As an investment manager with discretionary control over the assets entrusted to it by Plaintiff, AGL owed Plaintiff a duty to manage and monitor the investments of Plaintiff with reasonable care. AGL breached that duty.

107. Defendant further breached its duty of care by failing to take all reasonable steps to ensure that the investment of the assets of Plaintiff were made and maintained in a prudent and professional manner, and it failed to take all reasonable steps

to preserve the value of Plaintiff's investments, failed to perform all necessary and adequate due diligence, and it failed to exercise generally the degree of prudence, caution and good business practice that would be expected of any reasonable investment professional.

108. Defendant held itself out to be a professional investment adviser and as such was under a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise.

109. As a direct and proximate result of Defendant's professional negligence, gross negligence, and negligence, Plaintiff has suffered damages.

**COUNT VII**

**Negligent Misrepresentation**

110. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 109 and incorporates the same herein by reference.

111. Defendant owed Plaintiff a duty to act with a reasonable care in connection with the assets entrusted to AGL by Plaintiff and to conduct due diligence to determine the accuracy of information contained in the Policy , the private placement memorandums, and the partnership agreements provided by them to Plaintiff.

112. Defendant has breached its duties knowingly, wantonly, recklessly, or at least negligently, by including untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made reflecting the value of the monies and/or policies, in light of the circumstances under which they were made, not misleading.

113. At the time of the misrepresentations and omissions of material facts by Defendant, Plaintiff was ignorant of their falsity and believed them to be true. Plaintiff relied upon the misrepresentations made by Defendant. Had Plaintiff been aware of the true facts, Plaintiff would not have invested in the Tremont Opportunity Fund and, consequently, the Rye Select funds.

114. Among the facts concealed by Defendant was the fact that approximately 23% of Plaintiff's account had been invested in a single fund. The Defendant had affirmatively represented that a significantly less percentage of the aggregate of such funds would be invested in with any one investment manager, which was an affirmative misrepresentation.

115. Defendant further mislead, misrepresented and deceived Plaintiff by referring to the Madoff accounts as "equity market neutral." when they were not.

116. Neither Plaintiff nor its agents knew of any of the falsity and/or misleading nature of Defendant's statements and omissions and, therefore, relied upon the representations made by Defendant.

117. Defendant's conduct constitutes the making of negligent misrepresentation (including negligent omissions to state facts in the connection with statements that were made) under all applicable law. As a direct and proximate result of the negligent misrepresentations/omissions, and in reliance thereon, Plaintiff has suffered damages.

**COUNT VIII**

**Unjust Enrichment**

118. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 117 of the Complaint and incorporate the same herein by reference.

119. Defendant financially benefited from its unlawful acts as it collected improper management fees based upon the Policy's net asset values. These unlawful acts caused Plaintiff to suffer injury and monetary loss.

120. As a result, it is unjust and inequitable for Defendant to have enriched itself in this manner.

121. Plaintiff is entitled to restitution of the revenue derived from Defendant's unjust enrichment and inequitable conduct.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendant AGL Life Assurance Company as follows:

A. Awarding it compensatory damages suffered as a result of the wrong complained of herein together with appropriate interest;

B. Awarding it costs and expenses of this litigation, including reasonable attorneys' fees and costs of suit;

C. Awarding punitive damages in accordance with applicable law; and

D. Awarding it damages for unjust enrichment and for such other relief as the court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues.

NOEL, KOVACS & McGUIRE, P.C.

Nicholas Noel III

By: Nicholas Noel, III, Esq.

LAW OFFICES OF WILLIAM R. CONNELLY, LLC

By: William R. Connelly, Esq.

**DESIGNATION OF TRIAL COUNSEL**

William R. Connelly, Esq. is designated as trial counsel in this matter.

________________________________
William R. Connelly, Esq.

Dated: April 30, 2010