## Part 8. Partial Withdrawals

**Partial Withdrawals**

Withdrawals from the Investment Accounts may be made on any Monthly Calculation Date. The withdrawal must be requested by you in a form acceptable to us.

Unless other specific instructions are received from you, the withdrawal will be taken from each Investment Account in proportion to your current Account Value in each Investment Account.

If Death Benefit Option 1 is in effect, the Face Amount and future scheduled Face Amounts will be reduced by the amount withdrawn. In every case, the Death Benefit will change according to the Death Benefit provision on page 10.

**Maximum Withdrawal Amount**

The Maximum Withdrawal Amount for this Contract is equal to the Account Value less the sum of the following:

    (a) outstanding loan amount together with unpaid accrued loan interest; and

    (b) the Minimum Net Premium for the current Contract Year; and

    (c) loan interest until the next Contract Anniversary.

However, the Maximum Withdrawal Amount is exceeded whenever such withdrawal would reduce the Face Amount below the Minimum Face Amount stated in Contract Schedule D.

**Minimum Withdrawal Amount**

The amount of each withdrawal must be at least equal to the Minimum Withdrawal Amount shown in Contract Schedule A.

## Part 9. Reports to Contract Holder

**Annual Report**

Each year within 30 days after the Contract Anniversary, we will mail a report to you. The report will show the Account Value at the beginning of the previous Contract Year and all premiums paid since that time. It will also show the additions to, and deductions from, the Account Value during the Contract Year, and the Account Value, Death Benefit, Net Account Value, outstanding Contract Loans and accrued loan interest as of the current Contract Anniversary. This report will also include any additional information required by applicable law or regulation.

## Part 10. Termination Provisions

**Continuation of Insurance**

If premium payments cease, coverage provided under this Contract will continue subject to the Grace Period provision for as long as the Net Account Value is sufficient to cover the Monthly Charges. Any remaining Net Account Value will be payable on the Maturity Date.

**Grace Period**

If the Net Account Value is not sufficient to cover the Monthly Charges due on any Monthly Calculation Date, a Grace Period is allowed for payment of the amount of premium needed to increase the Account Value so that the deduction of monthly charges can be made. This Grace Period begins on the date the deduction is due. It ends 61 days from that date or, if later, 61 days after the date we mail a written notice to you at the last known address shown on our records. This notice will state the amount needed to increase the Account Value to cover the Monthly Charges. During the Grace Period, the insurance coverage will continue in effect.

During the Grace Period, to continue the insurance coverage in force, you must make an additional premium payment at least equal to three (3) times the Monthly Charges due when the Grace Period began, plus any Premium Loads.

**Contract Termination**

This Contract will terminate on the earliest of the following:

    (1) the end of the Grace Period for this Contract; or

    (2) this Contract is surrendered by you; or

    (3) the Maturity Date of this Contract; or

    (4) when all our obligations under this Contract have been fulfilled.

**Surrender**

This Contract may be surrendered for its Net Account Value on any Valuation Date. You must request a Surrender in a form acceptable to us.

## Part 10. Termination Provisions (Continued)

**Reinstatement**

This Contract may be reinstated, prior to the Maturity Date, provided:

(1) satisfactory evidence of insurability is provided to us; and
(2) this Contract has not been surrendered for cash; and
(3) you must request the Reinstatement in a form acceptable to us; and
(4) the request must be within five (5) years of the date of Contract termination; and
(5) the Reinstatement Premium must be paid at the time of Reinstatement. The Reinstatement Premium must be no less than the amount specified in Part 4, Premium Payments; and
(6) the Insured must be alive on the date the Reinstatement becomes effective. The Reinstatement will become effective on the date that it is approved by us.

**Maturity Date**

No insurance coverage will be effective on or after the Maturity Date. If the Insured is living and this Contract is in force on this date the Net Account Value will be paid to you, and of our liability under this Contract will cease.

## Part 11. General Provisions

**Entire Contract**

This Contract is issued in consideration of the Application and the initial premium payment. This Contract and Application, a copy of which is attached, together with any Contract Schedules, any Riders constitute the entire Contract. Any waiver or change of any provision in this Contract must be in writing and signed by an officer of our Company.

**Waiver Not Estoppel**

Our failure to enforce any provision of this Contract will not constitute or be construed as a waiver of such provision or of the right to enforce it at a later time, nor will the waiver of any provision by us on one or more occasions constitute or be construed as a waiver for all occasions and we will not be estopped from enforcing any provision of this Contract except as may be otherwise agreed to in writing by an officer of our Company.

**Right to Amend**

If any provision in this Contract is in conflict with the laws of the state that govern this Contract, the provision will be deemed to be amended to conform with such laws. In addition, this Contract may be amended from time to time by us as may be required to meet the definition of "life insurance" under the Internal Revenue Code, its regulations or published rulings. You will be given the right to reject this change.

