IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL S. RULLE FAMILY DYNASTY
TRUST,

                    Plaintiff,

        v.

AGL LIFE ASSURANCE COMPANY,

                  Defendant.

:
:
:
:
:
:
:
:
:
:

Civil Action No. 2:10-cv-0231

Hon. Berle M. Schiller

ORDER

AND NOW, this       day of          , 2010, upon consideration of Defendant's,

AGL Life Assurance Company's, Motion to Dismiss the Amended Complaint, and any

opposition thereto, it is hereby ORDERED and DECREED that the Amended Complaint is

DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

Berle M. Schiller, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL S. RULLE FAMILY DYNASTY TRUST, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 2:10-cv-0231 |
| AGL LIFE ASSURANCE COMPANY, | ) Hon. Berle M. Schiller |
| Defendant. | ) |

### DEFENDANT AGL LIFE ASSURANCE COMPANY'S MOTION PURSUANT TO RULES 12(b)(6) AND 9(b) TO DISMISS THE AMENDED COMPLAINT

Defendant, AGL Life Assurance Company, by its undersigned counsel, and pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 9(b), respectfully requests that this Court dismiss

in its entirety the Amended Complaint of Plaintiff, Michael S. Rulle Family Dynasty Trust. The

grounds for this Motion are set forth in the attached Memorandum of Law, which is hereby

incorporated in full.

Dated: May 18, 2010

Respectfully submitted,

_____/s_____
Mathieu J. Shapiro
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania 19103-1895
Phone: (215) 665-3000
Fax: (215) 665-3165

-- and –

Of Counsel:
Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendant
AGL Life Assurance Company

4470439

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MICHAEL S. RULLE FAMILY DYNASTY TRUST,** | ) ) | |
| **Plaintiff,** | ) | **Civil Action No. 2:10-cv-0231** |
| **v.** | ) | **Hon. Berle M. Schiller** |
| **AGL LIFE ASSURANCE COMPANY,** | ) ) | |
| **Defendant.** | ) | |

## DEFENDANT AGL LIFE ASSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Mathieu J. Shapiro
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania  19103-1895
Phone:  (215) 665-3000
Fax:  (215) 665-3165

Of Counsel:

Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP LLP
919 Third Avenue
New York, New York  10022
Phone:  (212) 909-6000
Fax:  (212) 909-6836

Attorneys for Defendant
AGL Life Assurance Company

# TABLE OF CONTENTS

Page

Preliminary Statement...................................................................................................1

Background ...................................................................................................................2

Legal Argument ...........................................................................................................4

I.    The Breach of Contract Claim Should Be Dismissed Because The Plain Language
      Of The Contract Shows That There Was No Breach...........................................5

      A.    Plaintiff's Account Was Properly Valued According To The Terms Of
            The Contract...............................................................................................6

      B.    The Contract Did Not Promise The Degree Of Diversification Alleged.................8

II.   The Federal And State Securities Fraud Claims Should Be Dismissed Because Of
      Plaintiff's Failure To Plead Fraud With Particularity As Required By Rule 9(b)
      And The Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) And
      (2)..................................................................................................................9

      A.    The Alleged Misrepresentations Were Not False .................................11

      B.    The Omissions Did Not Render Any Statements Materially Misleading.............12

      C.    There Is No Adequate Allegation of Scienter For Any Of the Alleged
            Misrepresentations Or Omissions ..........................................................14

III.  The Pennsylvania Securities Act and Alaska Securities Act Fraud Claims Should
      Be Dismissed Because The Policy Is Not A Security Under Either Act ...........16

IV.   Plaintiff's Remaining Claims Are Governed By Pennsylvania Law.................17

      A.    The Contractual Choice Of Law Provision Does Not Control These
            Claims ......................................................................................................17

      B.    Pennsylvania's Choice Of Law Rules Establish That Pennsylvania Law
            Governs ....................................................................................................18

V.    The Breach Of Fiduciary Duties Claim Should Be Dismissed Because AGL Owed
      No Such Duties To Plaintiff.............................................................................21

      A.    The Arms-Length Transaction Did Not Give Rise To A Fiduciary
            Relationship .............................................................................................21

      B.    The Policy Documents Expressly Foreclose the Duty Plaintiff Seeks to
            Imply ........................................................................................................23

i

C.     AGL Was Not A Broker-Dealer or Plaintiff's Agent ...........................................25

D.     The "Gist Of The Action" Doctrine Precludes Implication Of Fiduciary Duties Here .............................................................................................................27

E.     There Is No Special Insurer-Insured Duty Here ....................................................27

VI.     The Breach Of Common Law Duty Of Good Faith And Fair Dealing Claim Is Precluded Under Pennsylvania Law ................................................................................28

VII.    The Professional Negligence, Negligence and Gross Negligence Claims Should Be Dismissed Because AGL Owed Plaintiff No Duty Outside Of The Policy And The Claims Are Barred By The Economic Loss And Gist Of The Action Doctrines ...........................................................................................................................28

VIII.   The Negligent Misrepresentation Claim Is Not Cognizable At Law And Lacks Any Factual Support In The Complaint ..........................................................................30

A.     Plaintiff Has Not Adequately Pled The Second Alleged Misrepresentation .........31

B.     The First Alleged Misrepresentation Is Based On A Non-Actionable Parol Statement...............................................................................................................31

C.     Pennsylvania's "Economic Loss" And "Gist of the Action" Doctrines Bar Recovery For Either Alleged Misrepresentation .....................................................31

D.     Plaintiff Fails To State A Prima Facie Claim For Negligent Misrepresentation...................................................................................................32

IX.     Plaintiff's Unjust Enrichment Claim Cannot Survive Because There Is An Undisputed Contract That Governs The Transaction Between The Parties ......................34

CONCLUSION.......................................................................................................................35

ii

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*2-J Corp. v. Tice*, 126 F.3d 539 (3d Cir. 1997)...............................................................29

*Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491 (E.D. Pa. 2008) .....................34

*ASCG, Inc. v. Coffman*, No. 98-35685, 2000 U.S. App. LEXIS 21015 (9th Cir. Aug. 16, 2000) ...............................................................................................................................5

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ..........................................4, 5, 13, 14, 15, 16, 27, 31, 33

*Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978 (1988).........................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................4, 16, 31

*Berkowitz v. Conrail, Inc.*, No. Civ. A. 97-1214, 1997 WL 611606 (E.D. Pa. Sept. 25, 1997) ...........................................................................................................................12

*Binary Semantics Ltd. v. Minitab, Inc.*, Civ. A. No. 4:07-CV-1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008)..........................................................................................22

*Binary Semantics Ltd. v. Minitab, Inc.*, Civ. A. No. 4:07-CV-1750, 2008 WL 1981591 (M.D. Pa. May 1, 2008) ........................................................................................22, 23

*Black Box Corp. v. Markham*, 127 Fed. Appx. 22 (3d Cir. 2005) .................................18

*Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394 (E.D. Pa. 2002) ..............................................................................................28, 31, 32

*Coram Healthcare Corp. v. Aetna U.S. Healthcare*, 94 F. Supp. 2d 589 (E.D. Pa. 1999)............18

*Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc.*, 55 F. Supp. 2d 337 (E.D. Pa. 1999) ...........................................................................................................................25

*Gilmour v. Bohmueller*, No. Civ. A. 04-2535, 2005 WL 241181 (E.D. Pa. Jan. 27, 2005) .........30

*Grimm v. Discover Fin. Serv.*, Civ. A. Nos. 08-747, 08-832, 2008 U.S. Dist. LEXIS 89709, 2008 WL 4821695 (W.D. Pa. Nov. 4, 2008) ...............................................18

*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007) ...................................17, 19

*Huber v. Taylor*, 469 F.3d 67 (3d Cir. 2006)..................................................................19

*Hults v. Allstate Septic Sys.*, Civ. A. No. 4:06-0541, 2007 WL 2253509 (M.D. Pa. Aug. 3, 2007) ...........................................................................................................................30

*In re Nutrisystem Sec. Litig.*, 653 F. Supp. 2d 563 (E.D. Pa. 2009) ..............................14

iii

*In re TCW/DW N. Am. Gov't. Income Trust Sec. Litig.*, 941 F. Supp. 326 (S.D.N.Y. 1996)........33

*In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08 Civ. 11117,
  2010 U.S. Dist. LEXIS 32216 (S.D.N.Y. Mar. 30, 2010) ................................................13, 16

*In re: Exxon Valdez Polar Equip. Inc. v. Exxon Mobil Corp.*, 318 Fed. Appx. 545 (9th
  Cir. 2009) ...........................................................................................................................5

*Institutional Investors Group v. Avaya*, 564 F.3d 242 (3d Cir. 2009) ...........................................14

*Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569 (E.D. Pa. 1994) ........................17

*Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693 (E.D. Pa. 2008) ....................................10, 14

*McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007) ....................................................10

*N. Am. Roofing & Sheet Metal Co., Inc. v. Bldg. & Constr. Trades Council of
  Philadelphia & Vicinity*, No. 99-2050, 2000 WL 230214 (E.D. Pa. Feb. 29, 2000)..............31

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir. 1993) ...................3

*Pryor v. NCAA*, 288 F.3d 548 (3d Cir. 2002) ...............................................................................3

*Rock v. Voshell*, 397 F. Supp. 2d 616 (E.D. Pa. 2005) ................................................................29

*Rosen v. Commc'n Serv. Group*, 155 F. Supp. 2d 310 (E.D. Pa. 2001) .............................9, 10, 13

*Smith v. Lincoln Benefit Life Co.*, Civ. A. No. 08-01324, 2009 U.S. Dist. LEXIS 24941
  (W.D. Pa. Mar. 23, 2009)...............................................................................17, 18, 19, 28

*Specialty Ins. v. Royal Indem. Co.*, 324 F. Supp. 2d 674 (E.D. Pa. 2004)....................................29

