**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL S. RULLE FAMILY DYNASTY TRUST,** )<br><br>)<br>**Plaintiff,**<br>)<br>v.<br>)<br>**AGL LIFE ASSURANCE COMPANY,**<br>)<br>**Defendant.**<br>) | Civil Action No. 2:10-cv-0231 |

**DEFENDANT AGL LIFE ASSURANCE
COMPANY'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE AMENDED COMPLAINT**

Mathieu J. Shapiro
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania  19103-1895
Phone:  (215) 665-3000
Fax:  (215) 665-3165

Of Counsel:

Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York  10022
Phone:  (212) 909-6000
Fax:  (212) 909-6836

Attorneys for Defendant
AGL Life Assurance Company

4475128

# TABLE OF CONTENTS

I. The Contract Is Clear And Unambiguous ............................................................................1

    A. The Losses Suffered By Tremont Were Investment Losses ....................................1

    B. AGL Had No Control Over Tremont's Investments .................................................3

II. Plaintiff Fails To Overcome The Lack of Predicate Elements For His Other Claims ........................................................................................................................5

    A. Defendant's Arguments To Dismiss The Fraud Counts Stand Largely Uncontested ................................................................................................................5

    B. Plaintiff's Assertion Of Extra-Contractual Duties Cannot Support His Claims ........................................................................................................................6

III. Pennsylvania Law Applies to Plaintiff's Tort Claims, But They Fail Under Either Pennsylvania or Alaska Law ..............................................................................8

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................................................5, 9

*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007) ....................................................8, 9

*Klein v. Autek Corp.*, 147 Fed. Appx. 270 (3rd Cir. 2005) ............................................................5

*Paine v. Comm'r. of Internal Revenue*, 63 T.C. 736 (1975) .........................................................2


**ALAKSA STATE CASES**

*Diagnostic Imaging Ctr. Assoc. v. H&P*, 815 P.2d 865 (Alaska 1991) .........................................4

*O.K. Lumber Co., Inc. v. Providence Washington Mut. Ins. Co.*, 759 P.2d 523 (Alaska
    1988) ........................................................................................................................................5


**FEDERAL RULES & STATUTES**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................................8

Investment Advisors' Act of 1940, 15 U.S.C. § 80b-2 (a)(11) .......................................................6


**OTHER AUTHORITIES**

Rev. Rul. 2009-9, 2009-14 I.R.B. 735 .............................................................................................2

Although having amended the Complaint to avoid AGL's prior motion to dismiss, Plaintiff's opposition memorandum (P.Mem.[1]) and associated affidavits add still new allegations to claim that there are disputed facts that prevent dismissal. But AGL has neither disputed Plaintiff's version of the facts for the purposes of its motion, nor conceded that the Amended Complaint is well pled, as Plaintiff incorrectly asserts. While Plaintiff cites the affidavit of John Hillman[2] ("Hillman"), and quotes AGL's prior brief, AGL relies upon neither document for its current motion to dismiss. What it does rely upon are the documents referenced in the Amended Complaint, which Plaintiff ignores in its opposition and which dispose of most of its arguments.

Equally fatal, Plaintiff fails to address a large number of AGL's arguments, thereby conceding those arguments in favor of dismissal.

## I.   The Contract Is Clear And Unambiguous

### A.   *The Losses Suffered By Tremont Were Investment Losses*

Plaintiff argues that losses sustained by Tremont resulting from Madoff's fraud were theft losses and not investment losses under the terms of the Policy and PPMs. P.Mem. 2, 11-14. But this argument ignores a critical point: Tremont was not directly the victim of Madoff's fraud. As Plaintiff acknowledged, certain Tremont investments, the Rye Select Funds ("Rye Funds"), lost

---

[1] Hereinafter, "D.Mem." refers to Defendant's memorandum in support of its motion to dismiss the Amended Complaint; "D.Mem.O." refers to Defendant's original memorandum supporting its motion to dismiss the Original Complaint; "P.Mem." refers to Plaintiff's opposition memorandum. "Am Compl." refers to Plaintiff's Amended Complaint, and "Am. Compl., Ex. A" refers to pages (using ECF page numbers) exhibited with the Amended Complaint as found in docket number 18-1. Citations to "Policy" refer to the Policy's own page numbers (i.e., not ECF page numbers); the Policy is exhibited in Am. Compl., Ex. A.