**Right to Transfer this Contract**

This Contract may be transferred to the life of a substitute insured. Transfer will be effective on the Transfer Date discussed in the next provision. Transfer will be subject to the following conditions:

(1) The substitute insured must not have been under 20 years of age on the birthday nearest the Policy Date of this Contract;
(2) The substitute insured must not be over 65 years of age on the birthday nearest the Transfer Date;
(3) The substitute insured must consent to be insured;
(4) This Contract must be in force on the Transfer Date;
(5) You must have an insurable interest in the life of the substitute insured after the transfer;
(6) A written application for the transfer must be received by us at our Home Office;
(7) Evidence of insurability of the substitute insured, satisfactory to us, will be required.
(8) After transfer, the Policy Date will be the same as it was before transfer.

**Contract Holder Covenants**

If any information contained in this Contract, Application or Contract Schedules is inaccurate or untrue on the date it is issued, you agree to promptly notify us and provide corrected information.

**Company Covenants**

We agree that all statements in the Application will be deemed representations and not warranties. We also agree that no statement will be used to void this Contract or be used in defense of a claim for the insurance benefits under this Contract unless contained in the Application signed either by you or by the proposed Insured. A copy of the Application is attached to this Contract at issue.

## Part 11. General Provisions (Continued)

**Misstatement of Age or Sex**

If it is found that the amount of any benefit provided by this Contract is incorrect because of misstatement as to the age or sex (if applicable), the amount of the benefit will be adjusted on the basis of the correct facts. The death benefit will be that purchased by the most recent mortality charge at the correct age or sex. We will not adjust the Account Value due to a misstatement of age or sex.

**Incontestability**

During but not after the contestable period, we can contest the validity of this policy or deny payment of benefits if there is any material misrepresentation of fact in the application. The contestable period starts when the policy becomes effective and, except for any agreement providing benefits for disability or for accidental death, ends after it has been in force during the lifetime of the Insured for two years from the Policy Date or from the effective date of any change requiring Evidence of Insurability.

**Evidence of Insurability**

Evidence of insurability may be required for any transaction that increases the Net Amount At Risk (NAR) of this Contract. Transactions that increase the NAR may include: Payment of Subsequent Premiums, a Change of Face Amount or Death Benefit Option, Partial Withdrawal, Reinstatement, or a substitute of insured.

**Method of Computing Values**

A detailed statement of the method used to compute this Contract's benefits and values is filed with the insurance regulatory authority of the Governing Jurisdiction. These benefits and values are not less than those required by the laws of the Governing Jurisdiction.

**Availability of Funds**

Cash payments from this Contract for Contract Loans, Partial Withdrawals or Surrender, and Accumulation Units transferred between or among Investment Accounts will usually be effected within seven days after a satisfactory request is received at our Home Office. Payment may be delayed, however, (except when used to pay amounts due under this Contract) during any period that:

(1) the New York Stock Exchange (or its successor or, if the securities in which the assets of the Investment Accounts are invested are not traded on the New York Stock Exchange, any principal exchange on which such securities are traded) is closed; or

(2) the S.E.C. determines that a state of emergency exists that would make the determination of the value of the securities not reasonably practicable; or

(3) the S.E.C. permits by an order the postponement for the protection of Contract Holders.

**Claims of Creditors**

The proceeds of this Contract will be free from creditor's claims to the extent allowed by law.

**Notice**

Any written notice required by this Contract to be given by us to you will be effective five (5) days after it is mailed by first class mail or fifteen (15) days after it is mailed by third class mail (or when received, if sent by any other means) to you at your last known address as noted on our records. Any written notice required by this Contract to be given by you to us will be effective when received in a form acceptable to us at our Home Office. To be acceptable, a notice must be in written form, in the English language (except where applicable law requires otherwise), must include all pertinent information, and must be signed by you or an individual authorized to act for you and so designated on our records.

**Assignment**

Neither this Contract nor any rights of you or the Beneficiary under it may be assigned or transferred without our written permission.

**Trustee**

If a trustee is Owner, Beneficiary or Assignee of this policy, our actions will be determined by the terms of this policy and without regard to the provisions of any trust agreement. We will not be responsible for the application or disposal of any money paid to a trustee. Any such payment shall fully discharge our liability for the amount paid.

**Severability**

In the event any provision of this Contract is declared illegal or otherwise unenforceable, it will be severed from this Contract and the remainder of this Contract will be valid and enforceable.

**Time Periods**

All time periods mentioned in this Contract will begin and end at 12:01 A.M. local time at the owners address on the date in question.

Dbt f !3;21.dw11342.CNT!!!Epdvn f ou29.2!!!!Gjrfe!15041021!!!Qbhf !67!pg77

# AGL LIFE ASSURANCE COMPANY

**Plymouth Meeting, Pennsylvania**

## ENDORSEMENT

This policy is amended by the following.

You have the right to elect an Extended Maturity Date. You may do this during the twelve-month period before the Policy's original Maturity Date. That date is shown in Schedule A. The Extended Maturity Date must be a Policy Anniversary. It may not be later than the anniversary when the Insured is Age 120. If this is a Survivorship Policy, Age 120 of the younger Insured is the maximum Extended Maturity Date. The Account Value must be a positive amount on the original Maturity Date for this election to take effect.