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644 (W.D. Pa.
  1999) ..................................................................................................................29, 30, 32

*Taylor v. First Union Corp. of S. Carolina*, 857 F.2d 240 (4th Cir. 1988) ..................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)..............................................14

*Wallace v. Sys. & Computer Tech. Corp.*, No. Civ. A. 95-CV-6303, 1997 WL 602808
  (E.D. Pa. Sept. 23, 1997) .................................................................................................3

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007).......................................................14

*Zavecz v. Yield Dynamics*, 179 Fed. Appx. 116 (3d Cir. 2006)................................................5, 18

iv

**ALASKA STATE CASES**

*Alaska v. Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d 1329 (Alaska 1981)............................5

*Asher v. Alkan Shelter*, 212 P.3d 772 (Alaska 2009)...................................................11

*Fairbanks N. Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020 (Alaska 1986).........................5

*Johnson v. Curran*, 633 P.2d 994 (Alaska 1981)..........................................................9

*O.K. Lumber Co., Inc. v. Providence Washington Mut. Ins. Co.*, 759 P.2d 523 (Alaska 1988) ...............................................................................................................28

*Still v. Cunningham*, 94 P.3d 1104 (Alaska 2004).......................................................8

*Sullivan v. Alaska*, No. 7009, 1984 WL 908620 (Alaska Ct. App. Aug. 22, 1984) ...............10, 14

*Valdez Fisheries Dvpt. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657 (Alaska 2002) ...............................................................................................................5

**PENNSYLVANIA STATE CASES**

*Atchison Casting Corp. v. Deloitte & Touche, LLP*, No. 003193, 2003 WL 1847665 (Pa. Com. Pl. Mar. 14, 2003) ...........................................................................................27

*Basile v. H & R Block, Inc.*, 761 A.2d 1115 (Pa. 2000).................................................26

*Bortz v. Noon*, 729 A.2d 555 (Pa. 1999)...............................................................32

*Cooper v. Frankford Healthcare Sys., Inc.*, 960 A.2d 134 (Pa. Super. Ct. 2008) .........................28

*Decker v. Nationwide Ins. Co.*, 83 Pa. D. & C.4th 375 (Pa. Com. Pl. 2007)................................27

*Elliott v. Clawson*, 204 A.2d 272 (Pa. 1964) ...........................................................23

*Estate of Evasew*, 584 A.2d 910 (Pa. 1990)...............................................................22

*Estate of Thomas*, 344 A.2d 834 (Pa. 1975) ...............................................................22

*eToll v. Elias/ Savion Adver.*, 811 A.2d 10 (Pa. Super. Ct. 2002) ....................................21, 22, 29

*Frowen v. Blank*, 425 A.2d 412 (Pa. 1981) ...............................................................22

*Henry v. First Fed. Sav. & Loan Ass'n of Greene County*, 459 A.2d 772 (Pa. Super. Ct. 1983) ...............................................................................................................29

v

*Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1990) ........................22

*McCrery v. Scioli*, 485 A.2d 1170 (Pa. Super. Ct. 1984) .................................................................26

*Silver v. Silver*, 219 A.2d 659 (Pa. 1966) .......................................................................................22

*Smith v. Renaut*, 564 A.2d 188 (Pa. Super. Ct. 1989) .....................................................................12

*Villoresi v. Femminella*, 856 A.2d 78 (Pa. Super. 2004) ................................................................34

*Wiernik v. PHH U.S. Mortgage Corp.*, 738 A.2d 616 (Pa. Super. Ct. 1999) ................................34

*Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425 (Pa. 2004) ........................................................9

*Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 31053838 (Pa. Com. Pl. Sept. 11, 2002) ...........................................................................................................................................12

## FEDERAL RULES & STATUTES

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................................1

Federal Rule of Civil Procedure 9(b) ............................................................1, 9, 13, 14, 16, 31

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ..........................................9, 10, 14

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ........................................................................................10

## ALASKA STATUTES

Alaska Securities Act, § 45.55.010(a) .....................................................................................10, 12

Alaska Securities Act, § 45.55.900(a) ..............................................................................................17

## PENNSYLVANIA RULES & STATUTES

Eastern District of Pennsylvania Rule of Civil Procedure 5.1.2(6) ...................................................3

Pennsylvania Rule of Civil Procedure 1042.1 .................................................................................30

Pennsylvania Securities Act, 70 P.S. § 1-102(t) ..............................................................................16

Pennsylvania Securities Act, 70 P.S. § 1-401(b) .............................................................................10

Pennsylvania Securities Act, 70 P.S. § 1-501(g) .............................................................................10

**OTHER AUTHORITIES**

Restatement (Second) of Conflicts of Laws, § 145 .................................................................18, 20

Defendant AGL Life Assurance Company ("Defendant" or "AGL") respectfully submits this memorandum in support of its motion, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss in its entirety the Amended Complaint of The Michael S. Rulle Family Dynasty Trust ("Plaintiff" or the "Rulle Trust").

## PRELIMINARY STATEMENT

This action is an attempt by a sophisticated investor to make AGL, the issuer of a variable premium life insurance policy (the "Policy") to Plaintiff, responsible for losses experienced by Plaintiff in an investment he chose. Michael Rulle ("Rulle"), an experienced hedge fund manager, invested his policy premiums in an investment fund that eventually became known as the Tremont Opportunity Fund III ("Tremont Fund"). The Tremont Fund invested in numerous other funds pursuant to its multi-manager investment strategy. Some of the funds chosen by the Tremont Fund, in turn, invested their assets with Bernard Madoff. More than seven years after Plaintiff's initial investment, authorities exposed the massive fraud perpetrated by Madoff. Funds that had invested with Madoff lost much, if not all, of their value. As a result, the value of the Tremont Fund suffered to the extent funds it held had invested with Madoff. Plaintiff's AGL Policy account correspondingly lost value.

Although there is no suggestion that AGL was in any way responsible for the Tremont Fund's investments or Madoff's fraud, Plaintiff nevertheless seeks to have AGL shoulder the losses. There is no basis in the parties' agreement or in law to support that result. Because none of the eight claims for relief contained in the Complaint can be sustained, the Amended Complaint should be dismissed in its entirety.

# BACKGROUND[1]

AGL offers financial products, including variable life insurance policies that "allow policyholders to invest a portion of their premiums in optional investment accounts which are offered under the policy" so that the "gains inside the policy are shielded from income taxes." Am. Compl. ¶24.[2] Policies are sold in private placements only to accredited investors with substantial wealth. AGL distributes the policies through Phoenix Equity Planning Corp., which sells them through retail broker-dealers with which it has selling agreements.

In early October 2001, AGL and Rulle, through the Rulle Trust, entered into a Flexible Premium Variable Life Insurance Contract (the "Policy" or "Contract"). Am. Compl. ¶2. Rulle is a highly sophisticated investment professional (Rulle Aff. ¶¶3, 5), who ran a hedge fund at Hamilton Partners and was a top executive of CIBC Oppenheimer. Am. Compl., Ex. A, p. 62. When he applied for the Policy, Rulle had a stated net worth exceeding $23,000,000, and $11,750,000 of life insurance then in force. Am. Compl. Ex. A, pp. 59, 62.

Prior to the issuance of the Policy, Rulle received from AGL the AGL Life Assurance Company Private Placement Memorandum ("AGL PPM"), dated October 2, 2001, which attached the American Masters Opportunity Fund, L.P., Confidential Private Placement Memorandum, dated January 1, 2001 (the "Tremont PPM"), and the Limited Partnership Agreement of the American Masters Opportunity Insurance Fund, L.P, also dated January 1,

---

[1] AGL moves based on the facts alleged in the Complaint, which AGL assumes to be true solely for the purposes of this motion.

[2] "Am Compl." refers to Plaintiff's Amended Complaint, and "Am. Compl., Ex. A" refers to pages exhibited with the Amended Complaint as found in docket number 18-1. Citations to "Policy" refer to the Policy's own page numbers (i.e., not ECF page numbers); the Policy is exhibited in Am. Compl., Ex. A. "Rulle Aff." refers to the Affidavit of Michael S. Rulle signed April 30, 2010 and submitted in opposition to Defendants' Motion To Dismiss the original Complaint, which affidavit provided the basis for the additional allegations that appear in the Amended Complaint.

2001 (the "LPA").[3]  Am. Compl. ¶¶31, 36.  The American Masters Opportunity Insurance Fund

(hereinafter the "Tremont Fund"),[4] and a money market were the only investment options the

Policy offered.  Policy, p. 5.

Risks involved with the Tremont Fund investment, and the limits of AGL's role in the

Tremont Fund Partnership and the Fund's underlying investments, were described in the AGL

PPM and its attachments.  For example, the AGL PPM prominently stated, "The Account Value

under the Policy will . . . vary with the investment performance of the Investment Accounts.  The

Policy Owner bears the entire investment risk under the Policy."  AGL PPM, p. 1.  It also warned

that "THERE CAN BE NO ASSURANCE THAT THE INVESTMENT OBJECTIVE OF ANY

INVESTMENT ACCOUNT WILL BE ACHIEVED."  *Id.* at p. 37.  The Tremont PPM

emphasized that the risks discussed did not purport to be complete.  Tremont PPM, p. 31.