The AGL Life Assurance Company Private Placement Memorandum, dated October 2, 2001 ("AGL PPM"); The American Masters Opportunity Fund, L.P., Confidential Private Placement Memorandum, dated January 1, 2001 (the "Tremont PPM"); and the Limited Partnership Agreement of the American Masters Opportunity Insurance Fund, L.P, also dated January 1, 2001 (the "LPA"), are located at Exhibits 1-3, respectively, of the exhibits filed with the D.Mem.O. at docket no. 12.

[2] The Hillman Affidavit was submitted with Defendant's original brief solely in support of its choice of law analysis, not in support of its arguments as to the merits of Plaintiff's claims. (D.Mem.O. 26, n. 9).

value because Madoff stole their money. Thus, while the Rye Funds may have suffered a theft or fraud loss, Plaintiff's account suffered an "investment loss" because Tremont suffered an investment loss when the Rye Funds lost value.

The authorities relied upon by Plaintiff (P.Mem. 13) are inapplicable to the instant context where investments of Tremont, not the Fund itself, were the victims of fraud. How the Internal Revenue Code, as a matter of policy, treats losses for the purpose of deductions is of little relevance to interpreting this contract. Moreover, while in pursuit of this theory, Plaintiff misapplies *Paine v. Comm'r of Internal Revenue*, where the court disallowed a fraud loss deduction primarily because the investor was not the direct victim of a fraud perpetrated by an officer of a corporation whose stock the taxpayer owned. 63 T.C. 736, 741-742 (1975). If anything, Plaintiff's reliance on *Paine* supports AGL's position, as Plaintiff admits that under *Paine*, "investment losses" include those due to "derelict management." P.Mem. 13. It is precisely the "derelict management" of AGL for permitting Tremont's investments that is the thrust of Plaintiff's allegations.

Similarly Rev. Rul. 2009-9 deals with the tax character of a loss suffered by an investor who *directly* invested with a manager who "specifically intended" to defraud him. *See* Rev. Rul. 2009-9, 2009-14 I.R.B. 735. Here, unlike *Paine* and the situation discussed in Rev. Rul. 2009-9, neither Tremont nor Rulle was ever directly invested with Madoff.

Plaintiff's reliance on FINRA definitions is similarly misplaced. P.Mem. 14. Aside from being unrelated guidelines that do not control the Policy, the FINRA definitions cited by Plaintiff do not purport to exhaustively catalogue what constitutes investment losses, and do not contemplate the multi-tiered investment structure at issue here.

Critically, characterizing Plaintiff's loss so to exclude it from the Policy's account valuation formula would lead to a patently unreasonable result at odds with the letter and spirit of the Policy. Excluding consideration of the loss would make AGL an insurer of any losses resulting from thefts at downstream investments selected by funds in which Tremont invested. Under Plaintiff's theory, had Rulle invested in Enron through his Policy, AGL would be equally liable. Clearly it could not be a reasonable expectation of either a sophisticated investor like Rulle, or of AGL, that AGL would be obligated to compensate losses occasioned by fraudulent activities of remote third parties relating to underlying investments. This is especially so where the Policy explicitly places the risk of loss on the policyowner. *See* AGL PPM, p. 1.

  B. *AGL Had No Control Over Tremont's Investments*

Plaintiff next argues that AGL breached the agreement by failing to ensure appropriate diversity among Tremont's investments. P.Mem. 14-15. That claim necessarily assumes that AGL could not only see all of Tremont's primary investments—and in turn the investments made by those primary investments—but that AGL could control them. Yet, Plaintiff does not address the disclosures throughout the Policy and related documents emphasizing that AGL had no control over Tremont's investments and that such authority was vested solely with the General Partner of the Fund. AGL PPM, p. 38 ("The Account is managed by Tremont Partners, Inc. ("General Partner") which will attempt to accomplish [the] investment objectives by investing with various portfolio managers (the "Managers") . . . ."); Tremont PPM, p. 2 ("The General Partner will select Managers . . . ."), p. 28 ("The Limited Partners cannot take part in the management or control of the Partnership's business, which is the sole responsibility of the General Partner.") LPA, p. 8, § 3.01 ("The management of the Partnership shall be vested exclusively in the General Partner."). The documents also warned that the ultimate investments were not fully transparent to the General Partner and thus, *a fortiori*, AGL. AGL PPM, p. 39.