The terms below will apply after the original Maturity Date. They are:

1. The Death Benefit shall be the Account Value while the Policy continues in effect;
2. Maturity Date shall mean the Extended Maturity Date;
3. The maximum monthly Cost of Insurance rates in Schedule E. shall be 0.0833333 for all future years;
4. Minimum Death Benefit Factors for all ages beyond those shown in Schedule F shall be 1.00;
5. The Death Benefit Option in Part 2. Insurance Plan shall be Option 1 and it may not be changed;
6. We may reject any Premium;
7. The Policy shall not terminate on the original Maturity Date as specified Part 10. Termination Provisions; and
8. All coverage shall cease at the Extended Maturity Date.

Unless modified here, all other terms and provisions of this Policy will continue in effect. You are responsible for all tax consequences arising from the existence of or exercise of this option. This endorsement is attached to and made a part of this policy effective on the Policy Date unless a later date is shown here:

Susan M. Oberlies — Secretary

John F. Dillman — President

END-0001

Dbt f !3;21.dw11342.CNT!!!Epdvn f ou29.2!!!!Gjrhe!15041021!!!Qbhf !68!pg77

# AGL LIFE ASSURANCE COMPANY
## PLYMOUTH MEETING, PENNSYLVANIA
## ENDORSEMENT

This policy is amended by deleting the Notice of 10 Day Right to Examine Your Policy (Free Look Period) replacing it with the following provision.

**Notice of 10 Day Right to Examine Your Policy (Free Look Period)**
**This Contract may be canceled at any time within ten (10) days after it is received or within forty five (45) days after the date of the Application, whichever is later. This Contract must be returned to us at our Home Office or to the agent through whom it was purchased. Written notice of cancellation is also needed. If this Contract is canceled, it will be as though this Contract had never been issued. The Account Value plus all charges and fees will be returned to you minus any Death Benefits paid, Partial Withdrawals taken, and any Contract Loans, together with accrued but unpaid interest on such Contract Loans, if allowed by the law of the Governing Jurisdiction.**

It is further understood that Policy provisions stating that the allocation of the Net Premium will be limited to the Money Market Investment Account during the Free Look Period are rescinded.

This endorsement is attached to and made a part of this policy effective on the Policy Date.

Susan M. Oberlies — Secretary

John F. Willman — President

END-100

# AGL LIFE ASSURANCE COMPANY
## Plymouth Meeting, PENNSYLVANIA

## ENDORSEMENT

This policy is amended by adding the following.

The provisions of this endorsement are in addition to all other terms and conditions of this policy.

Payment of a Death Benefit, Withdrawal Benefit, or Loan Amount may be delayed if the securities in which the assets of the Investment Accounts are invested are not actively traded. That delay may continue until we determine that it is practical to trade such securities. You and any party to whom payment is due may agree to receive the securities as payment. The value of the securities for purposes of that payment will be determined based upon an appraisal by an independent third party. The value assigned to the securities must be accepted in writing by you, the party to whom payment is due, if other than you, and by us. The cost of any appraisal will be deducted from the payment due.

Payment of any amount due that is in no way related to the value of assets that are not actively traded will not be delayed by this endorsement. Such payments will be made in accord with the provisions specified elsewhere in this policy. (Payment of a death benefit consists of the value of assets and the net amount at risk, face amount less account value. Therefore, the death benefit is related to the value of assets.)

This endorsement is attached to and made a part of this policy effective on the Policy Date unless a later date is shown here:

Susan M. Oberlies — Secretary

John F. Dillman — President

Dbtf !3;21.dw.11342.CNT!!!Epdvnfou29.2!!!Gjmfe!1504121!!!Qbhf !6: !pg77

## AGL LIFE ASSURANCE COMPANY
### APPLICATION FOR LIFE INSURANCE--Part I

| NAME First / Middle / Last | Birthdate | Age Nearest | State of Birth | Sex |
|---|---|---|---|---|
| Michael S. Rulle | 7-22-50 | 51 | NY | ☒ Male ☐ Female |

| S.S. no. | Occupation(s) | Marital Status | Maiden Name |
|---|---|---|---|
| [redacted] | President | Married | N/A |

Address--Residence ☐ Send Notices to this address; Choose one only
165 Cherry Lane Mendham, NJ 07945 — Telephone 973-543-0438

Address--Business ☐ Send Notices to this address; Choose one only
Hamilton Partners Ltd.
415 Madison Avenue, New York, NY 10017 — Telephone 212-527-8454

| NAME First / Middle / Last | Relationship to Insured | S.S./Tax ID no. |
|---|---|---|
| The Michael S Rulle Family Dynasty Trust Agreement of acct, dtd 9/27/01 | Trust | 92-6032251 |

| Address ☐ Send Notices to this address; Choose one only | Telephone | Yrs. There |
|---|---|---|
| Alaska Trust Company, Resolution Plaza 1031 W. Third Avenue, Suite 601 Anchorage, AK 99501-1581 | 907-278-6775 | |

Alternative name/address to Send Notices to; complete only if choice not selected above

| Plan of Insurance -- Preferred class (if available) ☐ Yes ☒ No ☒ Non Smoker ☐ Smoker | Amount | Additional Benefits |
|---|---|---|
| Flexible Premium Variable Life | $ 17,600,000 | ☐ Waiver of Premium ☐ Accidental Death ___ Units Family Rider ___ Units Children's Rider ☐ Other ___ |
| Rider Plans: N/A | Amount or units | |

Is this insurance intended to replace or change any existing insurance or annuities on any proposed insured? ☐ Yes ☒ No

Death Benefit Option (only if Universal Life) ☒ Specify amount only. ☐ Specify amount + cash value.