The AGL PPM (p. 38) and the Tremont PPM (pp. iii, 1) disclosed that the Fund used a

multi-manager strategy by which the Fund's General Partner, Tremont Partners, Inc., made

---

[3] In addition to attaching the Policy and application materials, the Am. Compl. references and relies upon other documents, copies of which were filed with Defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Original Complaint, as Memorandum Exhibits 1-3 (hereinafter, Mem. Exs. 1-3).  The exhibits were filed separately in hard copy per E.D. Pa. R. Civ. P. 5.1.2(6), and are filed at docket no. 12.  These documents, in addition to those attached to the Complaint, are appropriately considered on a motion to dismiss pursuant to 12(b)(6) because they are referenced and relied on in the Complaint.  *Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2002) ("documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiffs' complaint and are central to the claim*; as such they may be considered by the court") (emphasis in original) (internal citations omitted); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (same; "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied"); *Wallace v. Sys. & Computer Tech. Corp.*, No. Civ. A. 95-CV-6303, 1997 WL 602808, at *5 (E.D. Pa. Sept. 23, 1997) (a court may properly refer to the factual allegations contained in the complaint, exhibits attached thereto, documents referenced therein, matters of public record, and undisputedly authentic documents attached as exhibits to the defendant's motion to dismiss if plaintiff's claims are based on those documents) (citation omitted).

Plaintiff's Original Complaint identified two additional documents that were alleged to be the source of statements upon which Plaintiff based its claims.  Complaint. ¶¶26, 31.  These were a Private Placement Memorandum issued by Tremont Partners in 2008 (the "2008 Tremont PPM") and an accompanying Limited Partnership Agreement (the "2008 LPA").  Those documents were filed as Mem. Exs. 4 and 5, respectively, but are *not* relied upon for Defendant's instant motion to dismiss because Plaintiff has removed reference to them from the Amended Complaint, and now inexplicably claims neither to possess nor recall them.  Rulle Aff. ¶24.

[4] The American Masters Opportunity Insurance Fund, L.P. changed its name to "Tremont Opportunity Insurance Fund, L.P.," which became "Tremont Opportunity Fund III, L.P."

3

investments through a variety of managers pursuing various strategies and trading techniques.

Tremont Partners retained full discretion in selecting these managers.[5]

When Plaintiff accepted the Policy, it directed that 100% of its net premiums be allocated

to the Tremont Fund.  Am. Compl. ¶¶33, 45; Ex. A, p. 63.  The Policy detailed the method by

which Plaintiff's Policy Account would be valued in accordance with the value of the Tremont

Fund. Policy, pp. 13-15.

In December 2008, when AGL learned of the Tremont Fund's investment exposure to

Madoff's scam, AGL promptly notified its affected policyholders, including Plaintiff, about that

Investment Account's lost value and the resulting reduction to their policy values.  Later that

month, AGL sent to Rulle's representative a list of the funds in which the Tremont Fund had

invested as of September 30, 2008.  Am. Compl. ¶60; Rulle Aff. ¶21.[6]

## LEGAL ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

pleading that offers 'labels and conclusions' or a 'formulaic recitation' of the elements of a cause

of action will not do. . . .  Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S.

at 555).  Thus, a court should "begin [its] analysis by identifying the allegations in the complaint

that are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1951.  The court should

---

[5] The General Partner, Tremont Partners, is not affiliated with AGL.  According to the LPA, AGL (together with other insurance companies) is a limited partner with no right to manage or control the Partnership in connection with any matter, including investment decisions or the selection of fund managers. LPA, pp. 8-11.

[6] The Amended Complaint at ¶ 60 incorrectly states that the list was received "in or about September 2008," but Rulle acknowledges in his affidavit that the list was received in December 2008.  Rulle Aff. ¶21.

4

"next consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.*

The Complaint wholly fails to allege "sufficient factual matter . . . [that] state[s] a claim to relief that is plausible on its face[,]" and should thus be dismissed in its entirety. *Id.* at 1949. In addition, several of the claims lack any basis in law to support them.

I.      **The Breach of Contract Claim Should Be Dismissed Because The Plain Language Of The Contract Shows That There Was No Breach**

Pennsylvania courts enforce choice of law provisions in contracts. *Zavecz v. Yield Dynamics*, 179 Fed. Appx. 116, 120 (3d Cir. 2006). Plaintiff acknowledges the Policy's choice of law provision selecting Alaska law to govern the Policy's terms. Policy, pp. 1, 3, 9.

Under Alaska law, contract interpretation is a matter of law to be decided by the courts when the facts and surrounding circumstances are not in dispute. *Alaska v. Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d 1329, 1331 n. 5 (Alaska 1981) (internal citations omitted); *Fairbanks N. Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020, 1024 (Alaska 1986) ("Generally, interpretation of words in a contract is a task for the court.") (internal citations omitted); *see also Valdez Fisheries Dvpt. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 665 n. 13 (Alaska 2002). Courts must "ascertain and give effect to the reasonable intentions of the contracting parties." *In re: Exxon Valdez Polar Equip. Inc. v. Exxon Mobil Corp.*, 318 Fed. Appx. 545, 546 (9th Cir. 2009) (citation omitted). "A contract is ambiguous only if, taken as a whole, it is reasonably subject to differing interpretations." *ASCG, Inc. v. Coffman*, No. 98-35685, 2000 U.S. App. LEXIS 21015, at *4 (9th Cir. Aug. 16, 2000) (citing *Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d at 1331 n. 4). Here, there is only one reasonable reading of the Policy as to the matters alleged, and that reading belies Plaintiff's claim.

5

A.     *Plaintiff's Account Was Properly Valued According To The Terms Of The Contract*

Plaintiff claims that AGL breached the Policy by devaluing Plaintiff's Policy account when the Tremont Fund, Plaintiff's selected Investment Account, suffered losses because funds in which it invested in turn had invested with Madoff, who stole his investors' money.  The unambiguous provisions of the Policy negate this theory.

The Policy states clearly that "[t]he Account Value will increase or decrease in accordance with the increases and decreases in the value of the Investment Accounts in which the Account Value is invested."  Policy, p. 14.  The value of an Investment Account, according to the Policy, reflects a number of circumstances, including, among others: "The investment income and realized and unrealized capital gains credited to such assets . . .; Any amounts transferred from an Investment Account . . . ; Realized and unrealized capital losses charged against those assets . . . ."  Policy, p. 13.

When Madoff's fraud was exposed, various funds which had invested with him lost virtually all of their value.  These included several "Rye Select" funds in which Tremont had invested, which reported a loss of all their value to Tremont.[7]  The Tremont Fund accordingly reported that its value had commensurately declined and, consequently, Plaintiff's policy account lost value.

Plaintiff contends that its account was to be valued solely based on the "investment performance" of the Tremont Fund, and that losses ultimately caused downstream by Madoff's fraud cannot be considered because they are theft losses as opposed to "investment" losses.  Am. Compl. ¶¶34, 37-39, 44, 66-69.  This argument is at odds with the plain language of the Policy

---

[7] The Amended Complaint at ¶ 61 alleges that four funds—each of whose name begins "Rye Select"—invested with Madoff. In fact, while the three funds beginning "Rye Select Broad" did invest with Madoff, Rye Select Equities Fund did not.

6

on which Plaintiff relies.  It is not alleged that any money was stolen from Plaintiff's account or

even the Tremont Fund.  The Investment Account lost value because funds that the Tremont

Fund had *invested* in were victimized by Madoff.  Plaintiff's losses occurred because of the

investments made by the Tremont Fund.  Nowhere does the contract support Plaintiff's gloss that

a loss of investment value that traces down to fraud by a second-tier fund manager is excluded

from the value of the Policy account.

Plaintiff's proposed interpretation of "investment performance" would yield a patently

unreasonable and unfair result at odds with the plain language of the Policy.  Plaintiff's

interpretation would make AGL an insurer of Plaintiff's investment against any misconduct by

remote investment managers not known to, let alone overseen by, AGL.  As the Policy and

PPMs disclosed, AGL had no control over the Tremont Fund's investments; that power was

reserved exclusively to Tremont Partners.  AGL PPM, p. 38 ("The Account is managed by

Tremont Partners, Inc. ("General Partner") which will attempt to accomplish [the] investment

objectives by investing with various portfolio managers (the "Managers") . . . ."); Tremont PPM,

p. 2 ("The General Partner will select Managers . . . ."), p. 28 ("The Limited Partners cannot take

part in the management or control of the Partnership's business, which is the sole responsibility

of the General Partner.) LPA, p. 8, § 3.01 ("The management of the Partnership shall be vested

exclusively in the General Partner").  Moreover, Plaintiff was informed that the ultimate

investments were not always transparent to Tremont Partners and thus, *a fortiori*, AGL.  AGL

PPM, p. 39 ("The General Partner may not always be provided with detailed information

regarding all of the investments made by the Managers because certain of this information may

be considered proprietary").

In fact, Plaintiff's assertion that AGL should be contractually and strictly liable is flatly contradicted by the only explicit statement addressing such responsibility:  "The Policy Owner has the entire investment risk under the Policy."  AGL PPM, p. 1.  Plaintiff's claim therefore fails on the clear language and logic of the Policy.

B.      *The Contract Did Not Promise The Degree Of Diversification Alleged*

Plaintiff also claims (although not explicitly under Count 1) that AGL breached the agreement because the Tremont Fund invested in multiple funds that used the same manager, Madoff, who allegedly accounted for approximately 23% of the Fund's investments in aggregate. *See* Am. Compl. ¶¶58, 62, 78.  But nowhere in the Policy or PPMs does AGL promise that the Tremont Fund will limit investment of its assets with any one investment manager to less than 23%, and Plaintiff identifies none.  Tremont Fund's stated strategy of using multiple managers does not indicate how many managers would be used, nor does it indicate that funds chosen by the Tremont Fund might not invest with the same managers.  The only statement in the offering documents related to specific percentages of diversification, is one indicating that the Tremont Fund will meet the diversification requirements of applicable federal treasury regulations, which permit concentration of up to 55% in any one investment. Tremont PPM, p. 4.  The agreement simply does not guarantee the level of diversification Plaintiff suggests.