Beyond that, Plaintiff offers no coherent basis for asking the Court to write into the Policy a diversification cap below the amounts ultimately invested with Madoff. Plaintiff is uncertain even as to what that limit should be. It variously argues that industry standards compel no more than 5% investment in any one security (Rulle Supp. Aff. ¶4)[3]; points to an alleged parol statement by Hillman that no more than 7% of Tremont would be invested with any one manager;[4] and also contends that a list reflecting Tremont's investments[5] that included a single investment comprising 10.23% of the Fund's assets "was consistent with Rulle's expectation of diversification." P.Mem. 8. Each of these proposed caps contradicts the Policy and AGL PPM, which guaranteed no specific degree of diversity, and the Tremont PPM, which stated that up to 55% of its assets could be applied to any single investment. Tremont PPM, p. 4.

Contrary to Plaintiff's assertion, there is no ambiguity that prevents this Court from resolving this issue as a matter of law. *See* D.Mem. 5. Rulle invokes the rule of construction meant to protect the reasonable expectations of lay insureds by resolving ambiguities in insurance coverage terms and exclusions in policyholders' favor. Even if there was any ambiguity here, the authorities Plaintiff relies upon (P.Mem. 11-12) make clear that the rule of construction is limited to insurance coverage disputes regarding the meaning of coverage and

---

[3] This so-called industry standard is not alleged in the Amended Complaint and thus should not be considered by the Court.

[4] Ignoring the Policy's integration clause (*see* Policy, p. 18), Plaintiff contends that Alaska's parol evidence rule does not bar the use of the alleged Hillman assurance because the statement does not conflict with the Policy documents and falls within a fraud exception to the rule. P.Mem. 15. *First,* the alleged statement plainly conflicts with the integrated agreement, which expressly disclosed that AGL had absolutely no control over Tremont's investments, and expressly allowed for a diversity percentage much higher than 7%. *See infra* 4. *Second*, the fraud exception applies to alleged misrepresentations that induce a party to enter into a contract, not misrepresentations as to the terms of a contract. *See Diagnostic Imaging Ctr. Assoc. v. H&P*, 815 P.2d 865, 867 (Alaska 1991).

[5] Plaintiff repeats its error from Am. Compl. ¶60, stating that the list was *provided* to Rulle in September 2008, when Rulle himself acknowledges that the list was provided in December 2008 (after Madoff was exposed). Rulle Aff. ¶21.

exclusions. The rule has no place in an action involving a highly sophisticated investment professional complaining about the investment features offered within the Policy.[6]

## II.     Plaintiff Fails To Overcome The Lack of Predicate Elements For His Other Claims

   A.     *Defendant's Arguments To Dismiss The Fraud Counts Stand Largely Uncontested*

Plaintiff engages almost none of AGL's arguments for dismissal of the fraud claims. There is no rebuttal to the argument that the two alleged misrepresentations were not false and, therefore, not actionable. *See* D.Mem. 11-12. Similarly, amidst a lengthy discussion of various acts, regulations and FINRA rules, Plaintiff never explains how the alleged omissions made any of AGL's affirmative statements materially misleading. *See* P.Mem. 12-14. Plaintiff also entirely ignores AGL's arguments demonstrating that scienter has not been adequately pled for any of the alleged misstatements and omissions.[7] *See* D.Mem. 14-16. Instead, Plaintiff merely reverts to the kind of conclusory statements (*See* P.Mem. 15, 23-24) found insufficient by the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Finally, while Plaintiff points to the general definitions of "security" in the Pennsylvania and Alaska securities statutes, he ignores the language in each that *expressly exclude*s variable life insurance policies of the kind at issue here from their definitions of covered securities. *Compare* D.Mem. 16-17 *with* P.Mem. 24. For these reasons, Plaintiff's fraud claims indisputably must be dismissed.

---

[6] The implied insurers' fiduciary duty under Alaska law is equally inapposite. The duty requires insurers to handle coverage claims in good faith; here, there is no such claim as Rulle is alive. *See O.K. Lumber Co., Inc. v. Providence Washington Mut. Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988).

[7] Contrary to Plaintiff's contention (P.Mem. 16, n. 5), the PSLRA's heightened pleading standards apply to individual as well as class actions. *Klein v. Autek Corp.*, 147 Fed. Appx. 270, 273-74 (3rd Cir. 2005).