Premium Mode ☒ Annually ☐ Semi-Annually ☐ Quarterly ☐ Monthly PAC ☐ Other ______

Paid with application $ 0 Planned Premium (only if UL) $ — Special Policy Date:

| Primary: Name | Relationship | Contingent: Name | Relationship |
|---|---|---|---|
| The Michael S. Rulle Family Dynasty Trust Agreement of acct, dtd 9/27/01 | | | |

The Beneficiary designation for Family, Spouse or Child Riders is stated in the contract.

Unless otherwise specified, the Owner reserves the right to change the Beneficiary.

| Full Name | Birth Date | Age | Sex | Relationship[1] | Height | Weight | Insurance[2] |
|---|---|---|---|---|---|---|---|
| N/A | | | | | | | |

1) Relationship to Insured; only children under 18 are eligible for family or children's rider.
2) Total insurance in force and/or applied for.

| Company | Policy No. | Year Iss. | Type Plan | Life Amount | ADB Amount |
|---|---|---|---|---|---|
| Phoenix | | 1992 | Life | 4,000,000 | |
| Phoenix | | 1994 | Life | 2,000,000 | |
| Phoenix | | 1996 | Life | 3,000,000 | |
| Phoenix | | 1994 | Surv. Life | 2,000,000 | |
| Nationwide | | 2000 | Life | 750,000 | |

## APPLICATION FOR LIFE INSURANCE--Part I (Continued)

Has any person proposed for insurance:

| Question | Yes | No |
|---|---|---|
| (a) Flown in the last 2 years, or do you intend to take flights other than as a fare paying passenger on a scheduled airline? If yes, complete Aviation Supplement. | ☐ | ☒ |
| (b) Engaged in or intend to engage in any hazardous sport such as any type of land, water or air vehicle racing, parachuting, hang/kite gliding or skin/scuba diving? If yes, give details in Section I. | ☐ | ☒ |
| (c) Had a driver's license suspended or revoked or been convicted in the last 3 yrs. of a moving violation, or of driving while impaired or intoxicated? License no R32175 44326 7502 NJ | ☒ | ☐ |
| (d) Had any military deferment, rejection or discharge due to a physical or mental condition? | ☐ | ☒ |
| (e) In the past three years or intend in the next 12 months, lived, traveled or worked outside of the United States or Canada, or have a temporary or student visa? | ☒ | ☐ |
| (f) Ever requested or received a pension, benefits or payment because of an injury, sickness or disability, or left occupation for more than one month because of health? | ☐ | ☒ |
| (g) Ever been convicted of a felony? | ☐ | ☒ |
| (h) Had any application or policy for life or health insurance declined, rated, restricted, postponed, canceled or reinstatement denied? | ☐ | ☒ |

1. Proposed Insured's Height: 5 ft. 10 in., Weight 188 lbs. (Additional Insureds answer under E.)

2. Personal Physician(s) (Full name, address, telephone no. If none, so state.)
Dr. Scott Campbell 2345 Lamington Road, Ste #104 Bedminster, NJ 07921

3. Has any Proposed Insured ever had, been treated for, or been told by a member of the medical profession that they had any indication of:

| Question | Yes | No |
|---|---|---|
| (a) Disorder of eyes, ears, nose or throat? | ☐ | ☒ |
| (b) Dizziness, fainting, convulsions, headache; speech defect, paralysis, stroke or any other disorder of the brain or nervous system; mental or emotional disorder? | ☐ | ☒ |
| (c) Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☒ | ☐ |
| (d) Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☒ |
| (e) Cirrhosis, jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, other disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☒ |
| (f) Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of the kidney, bladder, prostate? | ☐ | ☒ |
| (g) Diabetes; thyroid or other endocrine disorders? | ☐ | ☒ |
| (h) Neuritis, sciatica, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | ☐ | ☒ |
| (i) Deformity, lameness or amputation? | ☐ | ☒ |
| (j) Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☒ |
| (k) Allergies, anemia, leukemia or other disorder of the blood? | ☐ | ☒ |
| (l) Acquired Immune Deficiency Syndrome (AIDS), "AIDS" Related Complex (ARC); or infection with the "AIDS" (Human T-Cell Lymphotropic, Type III, HTLV-III) virus? | ☐ | ☒ |
| (m) Abnormal menstruation, pregnancy; disease of the uterus, ovaries, breasts, prostate or testicles; other disorder of reproductive organs? | ☐ | ☒ |