Plaintiff appears instead to rely on a statement allegedly made by John Hillman in the spring of 2001—well before the PPMs and Policy were issued to Plaintiff—that the Tremont Fund would invest no more than 7% of its assets with any one investment manager.  Am. Compl. ¶¶22, 114; Rulle Aff. ¶10.  Even assuming that the statement was made, it was superseded by the terms of the parties' integrated agreement.  In Alaska, whose law governs the terms of the Policy, "[u]nder the terms of the parol evidence rule, an integrated written contract cannot be varied or contradicted by prior negotiations or agreements." *Still v. Cunningham*, 94 P.3d 1104,

8

1109 (Alaska 2004); *see Johnson v. Curran*, 633 P.2d 994, 996 (Alaska 1981) (a written contract

"supersedes inconsistent terms of prior agreements"). Pennsylvania law is in accord. *Yocca v.*

*Pittsburgh Steelers Sports*, 854 A.2d 425, 436 (Pa. 2004) ("[a]ll preliminary negotiations,

conversations, and verbal agreements are merged in and superseded by the subsequent written

contract").

Here, the Policy is an integrated contract. It states:

**Entire Contract**
This Contract and Application, a copy of which is attached, together with any
Contract Schedules, any Riders constitute the entire Contract. Any waiver or
change of any provision in this Contract must be in writing and signed by an
officer of our Company.

Policy, p. 18. Under well-settled law, Plaintiff cannot import this alleged oral

representation to vary or supplement the terms of the Policy.[8]

## II.    The Federal And State Securities Fraud Claims Should Be Dismissed Because Of Plaintiff's Failure To Plead Fraud With Particularity As Required By Rule 9(b) And The Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) And (2)

Plaintiff's fraud claims do not satisfy Rule 9(b), which requires that "[i]n alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b). "[T]he rule ordinarily mandates plaintiffs to plead the 'who, what, when,

and where' details of the alleged fraud . . . . [P]laintiffs must employ some means to 'inject[ ]

precision and some measure of substantiation into their allegations of fraud.'" *Rosen v.*

*Commc'n Serv. Group*, 155 F. Supp. 2d 310, 316-17 (E.D. Pa. 2001) (internal citations omitted).

Under the Private Securities Litigation Reform Act ("PSLRA"), a complaint alleging

federal securities fraud must "specify each statement alleged to have been misleading, the reason

---

[8] In addition, the lack of credible force of this argument is revealed by the pleadings. Plaintiff contends that
Hillman represented an upward limit of 7% (Am. Compl. ¶22). Yet, upon learning that 10.35% (47% above the
alleged upper limit) was held in a single fund, Plaintiff alleges that the information "appeared to indicate an
allocation among managers which were diversified." Am. Comp. ¶¶60-61.

or reasons why the statement is misleading, and, if an allegation regarding the statement or

omission is made on information and belief, the complaint shall state with particularity all facts

on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

To state a claim under federal Rule 10b-5, Plaintiff must show (1) a material

misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) made in

connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss

causation, i.e., a causal connection between the material misrepresentation and the loss. *McCabe*

*v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citations omitted).  Similarly, a claim

under §§1-401(b) and 1-501(g) of the Pennsylvania Securities Act ("PSA") must establish: (1) a

representation or omission; (2) which is material to the transaction at hand; (3) made or

concealed falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it; (5) justifiable reliance on the

misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  *Majer v.*

*Sonex Research, Inc.*, 541 F. Supp. 2d 693, 712 (E.D. Pa. 2008) (internal citations omitted); *see*

*also Rosen*, 155 F. Supp. 2d at 321 n. 14.  The Alaska Securities Act ("ASA") is similar,

requiring plaintiff to show that defendant "ma[d]e an untrue statement of a material fact or

omit[ted] to state a material fact necessary in order to make the statements made, in light of the

circumstances under which they [we]re made, not misleading," ASA § 45.55.010(a)(2), and that

defendant acted with "fraudulent intent."  *See Sullivan v. Alaska*, No. 7009, 1984 WL 908620, at

*2 (Alaska Ct. App. Aug. 22, 1984).  It can be inferred from Alaska's common law fraud cause

of action that a false representation of material fact, knowledge of the falsity of the

representation, intention to induce reliance, justifiable reliance, damages, and causation must be

10

established to state a claim for fraud under the ASA. *Asher v. Alkan Shelter*, 212 P.3d 772, 780

(Alaska 2009) (stating the elements of common law fraud).

Plaintiff identifies as the bases for its fraud claims two alleged misrepresentations:

- "[The AGL PPM] stated that [the Tremont Fund] had a 'multi-manager concept' which would provide significant diversification and lessening of risks associated with the investment;"

- "[The AGL PPM] gave multiple standards for evaluation of the investment which implied that it was actually tracking the value of the investment."

It also alleges two omissions:

- "[The AGL PPM] failed to state that AGL had not done any due diligence on any funds, including the Tremont Opportunity Fund, either prior to the offering or during the time of the Policy;"

- "[The AGL PPM] failed to state that almost 23% of the entire investment pool would be in the hands of one manager, thereby effectively eliminating or greatly reducing the concept of diversification."

Am. Compl. ¶93.  None provide a viable basis for Plaintiff's claims.

A.      *The Alleged Misrepresentations Were Not False*

The alleged misrepresentations cannot support a fraud claim because, as is clear from the

Amended Complaint, they were not false.  The first alleged misrepresentation was AGL's

recitation of the Tremont Fund's multi-manager investment strategy:

> [The General Partner] will attempt to accomplish [the Tremont Fund's] investment objectives by investing with various portfolio managers. . . .  The use of the multi-manager format, whereby investments are made through a variety of managers utilizing different and, if possible, non-correlated investment strategies and trading techniques, is designed to provide investors with a diversified investment portfolio , as well as enable them to obtain above-average returns. . . .

AGL PPM, p. 38.  Plaintiff does not allege that the Tremont Fund failed to use multiple

managers to pursue its objectives.  The list of the *top ten* funds in which the Tremont Fund

invested as of September 2008 (Am. Compl. ¶60; Rulle Aff. ¶21) demonstrated that the Tremont

11

Fund invested with numerous funds. According to the list, the top ten funds by percentage only accounted for only 37.46% of Tremont's investments, meaning that 62.54% was invested in other funds representing less than 2.05% (the percentage attributed to the least of the top ten) each. Plaintiff's claim that the entire investment strategy was falsely described as using multiple managers because allegedly four of the funds on the list elected to make the same investment (i.e., to place their money with Madoff), is baseless.

Plaintiff does not specify where AGL fraudulently "gave multiple standards for evaluation of the investment which implied that it was actually tracking the value of the investment." No such representation is made in the AGL PPM. Having failed to particularize the misrepresentation, and in the face of a warning that not even Tremont Partners would have information regarding the underlying fund managers, this allegation must be rejected.

### B.     The Omissions Did Not Render Any Statements Materially Misleading

There is no general duty to disclose information unless disclosure is necessary to make Defendant's other statements not misleading. *Taylor v. First Union Corp. of S. Carolina*, 857 F.2d 240, 243-44 (4th Cir. 1988) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 236, 108 S.Ct. 978, 987 n. 17 (1988)); *Berkowitz v. Conrail, Inc.*, No. Civ. A. 97-1214, 1997 WL 611606, at *13-14 (E.D. Pa. Sept. 25, 1997). Under Pennsylvania law, "[w]hile a concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak." *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989)); *Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 31053838, at *2 (Pa. Com. Pl. Sept. 11, 2002). Similarly, the ASA requires that defendant "omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading." AS § 45.55.010(a)(2).

Here, Plaintiff has not identified any statements by AGL that were allegedly made misleading by the alleged nondisclosures. The first alleged omission is that the "AGL PPM

12

failed to state that AGL had not done any due diligence on any funds, including the [Tremont

Fund]." Neither the Policy, the PPMs nor the LPA promised that AGL had or would conduct

due diligence on the Tremont Fund or any of its investments. In fact, the documents notified

investors that AGL's access to the Tremont Fund's investment activities was extremely limited

(AGL PPM, pp. 38; Tremont PPM, pp. 2, 28; LPA, p. 8, §3.01) and that even the General Partner

had limited access to information about the activities of the managers used by the funds it

invested with. AGL PPM, p. 39.

Separately, Plaintiff provides no plausible basis for its claim that AGL conducted no due

diligence of the Tremont Fund. *Iqbal*, 129 S. Ct. at 1949. Its sole support for the claim appears

to be the syllogism that "basic due diligence" would have uncovered Madoff's fraud, AGL did

not uncover Madoff's fraud, therefore, AGL conducted no due diligence. *See* Am. Compl. ¶54.

This reasoning falls far short of Plaintiff's obligation under Rule 9(b) to "employ some means to

'inject[ ] precision and some measure of substantiation into their allegations of fraud.'" *Rosen*,

155 F. Supp. 2d at 316-17 (citations omitted). In fact, this very reasoning has been rejected as

insufficient to state a claim under the federal securities laws in a case involving Madoff losses

relating to these very funds. *See In re Tremont Securities Law, State Law and Insurance

Litigation*, No. 08 Civ. 11117, 2010 U.S. Dist. LEXIS 32216, at *18-23 (S.D.N.Y. Mar. 30,

2010) (no scienter alleged when complaint asserts auditor missed red flags, but does not allege

auditor knew of facts indicative of Madoff's fraud that auditor disregarded).

The second alleged omission, that AGL "failed to state that almost 23% of the entire

investment pool would be in the hands of one manager," did not make any of AGL's relevant

statements misleading. As discussed above in §I.B, *supra*, none of the offering documents

guaranteed against a concentration of 23% in an ultimate fund manager.  Instead, investors were

notified that the Fund could put up to 55% in a single investment. Tremont PPM, p. 4.[9]

C.    *There Is No Adequate Allegation of Scienter For Any Of the Alleged
      Misrepresentations Or Omissions*

The Third Circuit defines scienter as constituting "either reckless or conscious behavior."