5

B.   *Plaintiff's Assertion Of Extra-Contractual Duties Cannot Support His Claims*

Plaintiff discusses at length duties owed by investment advisors, broker-dealers and investment managers, claiming that AGL is all of these things (*e.g.,* P.Mem. 17-21). These *ipse dixit* characterizations are not supported by the allegations in the Amended Complaint or the law.

Plaintiff argues that AGL was an adviser under the Investment Advisors' Act of 1940 ("IAA"). P.Mem. 17. The argument appears to be based on two allegations: Hillman's alleged recommendation of the Policy to Rulle, and a supposed investment advisory fee charged by AGL. P.Mem. 11, 17, 21. Neither allegation supports a finding that AGL was an investment advisor.

The IAA defines an investment advisor as:

> any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2 (a)(11). Plaintiff does not allege that the parties entered into any agreement whereby AGL would serve as Plaintiff's advisor. Even on Plaintiff's version of events, Hillman's alleged communications with Rulle were "for purposes of convincing Rulle to purchase certain insurance investment *products*," not to convince Rulle to retain AGL as his advisor. Am. Compl. ¶18 (emphasis added). It is not alleged that either Hillman or AGL told Rulle that they were acting as his investment advisor, and it is simply not plausible that Rulle, a sophisticated investor, would have considered them as such. Moreover, Plaintiff's only allegation regarding compensation is an obtuse reference in its brief to an "investment advisory fee" mentioned in the AGL PPM. P.Mem. 21. A reading of the AGL PPM reveals, however, that the fee was not charged by AGL, but instead was a charge assessed by the General Partner of Tremont. AGL PPM, 25-26.

6

Although acknowledging that AGL is not a broker-dealer, Plaintiff contends that AGL was somehow an implied broker-dealer. *First*, Plaintiff argues that AGL was a broker-dealer because it was the alter ego of Phoenix Equity Planning Corporation ("PEPCO"), but Plaintiff fails to respond to AGL's showing that alter ego status here is wholly unsupported by the alleged facts or the law. *Compare* D.Mem. 25-26 *with* P.Mem. 4, 17-18. *Second*, Plaintiff claims that AGL acted as a broker-dealer in the instant transaction because Hillman was personally registered as a broker-dealer. P.Mem. 18. The fact that an officer of AGL holds a particular securities license, however, cannot transform the character and legal status of the company. Hillman's personal certification did not make AGL a broker-dealer any more than an officer holding a medical license would transform a company into a hospital.

Plaintiff's further suggestion that AGL was Plaintiff's investment manager (P.Mem. 17; Am. Compl. ¶¶74, 106) is belied by the Policy it purchased. As discussed *supra*, the Policy emphasized that AGL had *no* control over Tremont's investments. AGL also had *no* discretion over whether Plaintiff allocated its premiums to the Tremont account or the Money Market account. Am. Compl. ¶¶33, 45; Ex. A, p. 63.

Finally, Plaintiff simply does not rebut AGL's showing that AGL's asserted agency status is unsupported by the alleged facts or the law. *Compare* D.Mem. 26-27 *with* P.Mem. 18, 28.

Plaintiff points to no other reason why the relationship between it and AGL was anything other than an arms-length transaction between financially sophisticated parties, nor does Plaintiff attempt to explain how the specific duties it seeks to imply can be reconciled with the clear language of the Policy documents, which foreclose the possibility of AGL being able to perform

those duties.  For that reason, none of these purported roles can be the predicate for any of Plaintiff's claims.

### III. Pennsylvania Law Applies to Plaintiff's Tort Claims, But They Fail Under Either Pennsylvania or Alaska Law

Plaintiff argues that the Amended Complaint is effectively immune from dismissal because choice of law analysis is appropriate only on summary judgment. P.Mem. 24-27.  If that were so, Rule 12(b)(6) would be hollow in any action involving the potential application of more than one jurisdiction's laws, giving plaintiffs a free pass to discovery.