4. Does any Proposed Insured use alcohol? Yes ☒ No ☐
How much? 0-2 glasses of wine How often? A night

5. Has any Proposed Insured:

| Question | Yes | No |
|---|---|---|
| (a) Ever used alcohol or other drugs to a degree that required treatment or advice from a physician, licensed practitioner, or any organization which helps those who have an alcohol or drug problem? | ☐ | ☒ |
| (b) Ever used marijuana, barbiturates, amphetamines, hallucinogens, heroin, opiates, tranquilizers, Dilaudid, Demerol, codeine, morphine or cocaine? How much? How often? | ☐ | ☒ |
| (c) Had any change in weight in the past year? | ☐ | ☒ |
| (d) Smoked cigarettes or used tobacco in any form in the last 12 months? Yes, circle those that apply: Cigarettes, Cigars, Pipe, Other Amount Used Daily: | ☐ | ☒ |
| (e) In the past five years, had a checkup, consultation, illness, injury, electrocardiogram, or other diagnostic test or surgery? | ☒ | ☐ |
| (f) In the past five years, been a patient in a hospital, clinic, sanitarium, or other medical facility? | ☐ | ☒ |

| Question | Yes | No |
|---|---|---|
| 6. Is any Proposed Insured now under observation or taking any treatment or medication? | ☒ | ☐ |
| 7. Has any member of any Proposed Insured's immediate family been diagnosed or treated for heart disease; high blood pressure; diabetes cancer; or mental or nervous disorder? | ☐ | ☒ |

8. Family History:

| | Proposed Insured | Add'l Insured |
|---|---|---|
| **Father** | | |
| Age if living or age @ death | 70's | |
| Health if living or cause of death | Heart Disease | |
| **Mother** | | |
| Age if living or age @ death | 70's | |
| Health if living or cause of death | Heart Disease | |

APPLICATION FOR LIFE INSURANCE—Part I (Continued)

GIVE COMPLETE DETAILS FOR ANY PART OF SECTION G AND FOR SECTION H, QUESTIONS 3, 5, 6 AND 7 ANSWERED "YES". (Identify person by name)

| Section/ Question | Nature of disorder, frequency of attacks and treatment | Date and Duration | Name & address of doctors, practitioner, hospital, medical institution or facility. |
|---|---|---|---|
| 6 (b) | Speeding Tickets | [illegible] | |
| 6 (c) | Travel | | [illegible] |
| 7 | | | [illegible] |
| 7 (c) | Asthma as a child | | [illegible] |
| 5 (a) | [illegible] | 4/01 | [illegible] |
| | Stress Echo – normal | 4/01 | Dr. [illegible] |
| | [illegible] | | Dr. Campbell |
| | Colonoscopy – [illegible] | | Dr. Burnstein |
| | | | |
| G | [illegible] | | [illegible] |

Home Office Use Only (See K. 3. below)

I/We represent that all answers to the questions in this application and any medical examinations required, are complete and true to the best of my/our knowledge and belief, and I/we agree that:

(1) The answers to these questions, together with this agreement, are the basis for issuing any policy;
(2) Only the President or a Vice President of the Company can make or change any contract or waive any of the Company's rights or requirements;
(3) By accepting any policy issued, I/we ratify any changes made to this application by the Company and set out in the "Additions and Amendments" section (No change will be made as to age, amount, class, plan or benefits unless the Owner agrees in writing.);
(4) Except as provided in the Conditional Receipt, no insurance will take effect until the first modal premium is paid and the policy is delivered to the Owner while there has been no change in the insurability from the date of application of all persons proposed for insurance.

I/We authorize any physician, medical practitioner, hospital, clinic, other medical or medically related facility; Veterans Administration, insurance or reinsurance company; the Medical Information Bureau, consumer reporting agency or other organization, institution, employer, relative, friend or neighbor to disclose to AGL Life Assurance Company and/or its reinsurers, medical and other information pertaining to me/us or any of my/our minor children who are proposed for insurance. The information that may be disclosed includes information about employment, other insurance, physical, mental, drug and/or alcohol conditions, character, habits, avocations, finances, general reputation, credit and other personal characteristics. I/we understand that the information obtained is for the purpose of determining eligibility for insurance and that this information may be reviewed in connection with claims that are later submitted. I/we agree that this authorization will be valid for two and one-half years from the date signed and that a photographic copy of this authorization is as valid as the original. I/we may request a copy of this authorization.

☐ If an investigative consumer report is obtained about me/us, I/we wish to be interviewed.

I/we have read and understand these representations, conditions and authorization and acknowledge receipt of notices regarding disclosure and the underwriting process.