*Institutional Investors Group v. Avaya*, 564 F.3d 242, 267 (3d Cir. 2009) (citation omitted).  For

a federal securities fraud claim to survive a motion to dismiss, the PSLRA requires plaintiffs to

"state with particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)

(citing 15 U.S.C. 78u-4(b)(2)).  The Supreme Court recognized that the PSLRA's "strong

inference standard unequivocally raised the bar for pleading scienter."  *Id.* at 321.  A fraud claim

satisfies the "strong inference" standard only if a reasonable person would find that "the facts . . .

give rise to a 'strong,' i.e., a powerful or cogent inference that is at least as compelling as any

opposing inference."  *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *see In re

Nutrisystem Sec. Litig.*, 653 F. Supp. 2d 563, 573-74 (E.D. Pa. 2009) (dismissing securities fraud

claims because "taken in its entirety plaintiff's complaint fails to raise an inference of scienter

that is strong in light of competing nonculpable inferences").

Although the PSLRA does not apply to Plaintiff's claims under the ASA and PSA, those

statutes still require Plaintiff to show that AGL possessed a culpable state of mind.  *See Sullivan*,

1984 WL 908620, at *2 (requiring "fraudulent intent") and *Majer*, 541 F. Supp. 2d at 712

(requiring knowledge of or recklessness regarding falsity).  Plaintiff's claims must also meet the

stricter pleading requirements found in Rule 9(b) and the Supreme Court's holding in *Iqbal*.  129

---

[9] Although not expressly mentioned in these Counts, Plaintiff again appears to rely on an alleged statement by
John Hillman that the Tremont Fund would limit the amount of assets it placed with one manager.  *See* Am. Compl.
¶22.  To the extent that oral statement is the grounds for these claims, it is barred as parol evidence, as explained
*supra* at pp. 8- 9.

S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice. . . .  [P]leadings that . . . are no more than conclusions []

are not entitled to the assumption of truth.").

The Amended Complaint merely parrots the scienter element of the statutes, failing to

allege any factual basis—even on information and belief—for the following assertions:

- "The AGL PPM contain [sic] multiple false and misleading statements as well
  as omitted material information that should have been contained therein as to
  constitute a reckless state of mind and the dissemination of materials [sic]."
  ¶93;

- "Such conduct as described above is reckless and materially misleading . . . ."
  ¶93;

- "Defendant's misrepresentations and/or omissions were . . . made knowingly
  with reckless disregard for their truth or falsity and/or without a genuine belief
  that the information disclosed was accurate and complete in all material
  respects." ¶95.

The facts, as they are pled, reveal the hollowness of these assertions.  With regard to the

alleged misrepresentation about the Tremont Fund's multi-manager investment strategy, there

can be no plausible suggestion of scienter by AGL.  Even assuming that the statement could be

considered false, nothing alleged suggests that AGL knew that the Fund would invest 23% of its

assets with funds that ultimately selected Madoff as its investment manager.  The alleged

misrepresentation concerning the supposed multiple standards provided by the AGL PPM for

evaluating the investment fares no better.  Even assuming that the Policy and PPM were not

clear, no facts are alleged to support the contention that the lack of clarity was intentionally or

recklessly created to defraud Plaintiff.

Turning to the alleged omissions, it is difficult to imagine how AGL could have culpably

omitted to notify Plaintiff that it allegedly did not conduct due diligence of the Tremont Fund

when nowhere in the offering documents did AGL ever say that it did conduct such due

diligence.  To the contrary, the documents emphasized AGL's lack of access to and control over the Tremont Fund, and the lack of transparency into the activities of the ultimate investment managers.

There are likewise no facts alleged to support a finding for scienter for the alleged omission that AGL did not disclose that the various Rye Funds in which the Tremont Fund had invested 23% of its assets, had invested with Madoff.  There is nothing alleged to suggest that AGL knew that the Rye Funds were invested with Madoff at all, especially in light of the lack of transparency that was disclosed in the PPMs, let alone that Madoff was running a Ponzi scheme. *See In re Tremont Securities*, 2010 U.S. Dist. LEXIS 32216, at *21-22.

Plaintiff's threadbare assertions do not satisfy the scienter and fraudulent intent elements of the applicable statutes, the pleading requirements of Rule 9(b) and the PSLRA, or the pleading standards set by the U.S. Supreme Court in *Iqbal* and *Twombly*.  129 S. Ct. at 1949; 550 U.S. at 555.  For this reason, the fraud claims should be dismissed.

## III.    The Pennsylvania Securities Act and Alaska Securities Act Fraud Claims Should Be Dismissed Because The Policy Is Not A Security Under Either Act

The Policy is excluded from the definitions of "security" found in both the PSA and the ASA.  The definition of a "security" under the PSA expressly provides that "'Security' does not include:  Any insurance or endowment policy or annuity contract under which an insurance company admitted in this State promises to pay a sum of money (whether or not based upon the investment performance of a segregated fund) either in a lump sum or periodically for life or some other specified period."  70 P.S. § 1-102(t)(iii).

Similarly, the definition of a "security" under the ASA provides that "'security' does not include . . . an insurance or endowment policy or annuity contract under which an insurance company promises to pay a fixed or variable sum of money either in a lump sum or periodically

16

for life or for some other specified period." The Amended Complaint cites only a provision of the ASA (AS § 45.55.900(a)(7)) that exempts certain securities from the Act's registration requirements. The exemption simply has no force because the Policy is not a security under the Act to begin with. Moreover, the exempting provision itself reiterates the exclusion of variable life insurance policies.

The Policy falls squarely within the exclusions in the PSA and ASA. The Policy entitled Plaintiff to receive a variable sum: the "greater of (a) the Face Amount [initially $17.6 million] in effect on the date of [Rulle's] death, and (b) the Account Value on the date of [Rulle's] death multiplied by the minimum Death Benefit Factor shown in Contract Schedule F." Policy, p. 10.

## IV.   Plaintiff's Remaining Claims Are Governed By Pennsylvania Law

### A.   *The Contractual Choice Of Law Provision Does Not Control These Claims*

The Amended Complaint sets forth five additional causes of action sounding in tort. These claims are not governed by the choice of law provision of the contract. Rather, the Court must apply the choice of law rules of the forum state. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).

Under Pennsylvania law, where a choice of law provision is narrowly drafted to apply to the terms of the contract, the provision is correctly limited to a plaintiff's contract claims. *Smith v. Lincoln Benefit Life Co.*, Civ. A. No. 08-01324, 2009 U.S. Dist. LEXIS 24941, at *19 (W.D. Pa. Mar. 23, 2009) (holding that "[w]hile contractual claims are governed by choice of law provisions contained in an insurance contract, said provisions, 'do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship'") (citing *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994)).

17

The Policy's choice of law clause reads:  "This Contract . . . is governed by the laws of the Governing Jurisdiction," which the parties agree is Alaska.  Policy, pp. 1, 3, 9.  Courts applying Pennsylvania law routinely hold that clauses substantively identical to this one do not apply to tort claims.  *Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25-26 (3d Cir. 2005) (holding that arbitral panel did not manifestly disregard the law when it determined that provision stating that "*this agreement* will be governed by, and construed and enforced in accordance with the laws of [Pennsylvania]," did not cover claimant's non-contractual claim) (emphasis in original); *Lincoln Benefit Life Co.*, 2009 U.S. Dist. LEXIS 24291, at *19-20 (holding that provision stating "*this policy* is subject to the laws of the state where the app [sic] was signed," clearly covered only contract claims) (emphasis in original) (citations omitted); *Grimm v. Discover Fin. Serv.*, Civ. A. Nos. 08-747, 08-832, 2008 U.S. Dist. LEXIS 89709, 2008 WL 4821695, at *21 (W.D. Pa. Nov. 4, 2008)) (holding that provision stating "[t]his Agreement will be governed by the laws of [Delaware] and applicable federal laws" did not cover tort claims); *Coram Healthcare Corp. v. Aetna U.S. Healthcare*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999) (holding provision stating "This Agreement shall be governed by the laws of [Delaware]" was not broadly drafted to apply to tort claims).

> **B.**      *Pennsylvania's Choice Of Law Rules Establish That Pennsylvania Law Governs*

Because the contractual choice of law provision is inapplicable, the law governing Plaintiff's tort claims must be analyzed under Pennsylvania's choice of law rules relating to tort claims.

Pennsylvania's choice of law rules combine government interest analysis and the most significant relationship test of the Restatement (Second) of Conflicts of Laws ("Rest. 2d.").  *Lincoln Benefit Life Co.*, 2009 U.S. Dist. LEXIS 24941, at *23; *see also Zavecz*, 179 Fed. Appx. at 120-21.  Courts first determine whether the laws of the potentially applicable jurisdictions

18

differ in any relevant way.  *Hammersmith*, 480 F.3d at 229-30; *Lincoln Benefit Life Co.*, 2009

U.S. Dist. LEXIS 24941, at *23-24.  If no relevant difference is found, then there is no conflict,

and the states' laws may be referred to interchangeably.  *Huber v. Taylor*, 469 F.3d 67, 74 (3d

Cir. 2006).  If, however, "there are relevant differences between the laws, then the court should

examine the governmental policies underlying each law, and classify the conflict as a 'true,'

'false,' or 'unprovided-for' situation."  *Hammersmith*, 480 F.3d at 230.  "A 'true' conflict exists

when both states have an interest in applying their own law.  A 'false' conflict exists when only

one state has an actual interest in applying its law.  The situation will be considered 'unprovided

for' when neither has an interest in applying its own law."  *Lincoln Benefit Life Co.*, 2009 U.S.

Dist. LEXIS 24941, at *24-25 (internal citations omitted).

> If the Court determines that a 'true' conflict exists, it must determine which state has the
> most significant contacts with the controversy, as provided by the Restatement (Second)
> of Conflicts. This analysis requires more than a 'mere counting of contacts.'  Rather, the
> Court must weigh the contacts on a qualitative scale according to their relation to the
> policies and interests underlying the particular issues.  If the Court determines that a
> 'false' conflict exists, the Court applies the law of the interested state.