Plaintiff's eagerness to defer that analysis betrays the lack of merit to the substance of its responses (P.Mem. 26-27) to AGL's arguments demonstrating the applicability of Pennsylvania law (D.Mem. 17-21).  *First*, Plaintiff claims that the place of injury in this action was not Pennsylvania, though not disputing that it is the situs of the affected account.  Plaintiff provides no rationale, merely pointing out that: (1) the Policy was delivered in Alaska, and (2) the Policy is subject to Alaska's insurance and (allegedly) securities laws.  Neither has anything to do with the place of injury.  *Second*, while Plaintiff argues that he always contemplated setting up the Trust in Alaska, he does not contest any of the facts and chronology that AGL asserted as demonstrating that Alaska had a minimal relationship to the matters at issue.  *See* D.Mem. 20-21. *Third*, Plaintiff points to contacts with New Jersey but never suggests that New Jersey law should apply, as opposed to Pennsylvania law.  *Finally*, Plaintiff mischaracterizes *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007). P.Mem. 27.  That case dealt solely with an insurance coverage claim under a policy that contained no choice of law provision, and the Court tailored its choice of law analysis to the *contract* issues before it. *Hammersmith*, 480 F.3d at 226-

27, 231, 233-35 (3d Cir. 2007).[8] Contrary to Plaintiff's implication, no *tort* claims were at issue in that case: the "remaining issues in dispute" were contractual.

Yet, even under Alaska law, Plaintiff's claims should be dismissed. As discussed *supra* §II.B, Plaintiff has not plausibly alleged any facts that give rise to duties owed by AGL outside of the parties' contract. Plaintiff's breach of fiduciary duties claim, various negligence claims, and negligent misrepresentation claims accordingly fail under both states' laws.

The negligent misrepresentation claim independently fails for the reasons discussed in AGL's opening brief. D.Mem. 32-34. Those reasons—which Plaintiff does not address—apply with equal force to the elements of the tort as it is found in Alaska. As discussed *supra* n.4, the fraud exception to Alaska's parol evidence rule is inapplicable here.

Plaintiff's breach of the duty of good faith and fair dealing claim also fails under Alaska law, even if Alaska allows the tort to be pled with a breach of contract claim. Without a breach of the Policy or other duty owed by AGL, and absent any allegation that AGL mishandled an insurance claim by Plaintiff, the claim fails.

Finally, Plaintiff has not pled allegations that entitle it to relief for unjust enrichment. Plaintiff never identifies the supposed "management fees" about which it complains; it only alleges that the fees were "improper." Am. Compl. ¶119. That is not a factual allegation but a conclusion "not entitled to the assumption of truth," especially since the documents that are the font of Plaintiff's claims clearly describe any fees. *Iqbal*, 129 S. Ct. at 1951. Plaintiff improperly adds new allegations in its opposition brief attempting to bolster the claim, asserting that "[t]he Policy and PPM did not set forth what Defendant was to do in exchange for the management

---

[8] AGL cited *Hammersmith* simply for the rule that a federal court sitting in diversity must apply the choice of law rules of the forum state (D.Mem. 17) and to establish the framework of Pennsylvania's choice of law analysis (Id. at 19).

fees," which rendered AGL's receipt of the fees unjust. P.Mem. 34.  Yet even now, Plaintiff fails to allege that the offending fees were not disclosed in the Policy or PPM, only alleging that their purpose was not fully described.  In fact, the Policy and PPM disclosed the nature of the various fees to be charged to Plaintiff's account, including those that were assessed by Tremont's General Partner and passed on to policyholders in the form of an Asset Charge. Policy, p. 4; AGL PPM, 25-26.  By accepting the Policy, Plaintiff agreed to incur for its account the fees disclosed by the Policy and PPM.  Plaintiff cannot now, more than eight years following the issuance of the Policy, be heard to claim that those fees were unjust.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendant's previously filed Memorandum of Law in support of its Motion to Dismiss the Amended Complaint, Defendant respectfully requests that the Amended Complaint be dismissed in its entirety.

Dated: June 8, 2010

Respectfully submitted,

             /s/            
Mathieu J. Shapiro
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania  19103-1895
Phone:  (215) 665-3000
Fax:  (215) 665-3165

-- and --

Of Counsel:
Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York  10022
Phone:  (212) 909-6000
Fax:  (212) 909-6836

*Attorneys for Defendant, AGL Life Assurance Company*

## **CERTIFICATE OF SERVICE**

I, Mathieu J. Shapiro, hereby certify that a true and correct copy of the foregoing Defendant AGL Life Assurance Company's Motion to Dismiss was electronically filed on June 8, 2010 using CM/ECF which will send notification of such filing to the following counsel of record:

Nicholas Noel, III
nnoel@noelandkovacs.com

William R. Connelly
wconnelly@connellylaw.net


/s

MATHIEU J. SHAPIRO