Signed at (City, State) Anchorage, AK on (Month, Day) Oct. 5, 20 01

X [signature]
Proposed Insured's Signature (parent or guardian if minor)

X [signature] Administrator
Spouse's Signature (if required)

X [signature]
Agent's Signature

Owner's Signature (if other than Proposed Insured)
(If business is owner, signature & title of company officer)

Signatures of Additional Proposed Insureds, if any

X [signature]
Celia R. Rullo, Trustee

X [signature]
Frank Gelardin, Trustee

APP-091

## AGENT'S REPORT

1. Has Proposed Insured lived at present address at least 5 years? ☒ Yes ☐ No
If no, give previous address

2. What is Proposed Insured's Income? $ Earned, $ Unearned; Net Worth? $23,916,913

3. Give name and address of Proposed Insured's employer Hamilton Partners Ltd
415 Madison Ave, New York, NY 10017
Time in occupation? 11/2 Describe duties Administration / Investment decisions
Previous employment and address if less than 3 years. CIBC Oppenheimer, World Fin. Center NY

4. Do you know or have reason to believe that replacement of insurance is involved? ☐ Yes ☒ No
If yes, explain and complete replacement form where required.

5. Have arrangements been made for an examination? ☒ Yes ☐ No
Date 4-12-01 Examiner APPS

6. If Proposed Insured is under age 15, amount of insurance on head of household $ N/A

7. If Proposed Insured is married, insurance on spouse for benefit of Proposed Insured $

8. If Owner is a corporation: State of incorporation? . Does the corporation own any other insurance on the life of the Proposed Insured? ☐ Yes ☐ No; Amount $ Company
If Owner is a partnership: Exact name of partnership
Current value of business
Full names of partners and percentage of business owned:
% %
% %
Are all partners insured or applying for insurance? ☐ Yes ☐ No; If no, explain

9. If Owner or Beneficiary is a Trustee, give date of Trust 9/27/01; specify in Owner or Beneficiary designation.

10. If this application is on a PAC, bank draft, basis and added to an existing account, give the Insured's name and policy number N/A

11. What is the primary purpose of this sale? Tax and Estate Planning

12. Other Details

1. Name: Agent Mark Dunn General Agent
2. Number: 10044

I represent that: ☒ I have personally seen
☐ I have not personally seen (Explain under A.12. above)

all the persons proposed for insurance. I affirm that I have made a true and accurate record on this application of the information as supplied to me by the Proposed Insured(s) and/or the Owner/Applicant. To the best of my knowledge and belief there is nothing adversely affecting the insurability of any person proposed for insurance that has not been recorded in this application. I have provided all required disclosures and notices as required by law or regulation.

Agent's Signature X [signature] Date (Month, Day) 10-5, 2001

Application Supplement for Variable Life Insurance
Issued and Administered
by

# AGL LIFE ASSURANCE COMPANY

Complete this application supplement and mail it along with Application Part I to
AGL Life Assurance Company
510 West Germantown Pike, Suite 460, Plymouth Meeting, PA 19462

## A. Owner's Name

Name
The Michael S. Rulle Family Dynasty Trust Agreement of 2001, dtd 9/27/01

## B. Net Premium Allocation

The Amounts allocated are in percentages or dollars (in whole numbers of not less than 10% or $250).

| | Investment Account | Percent | or | Dollar Amount |
|---|---|---|---|---|
| ☒ | American Masters Opportunity Ins. Fund L.P. Account | 100 % | or | $ |
| ☐ | | % | or | $ |
| ☐ | | % | or | $ |
| ☐ | | % | or | $ |
| ☐ | | % | or | $ |
| ☐ | | % | or | $ |
| ☐ | | % | or | $ |
| | Total | 100% | or | $ |

## C. Please read these sections and sign below.

SUITABILITY

BY SIGNING BELOW, YOU ACKNOWLEDGE RECEIPT OF THE PRIVATE PLACEMENT MEMORANDUM. THE CONTRACT VALUE AND CASH SURRENDER VALUE WHEN BASED ON A SEPARATE ACCOUNT MAY INCREASE OR DECREASE ON ANY DAY DEPENDING UPON THE INVESTMENT RESULTS. NO MINIMUM CASH SURRENDER VALUE IS GUARANTEED. ALL SURRENDER VALUES UNDER THE CONTRACT ARE VARIABLE AND ARE NOT GUARANTEED AS TO FIXED DOLLAR AMOUNTS. THE DEATH BENEFIT MAY BE VARIABLE OR FIXED UNDER SPECIFIED CONDITIONS.

AGREEMENT

I understand the entire portion of any net purchase payment that I allocate to the Variable Account will be invested in the Money Market Subaccount until the end of the Free Look period.

I recognize that AGL Life Assurance Company is not a bank and shares of the subaccounts are not backed or guaranteed by any bank or insured by the FDIC.

ALL PREMIUM CHECKS MUST BE MADE PAYABLE TO AGL LIFE ASSURANCE COMPANY.

DO NOT MAKE THE CHECK PAYABLE TO ANY AGENT. PLEASE DO NOT LEAVE PAYEE BLANK.