*Id.* at *25-26.  Here, to the extent the laws of Pennsylvania and Alaska differ, such

differences present either a false conflict in favor of applying Pennsylvania law, or a true conflict

that leads to an analysis of jurisdictional contacts, which analysis clearly leads to the application

of Pennsylvania's law.  Pennsylvania law offers defenses, such as "the gist of the action

doctrine" and "the economic loss doctrine," that are not necessarily available under Alaska's

law.  In addition, Pennsylvania law does not permit duplicative breach of good faith and fair

dealing claims pled in tort to stand alongside breach of contract claims, whereas Alaska's law

might.  Fundamentally, these defenses and doctrines protect defendants from vexatious,

duplicative claims that seek tort damages where only contractual damages are appropriate.

Pennsylvania has a clear interest in providing the benefit of these defenses and doctrines to AGL,

a Pennsylvania defendant, in a case that, as described below, predominantly involves accounts and conduct in Pennsylvania.  On the other hand, as described below, Alaska's contacts with this case are tenuous, and that jurisdiction would have little interest in forbidding the application of Pennsylvania's doctrines in this case.

Pennsylvania courts look to the Rest. 2d. §145's most significant contacts test to resolve true conflicts.  Section 145 provides that the following contacts should be considered in the analysis for tort claims:  "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Here, both the quantity and quality of Pennsylvania's contacts to the case require application of Pennsylvania law.  Pennsylvania is the place where the alleged injury occurred, as it is the situs of the Variable Account and Investment Account that were allegedly devalued improperly (Policy, pp. 5, 9).  Pennsylvania is also the place where the alleged conduct causing the alleged injury occurred because AGL's administration of the Policy and its accounts took place in Pennsylvania, and AGL issued its communications from this state.  Pennsylvania is also the place of incorporation and place of business of the Defendant, AGL.  AGL executed the Policy in Pennsylvania, and issued endorsements to the Policy from this state.  Policy, p. 1; Am. Compl., Ex. A, pp. 56-58.  Plaintiff also sent its Policy premiums to Pennsylvania.

By comparison, Alaska is relevant only because it is the place of the Policy's delivery and the residence of the Rulle Trust.  While the Trust is legally sited in Alaska, none of the material contacts relating to the Trust's purchase of the Policy relate to that state.  To the contrary, as the application and Trust instrument[10] demonstrate: (1) Michael Rulle and his wife

---

[10] The Michael S. Rulle Family Dynasty Trust Agreement of 2001 is exhibited at Mem. Ex. 6 for the purposes of choice of law analysis only.

were residents of New Jersey at the time the Policy was applied for and issued; (2) while the

initial application for the Policy was submitted in April 2001, the Trust was not formed until

September 27, 2001 for the purpose of holding insurance policies, just days before the Policy

was issued and delivered; (3) the Trust was prepared by New Jersey counsel; (4) the only Alaska

resident was the Administrative Trustee; (5) subject to certain restrictions, Michael Rulle had

power during his lifetime to distribute net income and principal to the beneficiaries of the Trust,

which included himself, his wife and children; and (6) with the exception of the Alaska Trust

Company, the parties to the agreement executed it outside of Alaska.  Not least important, even

on Rulle's account of events, he began considering an investment in the Tremont Fund through a

variable policy long before the Trust was created.  AGL's communications with Rulle about the

policy under consideration issued from Pennsylvania while Rulle resided in New Jersey.  *See*

Rulle Aff. ¶¶10-11.

In view of the minimal, non-material contacts with Alaska, and the axis of contacts with

Pennsylvania, Pennsylvania law should govern Plaintiff's tort claims.

## V.     The Breach Of Fiduciary Duties Claim Should Be Dismissed Because AGL Owed No Such Duties To Plaintiff

Plaintiff argues that AGL assumed a duty not provided for by the Policy, the PPMs or the

LPA, to conduct exhaustive due diligence of *every* investment manager of *every* fund selected *by*

*Tremont*.  Am. Compl. ¶76  The imposition of such a duty in this case is not supported by law

and is contrary to the express terms of the Policy, PPMs and LPA.

### A.     *The Arms-Length Transaction Did Not Give Rise To A Fiduciary Relationship*

Fiduciary duties are implied only in a narrow set of cases involving parties in special

relationships of trust.  Pennsylvania courts hold that "a 'special relationship' is one involving

confidentiality, the repose of special trust or fiduciary duties."  *eToll v. Elias/ Savion Adver.*, 811

21

A.2d 10, 22 (Pa. Super. Ct. 2002) (internal citations omitted).  A special relationship of this kind "generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other."  *Id.* (citing *Estate of Evasew*, 584 A.2d 910, 913 (Pa. 1990)).  "A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power."  *eToll*, 811 A.2d at 23 (citation omitted).

Cases finding fiduciary duties illustrate the types of close relationships that must exist for such duties to be implied.  *See Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1990) (special relationship between attorney and client); *Frowen v. Blank*, 425 A.2d 412, 418 (Pa. 1981) (special relationship between 86 year old widow with no formal education and her sole business counselor); *Estate of Thomas*, 344 A.2d 834, 836 (Pa. 1975) (special relationship between healthy attorney-scrivener and "extremely weak . . . intermittently confused" testator on her deathbed); *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966) (special relationship between widow and sons upon whom she relied to manage property).

Far from having the requisite special relationship, AGL and Plaintiff operated at all times at arm's length and with a parity of bargaining power.  *See eToll*, 811 A.2d at 23 (observing, "[i]f parties to routine arms length commercial contracts for the provision of needed goods or services were held to have a 'special relationship,' virtually every breach of contract would support a tort claim") (citations omitted); *Binary Semantics Ltd. v. Minitab, Inc.*, Civ. A. No. 4:07-CV-1750, 2008 WL 763575, at *12 (M.D. Pa. Mar. 20, 2008) (no fiduciary duty arose from arms-length marketing and promotion agreement) *reconsidered by, Binary Semantics Ltd. v. Minitab, Inc.*, Civ. A. No. 4:07-CV-1750, 2008 WL 1981591, at *3 (M.D. Pa. May 1, 2008) ("it is simply

22

implausible that a fiduciary relationship existed" where there was "no special relationship involving confidentiality, no special trust, and no strong and weak party[;] . . . [it] was an arms-length business transaction"); *Elliott v. Clawson*, 204 A.2d 272, 273-74 (Pa. 1964) (no special relationship between parties to arm's length contract). Michael Rulle, a wealthy, sophisticated hedge fund manager, was fully capable of evaluating the AGL Policy and the risks and benefits of investing in the Tremont Fund. Nothing in the transaction between these two sophisticated parties to a private placement involving a complex financial instrument remotely resembles the sort of reliant dealings that might give rise to a fiduciary duty under the law.

B.       *The Policy Documents Expressly Foreclose the Duty Plaintiff Seeks to Imply*

Plaintiff's effort to concoct fiduciary duties where none exist is belied by the very documents on which it relies. Plaintiff claims that a fiduciary duty arose because AGL "retained exclusive control over selection of investment managers" as well as the addition of investment options. Am. Compl. ¶71. The documents relied on by the Amended Complaint reveal the first allegation to be patently untrue. While Plaintiff points to language in the Policy that gave AGL rights over how to structure its Variable Account and the Investment Accounts (Am. Compl. ¶¶29, 30, Policy, p. 13), this language did not give AGL access to or control over the Tremont Fund. As discussed in §I.A, *supra*, the offering documents expressly disclosed that the General Partner, not AGL, controlled the selection of the Fund's investments and managers. AGL PPM, p. 38; Tremont PPM, pp. 2, 28; LPA, p. 8, § 3.01.

The second allegation is irrelevant—it is of no consequence that AGL had the option of adding other investment options because Plaintiff's claims arise from the option that was offered, not one that was excluded. What is relevant is that at the time the Policy was offered to Plaintiff, there were only two Investment Accounts available to him—a money market account and the Tremont Fund—and Plaintiff instructed AGL to invest 100% of the net premiums in Tremont,

23

having received and reviewed the Policy, the PPMs and LPA.  In short, Plaintiff got from AGL what Plaintiff bargained for: a flexible premium life insurance policy that included the Tremont Fund as its primary investment option.

Plaintiff next alleges that restrictions placed on its ability to communicate with the Tremont Fund created a fiduciary duty on the part of AGL.  Am. Compl. ¶¶36, 72.  The Tremont PPM makes clear, however, that the purpose of prohibiting contact with the General Partner by Contract Owners, like Plaintiff, was to protect the Contract Owners' tax-favored position with respect to their investments. Tremont PPM, p. 4.  Importantly, Plaintiff was fully informed that AGL's access to and authority over the Tremont Fund was expressly and strictly limited.  AGL PPM, p. 38-39; Tremont PPM, pp. 2, 22, 28; LPA, p. 8, § 3.01.  A fiduciary duty by AGL to have conducted ongoing exhaustive due diligence of the Fund's investments cannot be implied in the face of the repeated disclosures to the contrary made to the financially savvy Rulle.

Plaintiff also alleges that a fiduciary duty arose because AGL "assert[ed] an exclusive right to control all aspects of the investment account."  Am. Compl. ¶73.  As discussed above, the PPMs and LPA expressly refute this assertion, and it is, in fact, contradicted by other allegations in the Amended Complaint.  Plaintiff bore the responsibility for determining how to allocate its premiums, both initially by directing that all premiums be allocated to the Tremont Fund, and thereafter by directing that additional premiums be likewise invested.  Am. Compl. ¶¶33, 45; Ex. A, p. 63.  At all times, Plaintiff remained free to transfer all or part of its funds out of Tremont into the money market option.  Policy, p. 13 ("[The policyholder] ha[s] the right to allocate and re-allocate the Account Value of this Contract among the Investment Accounts on any Valuation Day").