Date of Private Placement Memorandum Received 10/5/01

Signed at
City Anchorage State AK on (Date) 10/5/01

Owner X [signature] Agent Signature X [signature]

X [signature]
Delia R. Rulle, Trustee

X [signature]
Frank Celardia, Trustee

VLSP-296

APPLICATION FOR LIFE INSURANCE—Part II

APPS

☑ New Business ☐ Requalification

**A. PROPOSED INSURED**

NAME First Michael Middle Cillo Last S.S. no. [redacted]

Address 165 Cherry Lane Street City Mendham State NJ Zip Code 07945

**B. INSURABILITY DATA**

1. Personal Physician(s) (Full name, address, and telephone no. If none, so state.) Scott Campbell, MD, 2345 Lamington Rd, Bedminster NJ

2. Has any Proposed Insured ever had, been treated for, or been told by a member of the medical profession that they had any indication of: (Yes / No)

(a) Disorder of eyes, ears, nose or throat? ☐ ☑
(b) Dizziness, fainting, convulsions, headache; speech defect, paralysis, stroke or any other disorder of the brain or nervous system; mental or emotional disorder? ☐ ☑
(c) Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? ☑ ☐
(d) Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? ☐ ☑
(e) Cirrhosis, jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, other disorder of the stomach, intestines, liver or gallbladder? ☐ ☑
(f) Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of the kidney, bladder, prostate? ☐ ☑
(g) Diabetes; thyroid or other endocrine disorders? ☐ ☑
(h) Neuritis, sciatica, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? ☐ ☑
(i) Deformity, lameness or amputation? ☐ ☑
(j) Disorder of skin, lymph glands, cyst, tumor, or cancer? ☐ ☑
(k) Allergies, anemia, leukemia or other disorder of the blood? ☐ ☑
(l) Abnormal menstruation, pregnancy; disease of uterus, ovaries, breasts, prostate, testicles; other disorder of reproductive organs? ☐ ☑

3. Has any Proposed Insured been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS), or an "AIDS" Related Complex (ARC)? ☐ ☑

4. Does the proposed insured use alcohol? ☑ ☐ How much? How often? 0-2 glasses wine / night

5. Has proposed insured
(a) Ever used alcohol or other drugs to a degree that required treatment or advice from a physician, licensed practitioner, or any organization which helps those who have an alcohol or drug problem? ☐ ☑
(b) Ever used marijuana, barbiturates, amphetamines, hallucinogens, heroin, opiates, tranquilizers, Dilaudid, Demerol, codeine, morphine or cocaine? How much? How often? ☐ ☑
(c) Had any change in weight in the past year? ☐ ☑
(d) Smoked cigarettes or used tobacco in any form in the last 12 months? Yes, as follows: Cigarettes, Cigars, Pipe, Other. Amount Used Daily: ☐ ☑
(e) In the past five years, had a checkup, consultation, illness, injury, electrocardiogram, or other diagnostic test or surgery? ☑ ☐
(f) In the past five years, been a patient in a hospital, clinic, sanitarium, or other medical facility? ☐ ☑

6. Is Proposed Insured now under observation or taking any treatment or medication? ☑ ☐

7. Has any member of Proposed Insured's immediate family been diagnosed or treated for heart disease; high blood pressure; diabetes, cancer, disorders of the immune system or mental or nervous disorder? ☐ ☑

**C. DETAILS**

GIVE COMPLETE DETAILS FOR ANY PART OF SECTION B QUESTIONS 2, 3, 5, 6 AND 7 ANSWERED "YES"

| Question | Nature of disorder, frequency of attacks and treatment | Date and Duration | Name & address of doctors, practitioner, hospital, medical institution or facility |
|---|---|---|---|
| 2c | Asthma as child - no recurrence since age 17 | | |
| 5e | ECG - normal | Done last week | done as annual checkup asymptomatic |
| | Stress Echo - normal | | Done by Dr Lawrence Inra, East 70th St, New York City |
| 5e | Previous annual checkups at Dr Scott Campbell | | name & address above |
| 5e | Colonoscopy at Dr Bernstein, New York City, test was negative | | |

6. Taking Lipitor for 2 months

7 Both parents died in 70's & heart disease

**D. REPRESENTATIONS AND AUTHORIZATION**

I represent that all answers to the questions in this application are complete and true to the best of my knowledge and belief. I understand that (1) this completed application part will be part of my application for insurance and any policy issued; and (2) that any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

I authorize any physician, medical practitioner, hospital, clinic, other medical or medically related facility, Medical Information Bureau or other organization or person to disclose to AGL Life Assurance Company and/or its reinsurers, medical and other information pertaining to me or my minor child proposed for insurance. The information that may be disclosed includes information about employment, other insurance, physical, mental, drug and/or alcohol conditions, character, habits, avocations, finances, general reputation, credit and other personal characteristics. I understand that the information obtained is for the purpose of determining eligibility for insurance and that this information may be reviewed in connection with claims submitted later. I agree that this authorization will be valid for two and one-half years from the date signed and that a photographic copy of this authorization is as valid as the original. I may request a copy of this authorization.

I have read and understand these representations and this authorization.