24

C.     *AGL Was Not A Broker-Dealer or Plaintiff's Agent*

Plaintiff alleges that AGL owed a fiduciary duty to Plaintiff because "in conjunction with [PEPCO]" it acted as a broker-dealer.  Am. Compl. ¶74.  This argument is both misplaced and meritless.

AGL is not a broker-dealer, nor is it alleged to be.  *See* Am. Compl. ¶3.  As Plaintiff alleges, AGL issues polices through a distribution agreement with Phoenix Equity Planning Corp. ("PEPCO", formerly PFG Distribution Company), which is a registered broker-dealer that is not a party to this action.  *See* Am. Compl. ¶6.

Initially, even if there was any merit to Plaintiff's theory, there are no allegations in the Amended Complaint suggesting that PEPCO *acted* as the broker-dealer in the sale of the Policy to Plaintiff; all that appears is an allegation of PEPCO's *status* as such.  *See* Am. Compl. at ¶4.  Without such an allegation, there is no logical basis to impute whatever fiduciary duties PEPCO might have as a broker-dealer to AGL, alter ego or not.[11]

Plaintiff attempts to sidestep the reality that AGL is "an insurance and financial services organization" (Am. Compl. at ¶3), and not a broker-dealer, by arguing that AGL and PEPCO are alter egos of each other and that PEPCO's broker-dealer status should therefore be imputed to AGL.  Pennsylvania law does not allow the corporate form to be so easily disregarded, instead requiring "a very high showing of domination and control" by one entity over the other.  *Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc.*, 55 F. Supp. 2d 337, 344 (E.D. Pa. 1999).  "[C]ourts 'start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception."  *Id.* (citations omitted).

---

[11] In fact, the retail broker-dealer for Plaintiff's policy was W.S. Griffith & Co., whose agent, Mark Dunn, is identified on the Policy application documents.  Am. Compl., Ex. A, pp. 61-63

Here, Plaintiff merely points to certain shared attributes of the two companies.  Plaintiff

wholly fails to allege that the companies have disregarded their corporate forms, commingled

their operations and assets, and are, in fact, the same entity, which is the crux of the alter ego

doctrine.  *McCrery v. Scioli*, 485 A.2d 1170, 1175 (Pa. Super. Ct. 1984) ("Ordinarily, separate

corporations retain their distinct identities notwithstanding the fact that they may have common

stockholders, directors, and officers.") (citations omitted).  In fact, the principal underwriting

agreement between the companies identified by Plaintiff, as well as the distinctions alleged by

Plaintiff, evidences the fact that they are distinct entities that transact business with each other as

such.  *See* Am. Compl. ¶¶3-6.  Accordingly, Plaintiff's far-reaching gambit to cast AGL as

something it is clearly not, even by Plaintiff's own pleading, must fail as a matter of law.  Rather,

as discussed above, the arms-length character of the transaction between AGL and the highly

sophisticated Rulle, evidences that there is no basis for implying fiduciary duties not found in the

Policy.

In a further reach, Plaintiff asserts that AGL was Plaintiff's agent, and thus owed Plaintiff

a fiduciary duty.  Am. Compl. ¶74.  "The law is clear in Pennsylvania that the three basic

elements of agency are: the manifestation by the principal that the agent shall act for him, the

agent's acceptance of the undertaking and the understanding of the parties that the principal is to

be in control of the undertaking."  *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000).

Nothing in the Policy, PPMs or the LPA provided that AGL undertook to be Plaintiff's agent,

and there is no basis asserted on which to imply such a relationship.  AGL neither received nor

accepted express, apparent or implied authority to act on Plaintiff's behalf, there is no allegation

that Plaintiff held AGL out to others as its agent, and there is no assertion that Plaintiff controlled

AGL's actions.  Absent any plausible allegations to support Plaintiff's legal conclusion of

26

agency, this asserted basis for implying a fiduciary duty owed by AGL must fail.  *See Iqbal*, 129 S. Ct. at 1949.

      D.      *The "Gist Of The Action" Doctrine Precludes Implication Of Fiduciary Duties Here*

Beyond the lack of a factual basis for this claim, Pennsylvania's "gist of the action" doctrine bars fiduciary duty claims that are grounded in contractual obligations. *See Atchison Casting Corp. v. Deloitte & Touche, LLP*, No. 003193, 2003 WL 1847665, at *3 (Pa. Com. Pl. Mar. 14, 2003) (contribution claim dismissed because "gist of the action" doctrine barred tort cause of action where third party defendants' alleged fiduciary duties arose out of their employment relationship, which was governed by contract with third party plaintiff).  Here, the entire relationship between the parties is governed by the Policy, which expressly details the rights and obligations each party agreed to assume with respect to the other.  Plaintiff's allegations of fiduciary duties are merely an attempt to retroactively rewrite the Contract so that Plaintiff can avoid bearing the investment loss suffered by its investment.

      E.      *There Is No Special Insurer-Insured Duty Here*

Pennsylvania law is clear that in these circumstances an insurer like AGL owes no fiduciary duty to its insured.  *Decker v. Nationwide Ins. Co.*, 83 Pa. D. & C. 4th 375, 379 (Pa. Com. Pl. 2007) (Under Pennsylvania law, insurer's duty of good faith and fair dealing is contractual in nature; "no fiduciary duty exists between an insurance company and its insured[;] . . .  Instead, the relationship between the insurer and insured is one of buyer and seller.") (citations omitted).  Moreover, any such duty would be inapplicable here, where coverage under the life insurance policy has not been triggered—Rulle is still alive—and

27

consequently no insurance claims have been made.  Plaintiff's action relates solely to the

investment aspects of the Policy, and thus a special insurer duty cannot be implicated.[12]

## VI.    The Breach Of Common Law Duty Of Good Faith And Fair Dealing Claim Is Precluded Under Pennsylvania Law

Plaintiff's claim for breach of a common law duty of good faith and fair dealing cannot

coexist with Plaintiff's breach of contract claim.  *See Lincoln Benefit Life Co.*, 2009 U.S. Dist.

LEXIS 24941, at *33-39 (summarizing Pennsylvania law prohibiting good faith and fair dealing

claims pled with contract claims); *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*,

246 F. Supp. 2d 394, 400 (E.D. Pa. 2002) ("Pennsylvania law does not recognize a separate

claim for breach of implied covenant of good faith and fair dealing").[13]

Moreover, as discussed above, there is no basis for alleging that AGL did not fulfill its

obligations under the Policy.  AGL allocated Plaintiff's net premiums exactly as Plaintiff

directed; the fact that that the investment ultimately was impacted by the consequences of

Madoff's fraud demonstrates neither a breach of contract, nor of any implied covenant.

## VII.   The Professional Negligence, Negligence and Gross Negligence Claims Should Be Dismissed Because AGL Owed Plaintiff No Duty Outside Of The Policy And The Claims Are Barred By The Economic Loss And Gist Of The Action Doctrines

To state a claim for negligence, a plaintiff must plausibly allege, among other things, that

the defendant breached a duty that it owed to the plaintiff.  *See Cooper v. Frankford Healthcare*

*Sys., Inc.*, 960 A.2d 134, 140 n.2 (Pa. Super. Ct. 2008) (stating elements of negligence cause of

---

[12] Even if Alaska law did apply, Plaintiff's reliance on a special duty owed by insurers to insureds would be misplaced because the duty applies only to the handling of insurance coverage claims. *O.K. Lumber Co., Inc. v. Providence Washington Mut. Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988) ("The fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing.  Thus, an insurer has an obligation to investigate claims and to inform the insured of all settlement offers and the possibility of excess recovery by the injured claimant.") (citations omitted).

[13] Although Alaska law does not apply, even if it did, as discussed above, the duty of insurers to handle coverage claims in good faith is simply inapplicable to this case. *See supra* n. 12.

action); *see also Henry v. First Fed. Sav. & Loan Ass'n of Greene County*, 459 A.2d 772, 774

(Pa. Super. Ct. 1983) ("Since gross negligence is simply a greater degree of negligence, it must

also be predicated upon some duty owed" to the plaintiff).  Plaintiff's negligence claim simply

recasts its breach of fiduciary duties claim, alleging that AGL owed Plaintiff duties to manage,

monitor, maintain, preserve, and exercise "generally the degree of prudence, caution and good

business practice that would be expected of any reasonable investment professional."  Am.

Compl. ¶107.  But, as discussed *supra* in §V, AGL owed no duties to Plaintiff beyond those

provided for in the parties' negotiated agreement, the Policy.  Absent a duty, there can be no

breach, and Plaintiff's claim must accordingly fail.

        Plaintiff's negligence claim also fails because Pennsylvania law bars recovery in a

negligence action for purely economic losses.  *Rock v. Voshell*, 397 F. Supp. 2d 616, 627 (E.D.

Pa. 2005).  "The economic loss doctrine provides that 'no cause of action [can] be maintained in

tort for negligence or strict liability where the only injury [is] 'economic loss'—that is, loss that

is neither physical injury nor damage to tangible property.'"  *Id.* (citing *2-J Corp. v. Tice*, 126

F.3d 539, 541 (3d Cir. 1997)).  Plaintiff alleges no injuries other than the reduced value of its

Policy account, placing the negligence claim squarely within the prohibition of the economic loss

rule.

        In addition, under the "'gist of the action' doctrine, 'a claim should be limited to a

contract claim when the parties' obligations are defined by the terms of the contracts and not by

the larger social policies embodied in the law of torts.'"  *Rock*, 397 F. Supp. 2d at 627 (citing

*eToll*, 811 A.2d at 14); *see Specialty Ins. v. Royal Indem. Co.*, 324 F. Supp. 2d 674, 678 n.5 (E.D.