Signed at (City, State) ______ on (Month, Day) 4/12, 19 2001

[signature] Proposed Insured's Signature (parent or guardian if minor)

[signature] Witness: Examiner/Underwriting Technician

Dbt f !3;21.dw 11342.CNT!!!Epdvn f ou29.2!!!!Gjmfe!1504102 1!!!Qbhf !76!pg77

APPLICATION FOR LIFE INSURANCE--Part II (Continued)

**E. HISTORY**

| Place of Birth: New York City | Occupation: Investment Manager |
|---|---|
| Birth Date: 7/22/50 | Employer: Hamilton Partners |

| Family History | Spouse | | Father | | Mother | |
|---|---|---|---|---|---|---|
| Age if living or age @ death | 44 | | 70's | | 70's | |
| Health if living or cause of death | Excellent | | heart disease | | heart disease | |
| Brothers/Sisters (Circle B or S) | B (S) | B (S) | B /S | B /S | B /S | B /S |
| Age if living or age @ death | 59 | 38 | | | | |
| Health if living or cause of death | A+W | Breast Cancer | | | | |

**F. MEDICAL REPORT** - TO BE COMPLETED AND SIGNED BY EXAMINER/UNDERWRITING TECHNICIAN

| 1 Height (in shoes) | Weight (clothed) | Chest (Full Inspiration) | Chest (Full Expiration) | Abdomen, at umbilicus |
|---|---|---|---|---|
| ft 5'10 in. | 188 lbs. | 42½ in. | 40 in. | 37 in. |

| 2 Blood Pressure (Record ALL readings.) | | At Rest | Immediately Post Exercise |
|---|---|---|---|
| | Systolic | 120 | 130 |
| | Diastolic, 5th phase | 86 | 78 |

| 3 Pulse | | At Rest | After Exercise | 3 Minutes Later |
|---|---|---|---|---|
| | Rate | 87 | 150 | 102 |
| | Irregularities per minute | NO | NO | NO |

4. Heart: Is there any Enlargement? [ ] Yes [✓] No Murmur(s)? [ ] Yes [✓] No Dyspnea? [ ] Yes [✓] No Edema? [ ] Yes [✓] No

(Describe below - if more than one, describe separately)

Location

Constant [ ] [ ]
Inconstant [ ] [ ]
Transmitted [ ] [ ]
Localized [ ] [ ]
Systolic [ ] [ ]
Presystolic [ ] [ ]
Diastolic [ ] [ ]
Soft (Gr. 1-2) [ ] [ ]
Mod. (Gr. 3-4) [ ] [ ]
Loud (Gr. 5-6) [ ] [ ]
After exercise:
Increased [ ] [ ]
Absent [ ] [ ]
Unchanged [ ] [ ]
Decreased [ ] [ ]

MSL
MCL

Indicate apex by X
Indicate murmur area by O
Indicate transmission by →

5. Is there on examination any abnormality of the following (circle items that apply and give details): Yes No DETAILS

(a) Eyes, ears, nose, mouth, pharynx? If vision or hearing markedly impaired indicate degree and correction. [ ] [✓]
(b) Skin (incl scars); lymph nodes; varicose veins or peripheral arteries? [ ] [✓]
(c) Nervous system (include reflexes, gait, paralysis)? [ ] [✓]
(d) Respiratory system? [ ] [✓]
(e) Abdomen (include scars)? [ ] [✓]
(f) Genitourinary system (include prostate)? [ ] [✓] — prostate declined, had recently c PMD
(g) Endocrine system (incl. thyroid and breasts)? [ ] [✓]
(h) Musculoskeletal system (include spine, joints, amputations, deformities? [ ] [✓]

6. Are there any: (a) hernias? [ ] [✓] (b) hemorrhoids? [ ] [✓]

7. Are you aware of additional medical history? [ ] [✓] (A confidential report may be sent to the Medical Director.)

8. A home office urine specimen is required as part of this examination. Has it been sent? [✓] [ ]

9. Classify applicant's general health: Excellent [✓] Average [ ] Poor [ ]

10. NAME OF AGENT REQUESTING EXAMINATION.

Examined at Medical Office Date 4/12/01 2001 Time 12:00 P.M.

Examiner/Underwriting Technician Anthony Iuzzolino, M.D. Print Name

Address: 33 Overlook Rd. Suite 303 Summit

For Requalification mail to: Preferred Insured Dept., Box 846, Blue Bell, PA 19422
For New Business mail to. New Business Dept., Box 876, Blue Bell, PA 19422

Dbtf !3;21.dw11342.CNT!!!Epdvn f ou29.2!!!!Gjrfie!15041021!!!Qbhf !77!pg77

# FLEXIBLE PREMIUM VARIABLE LIFE INSURANCE CONTRACT

Variable Life Insurance.
Face Amount payable if Insured dies while the policy is in force.
Flexible Premiums payable while the Insured is living until the Maturity Date.
Non participating, no dividends are payable.

## AGL Life Assurance Company

Home Office: 610 West Germantown Pike, Suite 460, Plymouth Meeting, Pennsylvania 19462