Pa. 2004) (dismissing negligence claim arising from same set of facts as contract claim under

"economic loss" and "gist of the action" doctrines); *Sunquest Info. Sys., Inc. v. Dean Witter*

29

*Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999) ("gist of the action doctrine" bars a tort

claim "when that theory is 'merely another way of stating its breach of contract claim . . .'")

(citations omitted).

Plaintiff's attempt to cast its claim as one for professional negligence should be denied.

AGL performed no professional services for Plaintiff.  It sold Plaintiff a variable policy and

allocated premiums according to one of two investment accounts per Plaintiff's instructions.

Moreover, AGL does not fit within one of the defined categories of professionals enumerated in

Pa. R. Civ. P. 1042.1 for such a claim.  *See Gilmour v. Bohmueller*, No. Civ. A. 04-2535, 2005

WL 241181, at *16-17 (E.D. Pa. Jan. 27, 2005) (dismissing professional negligence claims

against investment company and sales defendants because they did not belong to one of the

enumerated categories of licensed professionals).  *But see Hults v. Allstate Septic Sys.*, Civ. A.

No. 4:06-0541, 2007 WL 2253509, at *6 (M.D. Pa. Aug. 3, 2007).

## VIII.   The Negligent Misrepresentation Claim Is Not Cognizable At Law And Lacks Any Factual Support In The Complaint

Plaintiff makes two claims for negligent misrepresentations.  *First*, Plaintiff alleges that

AGL concealed the fact that Tremont allegedly invested 23% of its assets with funds that

invested in the same manager, when previously AGL had represented that a significantly lower

percentage would be ultimately entrusted with any one manager (an apparent reference to the

alleged Hillman statement that no more than 7% would be ultimately invested with any one

manager).  Am. Compl. ¶22, 114; Rulle Aff. ¶10.  *Second*, Plaintiff alleges that AGL "mislead

[sic], misrepresented and deceived Plaintiff by referring to the Madoff accounts as 'equity

market neutral.'"  Am. Compl. ¶115.

30

A.      *Plaintiff Has Not Adequately Pled The Second Alleged Misrepresentation*

With respect to the alleged mischaracterization of the Madoff accounts, Plaintiff wholly

fails to allege who, when and under what circumstances the supposed statement was made, thus

falling short of Rule 9(b)'s requirements and Plaintiff's general pleading obligations. *See Iqbal*,

129 S. Ct. at 1949 ("[a] complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)).

B.      *The First Alleged Misrepresentation Is Based On A Non-Actionable Parol
        Statement*

As discussed *supra* at §I.B, under Alaska's law, which governs the terms of the Policy,

the alleged misrepresentation and omission regarding the concentration of the Tremont Fund's

ultimate investments is based on a parol statement made prior to the execution of an integrated

agreement, and is thus non-actionable.

C.      *Pennsylvania's "Economic Loss" And "Gist of the Action" Doctrines Bar
        Recovery For Either Alleged Misrepresentation*

As discussed above, Pennsylvania law bars negligence-based claims that allege only

economic losses.  This Court has applied the doctrine to dismiss negligent misrepresentation

claims.  *Blue Mountain Mushroom Co.*, 246 F. Supp. 2d at 402-03 (dismissing on summary

judgment negligent misrepresentation claims under "economic loss" and "gist of the action"

doctrines); *N. Am. Roofing & Sheet Metal Co., Inc. v. Bldg. & Constr. Trades Council of

Philadelphia & Vicinity*, No. 99-2050, 2000 WL 230214, at *7-8 (E.D. Pa. Feb. 29, 2000)

(granting motion to dismiss negligent misrepresentation claims because plaintiff "claimed

nothing but economic losses").  Here, dismissal is appropriate because Plaintiff has alleged only

an economic loss—the diminished value of his Policy account.

Dismissal is also warranted under the "gist of the action doctrine," which "bars plaintiffs

from bringing a tort claim that merely replicates a claim for a breach of an underlying contract."

31

*Blue Mountain Mushroom Co.*, 246 F. Supp. 2d at 402-03 (dismissing negligent misrepresentation claims in the alternative under the "gist of the action doctrine").  In an apparent effort to evade the parol evidence rule, Plaintiff cloaks its claim in the garb of negligent misrepresentation.  Courts applying the "gist of the action" doctrine, however, do not permit such ploys, and Plaintiff's pleading should likewise be rejected.  *Sunquest Info. Sys.*, 40 F. Supp. 2d at 651 ("[A] plaintiff cannot assert a fraud or negligent misrepresentation claim when that theory is 'merely another way of stating its breach of contract claim . . .'") (citations omitted).

> D.    *Plaintiff Fails To State A Prima Facie Claim For Negligent Misrepresentation*

Even if the claims are deemed to be properly pled in tort, Plaintiff has failed as a matter of law to plead the elements of the cause of action.  The tort of negligent misrepresentation in Pennsylvania comprises four elements:  (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.  *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).  Moreover, like any action in negligence, there must exist a duty owed by one party to the other.  *Id*.  Plaintiff's claim is inherently deficient in meeting these requirements.

*First*, as discussed above, AGL owed no duties outside of the Policy to Plaintiff that would give rise to an obligation to disclose the investment allocations of the Tremont Fund.

*Second*, with regard to the first statement, Plaintiff has made no allegations to support the conclusion that AGL knew that some of the Rye Funds invested with the same ultimate manager—Madoff.  The same deficiency applies to the alleged statement—that the Madoff accounts would be "equity market neutral. "  In addition, there are no allegations that the alleged statement was false or, assuming the statement could be considered false, that AGL knew that.

*Third*, the Amended Complaint makes no allegations that can support a finding that the alleged statement that the Rye Funds were equity market neutral—even if it was false and known to be so—actually caused Plaintiff's loss.  To the contrary, as the Amended Complaint makes clear, the losses in value to the Tremont Fund's investments were caused by Madoff's fraud, not exposure to the securities markets.

*Fourth,* Plaintiff's claims fail because it is facially implausible that Plaintiff would have credited, much less relied, on either statement.  Plaintiff's claim must be facially plausible, not merely possible, to withstand a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1949.  Plaintiff could not have relied on an oral statement that only up to 7% of the Tremont Fund's assets would ever ultimately be invested with a single fund manager.  The Policy and PPMs comprising the parties' integrated agreement did not guarantee a specific degree of diversification, other than providing that one investment could, under applicable regulations, constitute up to 55% of the Fund.  Tremont PPM, p. 4.  The PPMs and LPA made clear that AGL had no control over the degree of concentration of the Tremont Fund or the funds with which it invested.  AGL PPM, p. 38-39; Tremont PPM, pp. 2, 28; LPA, p. 8, § 3.01.  It is implausible that Plaintiff would have relied on a parol statement which was allegedly made months before he received a contradicting PPM.

It is also implausible as a matter of law that Plaintiff could have relied on a statement that his investment would be "equity market neutral."  The objectives of an investment—such as the objective to resist market volatility—are not statements upon which investors may reasonably rely.  *See In re TCW/DW N. Am. Gov't. Income Trust Sec. Litig.*, 941 F. Supp. 326, 338-39 (S.D.N.Y. 1996) (holding that statement of investment objective identified in prospectus was not a material misrepresentation because it was "simply not the kind of statement which a reasonable investor would consider important in deciding whether or not to invest," and reasoning "if it

33

were reasonable for an investor to consider such a statement, the Court presumes that many, if not most securities offerings would expose their issuers to federal securities law liability").

**IX.     Plaintiff's Unjust Enrichment Claim Cannot Survive Because There Is An Undisputed Contract That Governs The Transaction Between The Parties**

To sustain a claim of unjust enrichment, Plaintiff "must allege that:  (1) the plaintiff conferred benefits upon the defendant; (2) the defendant appreciated and accepted such benefits; and (3) it would be inequitable for the defendant to retain the benefit without payment of the value." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) (citing *Wiernik v. PHH U.S. Mortgage Corp.*, 738 A.2d 616, 622 (Pa. Super. Ct. 1999)).  An unjust enrichment claim asks the court to imply a "'quasi-contract' [which] imposes a duty 'not as the result of any agreement, whether express or implied, but in spite of the absence of an agreement' where the circumstances demonstrate that it would be inequitable for the defendant to retain the benefit conferred without payment." *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. 2004) (citations omitted).  As such, "[a] plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties." *Alpart*, 574 F. Supp. 2d at 507 (citation omitted); *Villoresi*, 856 A.2d at 84.  Here, there is no dispute as to the existence of the Policy that governs the parties' relationship; therefore, the unjust enrichment claim must be dismissed.

4470439

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Amended Complaint

be dismissed in its entirety.

Dated: May 18, 2010                              Respectfully submitted,

                                                        /s

                                     Mathieu J. Shapiro

-- and --                                        Obermayer Rebmann Maxwell & Hippel LLP
                                                 One Penn Center, 19th Floor
Of Counsel:                                      1617 John F. Kennedy Blvd.
Joseph P. Moodhe                                 Philadelphia, Pennsylvania  19103-1895
John C. Dockery                                  Phone:  (215) 665-3000
Debevoise & Plimpton LLP                         Fax:  (215) 665-3165
919 Third Avenue
New York, New York  10022
Phone:  (212) 909-6000
Fax:  (212) 909-6836

*Attorneys for Defendant, AGL Life Assurance*
*Company*

35

## <u>CERTIFICATE OF SERVICE</u>

I, Mathieu J. Shapiro, hereby certify that a true and correct copy of the foregoing

Defendant AGL Life Assurance Company's Motion to Dismiss was electronically filed on

May 18, 2010 using CM/ECF which will send notification of such filing to the following

counsel of record:

Nicholas Noel, III
nnoel@noelandkovacs.com

William R. Connelly
wconnelly@connellylaw.net

/s

_____
MATHIEU J. SHAPIRO

4470439