**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL S. RULLE FAMILY DYNASTY TRUST,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:10-cv-00231** |
| **AGL LIFE ASSURANCE COMPANY,** | ) | **Hon. Berle M. Schiller** |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT AGL LIFE ASSURANCE COMPANY'S MEMORANDUM ON CHOICE OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Mathieu J. Shapiro
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania 19103-1895
Phone: (215) 665-3000
Fax: (215) 665-3165

Of Counsel:

Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendant
AGL Life Assurance Company

**TABLE OF CONTENTS**


I. Pennsylvania Choice of Law Rules ..........1

II. Plaintiff's Claims Fail Under Either Pennsylvania Or Alaska Law ..........2

A. AGL Owed No Duties To Plaintiff Outside Of The Policy ..........2

B. Absent A Duty, Plaintiff's Negligence Claims Must Be Dismissed ..........8

C. There Is No Plausible Basis For Plaintiff's Negligent Misrepresentation Claim ..........9

D. Plaintiff Has Alleged No Facts To Support An Unjust Enrichment Claim ..........11

III. Pennsylvania Law Applies To Plaintiff's Tort Claims ..........12

A. The Policy's Choice Of Law Clause Does Not Govern The Tort Claims ..........13

B. The Conflict Between Pennsylvania And Alaska Law: Pennsylvania's Defensive Doctrines ..........14

C. Pennsylvania Is Interested In The Application Of Its Defensive Doctrines In This Case ..........16

D. Pennsylvania Has The Most Significant Connections To The Action, Whereas Alaska's Connections Are Minimal ..........17

CONCLUSION ..........20

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*2-J Corporation v. Tice*, 126 F.3d 539 (3d Cir. 1997)....15

*Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491 (E.D. Pa. 2008)....11, 16, 17

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)....2, 6, 10, 11

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)....2

*Black Box Corporation v. Markham*, 127 Fed. App'x 22 (3d Cir. 2005)....13

*Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394 (E.D. Pa. 2002)....14, 15, 16

*Coram Healthcare Corporation v. Aetna U.S. Healthcare*, 94 F. Supp. 2d 589 (E.D. Pa. 1999)....13

*Essex Insurance Company v. RMJC, Inc.*, 306 Fed. App'x 749 (3d Cir. 2009)....16

*Garden State Tanning, Inc. v. Mitchell Manufacturing Group, Inc.*, 55 F. Supp. 2d 337 (E.D. Pa. 1999)....4, 5

*Grimm v. Discover Financial Services*, Civ. A. Nos. 08-747, 08-832, 2008 U.S. Dist. LEXIS 89709, 2008 WL 4821695 (W.D. Pa. Nov. 4, 2008)....13

*Hammersmith v. TIG Insurance Company*, 480 F.3d 220 (3d Cir. 2007)....1, 2

*Huber v. Taylor*, 469 F.3d 67 (3d Cir. 2006)....2

*In re TCW/DW North American Government Income Trust Securities Litigation*, 941 F. Supp. 326 (S.D.N.Y. 1996)....11

*Jiffy Lube International, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569 (E.D. Pa. 1994)....13

*Rock v. Voshell*, 397 F. Supp. 2d 616 (E.D. Pa. 2005)....14, 15, 16

*Smith v. Lincoln Benefit Life Company*, Civ. A. No. 08-01324, 2009 U.S. Dist. LEXIS 24941 (W.D. Pa. Mar. 23, 2009)....1, 2, 13

*Specialty Insurance v. Royal Indemnity Company*, 324 F. Supp. 2d 674 (E.D. Pa. 2004)....14, 15

*Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644 (W.D. Pa. 1999)....15

*Windsor Securities, Inc. v. Hartford Life Insurance Company*, 986 F.2d 655 (3d Cir. 1993) ....................14

*Zavecz v. Yield Dynamics*, 179 Fed. App'x 116 (3d Cir. 2006) ....................1, 17

**ALASKA STATE CASES**

*Alaska Pacific Assurance Company v. Collins*, 794 P.2d 936 (Alaska 1990) ....................14

*Alaska Sales and Service, Inc. v. Millet*, 735 P.2d 743 (Alaska 1987) ....................11

*Edenshaw v. Safeway, Inc.*, 186 P.3d 568 (Alaska 2008) ....................8

*Green Construction Company v. Alaska*, 674 P.2d 260 (Alaska 1983) ....................6

*Marine Solution Services, Inc. v. Horton*, 70 P.3d 393 (Alaska 2003) ....................4, 5

*Mattingly v. Sheldon Jackson College*, 743 P.2d 356 (Alaska 1987) ....................15

O.*K. Lumber Company, Inc. v. Providence Washington Insurance Company*, 759 P.2d 523 (Alaska 1988) ....................4

*Southern Alaska Carpenters Health and Security Trust Fund v. Jones*, 177 P.3d 844 (Alaska 2008) ....................9

*Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079 (Alaska 2008) ....................3

*Valdez Fisheries Development Association v. Alyeska Pipeline Service Company*, 45 P.3d 657 (Alaska 2002) ....................9

**PENNSYLVANIA STATE CASES**

*Atchison Casting Corporation v. Deloitte & Touche, LLP*, No. 003193, 2003 WL 1847665 (Pa. Com. Pl. Mar. 14, 2003) ....................14

*Basile v. H & R Block, Inc.*, 761 A.2d 1115 (Pa. 2000) ....................6

*Bortz v. Noon*, 729 A.2d 555 (Pa. 1999) ....................9

*Cooper v. Frankford Health Care System, Inc.*, 960 A.2d 134 (Pa. 2008) ....................8

*Decker v. Nationwide Insurance Company*, 83 Pa. D. & C. 4th 375 (Pa. Com. Pl. 2007) ....................3

*eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002) ....................2

*McCrery v. Scioli*, 485 A.2d 1170 (Pa. Super. Ct. 1984)....................................................................5

*Troxel v. A.I. duPont Institute*, 636 A.2d 1179 (Pa. Super. Ct. 1994) ...........................................17

*Villoresi v. Femminella*, 856 A.2d 78 (Pa. Super. Ct. 2004) ...................................................15, 16

*Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425 (Pa. 2004)......................................................10

**FEDERAL STATUTES**

Investment Advisors' Act of 1940, 15 U.S.C. § 80b-2.................................................................6, 7

**OTHER AUTHORITIES**

Restatement (Second) of Conflicts of Laws ....................................................................1, 17, 18, 19

By Order dated July 7, 2010, the Court dismissed the Amended Complaint's breach of contract, breach of duty of good faith and fair dealing, and securities fraud claims. As to the tort claims—asserting breach of fiduciary duties, negligence, negligent misrepresentation, and unjust enrichment—the Court ordered further briefing on what law governed those claims.[1]

A choice of law analysis is not necessary in this case because the claims should be dismissed under either Pennsylvania law (as Defendant contends) or Alaska law (as Plaintiff argues). The Amended Complaint wholly fails to plead plausible facts that support the causes of action as they exist in either jurisdiction.

In the event Plaintiff's claims are deemed to have been sufficiently pled, then the Court must conduct a choice of law analysis because Pennsylvania law affords certain defensive doctrines, the application of which would preclude Plaintiff's claims, not recognized or fully articulated under Alaska law. Analysis under Pennsylvania's choice of law rules leads to the application of Pennsylvania law to the remaining claims, and consequently their dismissal.

## I. Pennsylvania Choice of Law Rules

A federal district court must apply the choice of law rules of the forum state. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). Pennsylvania's choice of law rules combine government interest analysis and the most significant relationship test of the Restatement (Second) of Conflicts of Laws ("Restatement 2d."). *Smith v. Lincoln Benefit Life Co.*, Civ. A. No. 08-01324, 2009 U.S. Dist. LEXIS 24941, at *23 (W.D. Pa. Mar. 23, 2009); *see also Zavecz v. Yield Dynamics*, 179 Fed. App'x 116, 120-21 (3d Cir. 2006). Courts first determine whether the laws of the potentially applicable jurisdictions differ in any relevant way.

---

[1] Defendant received service of Plaintiff's opening brief on choice of law on July 27, 2010. Defendant does not in its opening brief attempt to address the arguments contained in Plaintiff's submission, but rather reserves its right to do so in its responsive brief, which is due August 6, 2010 per the Court's Order of July 7, 2010.

*Hammersmith*, 480 F.3d at 229-30; *Lincoln Benefit Life Co.*, 2009 U.S. Dist. LEXIS 24941, at *23-24. If no relevant difference is found, then there is no conflict, and the states' laws may be referred to interchangeably. *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006).

If, however, "there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or 'unprovided-for' situation." *Hammersmith*, 480 F.3d at 230. "A 'true' conflict exists when both states have an interest in applying their own law. A 'false' conflict exists when only one state has an actual interest in applying its law. The situation will be considered 'unprovided for' when neither has an interest in applying its own law." *Lincoln Benefit Life Co.*, 2009 U.S. Dist. LEXIS 24941, at *24-25 (citations omitted).

> If the Court determines that a 'true' conflict exists, it must determine which state has the most significant contacts with the controversy, as provided by the Restatement (Second) of Conflicts. This analysis requires more than a 'mere counting of contacts.' Rather, the Court must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issues. If the Court determines that a 'false' conflict exists, the Court applies the law of the interested state.

*Id.* at *25-26.

## II. Plaintiff's Claims Fail Under Either Pennsylvania Or Alaska Law

A choice of law analysis is not necessary in this case because the Amended Complaint fails to allege plausible facts to support the remaining claims' predicate elements whether measured under Pennsylvania or Alaska law. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### *A. AGL Owed No Duties To Plaintiff Outside Of The Policy*

Pennsylvania and Alaska law allow the implication of fiduciary duties only in a narrow set of circumstances premised on a special relationship of trust. *Compare eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 22-23 (Pa. Super. Ct. 2002) (implying fiduciary duties

only where parties are in special relationships involving confidentiality or the repose of special trust, "where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other") *with Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1090 (Alaska 2008) ("a fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence") (citations omitted). As described in the Amended Complaint, nothing in the instant transaction between these two sophisticated parties to a private placement involving a complex financial instrument remotely resembles the sort of reliant dealings that might give rise to a fiduciary duty under the law. *See* D.Mem. 21-23.[2] What is alleged is the arms-length sale of a variable premium life insurance policy to a Trust formed by Plaintiff's grantor days before the policy's issuance. For that reason alone, this claim must fail under the law of either jurisdiction.

In its opposition brief, Plaintiff reached in a multitude of directions to ground such a duty notwithstanding the absence of a relationship of special confidence. *First*, Plaintiff argued that the duty springs from AGL's status as an insurer. Under Pennsylvania law an insurer like AGL owes no fiduciary duty to its insured under these circumstances. *Decker v. Nationwide Ins. Co.*, 83 Pa. D. & C. 4th 375, 379 (Pa. Com. Pl. 2007) ("[N]o fiduciary duty exists between an insurance company and its insured[;] . . . Instead, the relationship between the insurer and

---

[2] Hereinafter, "Ct. Mem." refers to the Court's Memorandum dated July 7, 2010. "D.Mem." refers to Defendant's memorandum in support of its motion to dismiss the Amended Complaint. "P.Mem." refers to Plaintiff's opposition memorandum. "Am. Compl." refers to Plaintiff's Amended Complaint, and "Am. Compl., Ex. A" refers to pages (using ECF page numbers) exhibited with the Amended Complaint as found in docket number 18-1. Citations to "Policy" refer to the Policy's own page numbers (i.e., not ECF page numbers); the Policy is exhibited in Am. Compl., Ex. A.

The AGL Life Assurance Company Private Placement Memorandum, dated October 2, 2001 ("AGL PPM"); The American Masters Opportunity Fund, L.P., Confidential Private Placement Memorandum, dated January 1, 2001 (the "Tremont PPM"); and the Limited Partnership Agreement of the American Masters Opportunity Insurance Fund, L.P, also dated January 1, 2001 (the "LPA"), are located at Exhibits 1-3, respectively, of the exhibits filed at docket no. 12.

insured is one of buyer and seller.") (citations omitted). While Alaska recognizes a fiduciary duty flowing from insurers to insureds, it exists only with respect to an insurer's handling of coverage claims. *See* O.*K. Lumber Co., Inc. v. Providence Washington Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988) ("The fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing. Thus, an insurer has an obligation to investigate claims and to inform the insured of all settlement offers.") (citations omitted). As the Court noted in dismissing Plaintiff's good faith and fair dealing claim, this action "has nothing to do with the insurance aspect of the Policy." Ct. Mem. 23. Thus, any duty imposed under Alaska law is inapplicable here.

*Second*, Plaintiff argued that a fiduciary duty arose because, "in conjunction with [PEPCO]," AGL acted as a broker-dealer. Am. Compl. ¶74. Plaintiff attempts to sidestep the reality that, as alleged, AGL is "an insurance and financial services organization" (Am. Compl. ¶3) and not a broker-dealer by arguing that PEPCO's broker-dealer status should be imputed to AGL because they are alter egos. Neither Pennsylvania law nor Alaska law allow the corporate form to be so easily disregarded. Pennsylvania law requires "a very high showing of domination and control" by one entity over the other. *Garden State Tanning, Inc. v. Mitchell Mfg. Grp., Inc.*, 55 F. Supp. 2d 337, 344 (E.D. Pa. 1999). "[C]ourts start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Id.* (citations omitted). Alaska law is in accord. *Marine Solution Servs., Inc. v. Horton*, 70 P.3d 393, 401 (Alaska 2003) ("[i]t is well-established that the corporate entity is distinct 'although all or a majority of its stock is owned by a single individual or corporation' . . . ") (citations omitted). To determine whether one entity is merely an alter ego of another, courts in Pennsylvania and Alaska consider factors such as: whether the entities

commingle funds and assets; whether the controlled entity is undercapitalized; and whether there is a failure to observe corporate formalities. *Compare Garden State Tanning, Inc.* 55 F. Supp. 2d at 345 (Pennsylvania) *with Marine Solution Servs., Inc.*, 70 P.3d at 402 (Alaska). Here, Plaintiff merely points to certain shared attributes of the two companies to conclusorily allege alter ego status. Am. Compl. ¶9. But there are no allegations of relevant facts showing that the companies have disregarded their corporate forms, commingled their operations and assets, are grossly undercapitalized, or substantiate that they are actually the same entity, which is the crux of the alter ego doctrine. *McCrery v. Scioli*, 485 A.2d 1170, 1175 (Pa. Super. Ct. 1984) ("Ordinarily, separate corporations retain their distinct identities notwithstanding the fact that they may have common stockholders, directors, and officers.") (citations omitted); *Marine Solution Servs., Inc.*, 70 P.3d at 402 (Alaska) ("In general, the corporate identity will be disregarded only when 'the separate personalities of the corporation and the individual no longer exist.'"). In fact, the principal underwriting agreement between the companies and the distinctions relied on by Plaintiff evidence the fact that the companies are separate entities that perform different functions in transacting business with each other. *See* Am. Compl. ¶¶3-6.

Regardless of whether AGL and PEPCO are alter egos, however, Plaintiff has not alleged any facts to support the conclusion that either *acted* as a broker-dealer for Plaintiff. Plaintiff merely alleges PEPCO's *status* as such.[3] *See* Am. Compl. at ¶4. Without such an allegation, there is no logical basis to impute whatever unalleged fiduciary duties PEPCO might have as a broker-dealer to AGL, alter ego or not.

*Third*, Plaintiff asserted that AGL was Plaintiff's agent, and thus owed Plaintiff a fiduciary duty. Am. Compl. ¶74. Fundamentally, the elements of agency are the same in

[3] In fact, the retail broker-dealer for Plaintiff's policy was W.S. Griffith & Co., whose agent, Mark Dunn, is identified on the Policy application documents. Am. Compl., Ex. A, pp. 61-63.

Pennsylvania and Alaska. In Pennsylvania, "the law is clear . . . that the three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000). Alaska defines agency as "the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Green Constr. Co. v. Alaska*, 674 P.2d 260, 265 (Alaska 1983). Here, nothing in the Policy, PPMs or the LPA provided that AGL undertook to be Plaintiff's agent, and there is no basis asserted from which to infer such a relationship. There is no allegation that AGL either received or accepted authority to act on Plaintiff's behalf, that Plaintiff held AGL out to others as its agent, or that Plaintiff controlled AGL's actions. Plaintiff's assertion of agency is merely a legal conclusion, unsupported by any plausible factual allegations, and thus cannot be a basis for implying a fiduciary duty owed by AGL. *See Iqbal*, 129 S. Ct. at 1949.

*Fourth*, Plaintiff's suggestion that AGL was Plaintiff's investment manager (P.Mem. 17; Am. Compl. ¶¶74, 106) is contradicted by the Policy it purchased. As the Court found, the Policy emphasized that AGL had *no* control over Tremont's investments and *no* discretion over whether Plaintiff allocated its premiums to the Tremont investment account or the Money Market account. *See* Ct. Mem. 5, 6, 12, 16, 20 and 3, 5, 6, 7, 12. *See also* Am. Compl. ¶¶33, 45; Ex. A, p. 63.

*Fifth*, Plaintiff argued that AGL was an advisor under the Investment Advisors' Act of 1940 ("IAA"). P.Mem. 17. The argument appears to be based on two allegations: Hillman's alleged recommendation of the Policy to Rulle, and a supposed investment advisory fee charged

by AGL. P.Mem. 11, 19-21. Neither allegation supports a finding that AGL was an investment advisor.

The IAA defines an investment advisor as:

> any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2 (a)(11). Plaintiff does not allege that the parties entered into any agreement whereby AGL would serve as Plaintiff's advisor. Even under Plaintiff's version of events, Hillman's alleged communications with Rulle were "for purposes of convincing Rulle to purchase certain insurance investment *products*," not to convince Rulle to retain AGL as his advisor. Am. Compl. ¶18 (emphasis added). It is not alleged that either Hillman or AGL represented to Rulle that they were acting as his investment advisor, and it is simply not plausible that Rulle, a sophisticated investor, would have considered them as such. In any event, certainly neither was an advisor to the Plaintiff Trust, which did not even exist during the period of this alleged provision of advice. Moreover, Plaintiff's only allegation regarding compensation is an obtuse reference in its opposition brief to an "investment advisory fee" mentioned in the AGL PPM. P.Mem. 21. A reading of the AGL PPM, however, reveals that the fee was not charged by AGL, but instead was a charge assessed by Tremont's general partner. AGL PPM, pp. 25-26.

*Finally*, the particular breach that Plaintiff seeks to imply—that AGL failed to conduct exhaustive due diligence of *every* investment manager of *every* fund selected *by Tremont* (*see* Am. Compl. ¶76) (and thereby failed to sniff out Madoff's fraud or Tremont's concentration with Madoff) is completely at odds with the express disclosures of the parties' agreement. As the Court concluded, the Policy and PPMs clearly notified Plaintiff that it bore the entire risk of loss

and that Tremont exercised exclusive control over its investments. Ct. Mem. at 13, 15. Plaintiff was further informed that Tremont's ultimate investments were not always transparent to Tremont's general partner and thus, *a fortiori*, AGL. *See* AGL PPM, p. 39 ("The General Partner may not always be provided with detailed information regarding all of the investments made by the Managers because certain of this information may be considered proprietary"). The Court in dismissing Plaintiff's breach of contract claim agreed, rejecting "Plaintiff's attempt to alter the clear wording of his agreement to place the risk of investment loss on AGL." Ct. Mem. 16. And, as the Court found in dismissing Plaintiff's securities fraud claims, "AGL did not ultimately determine which money managers the General Partner used, a fact made abundantly clear to Plaintiff. Thus, AGL lacked any knowledge that Madoff was managing any of Plaintiff's investments, let alone that he was running a Ponzi scheme." *Id.* at 20.

In sum, the alleged facts viewed under the law of either Pennsylvania or Alaska do not support Plaintiff's purported claim for breach of fiduciary duty.

*B. Absent A Duty, Plaintiff's Negligence Claims Must Be Dismissed*

The lack of any cognizable duties outside of the contract is also fatal to Plaintiff's negligence claims. Under both Pennsylvania and Alaska law, to support a claim for negligence, including gross negligence and professional negligence, Plaintiff must allege facts showing that AGL owed and breached a duty to Plaintiff. *Compare Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134, 140 n.2 (Pa. 2008) (stating elements of negligence) *with Edenshaw v. Safeway, Inc.*, 186 P.3d 568, 571 (Alaska 2008) (stating elements of negligence). As discussed *supra*, Plaintiff has not plausibly alleged any facts establishing that AGL bore or breached any duties outside those found in the parties' agreement.

Plaintiff's attempt to frame its claim as one for professional negligence should be rejected under either state's law because AGL performed no professional services for Plaintiff. It simply

sold Plaintiff a variable policy and allocated premiums according to one of two investment accounts per Plaintiff's instructions. No professional services are plausibly alleged or supported by factual allegations.

### *C. There Is No Plausible Basis For Plaintiff's Negligent Misrepresentation Claim*

The elements of the tort of negligent misrepresentation found in Pennsylvania law are, in relevant respects, the same as those for the tort under Alaska law. Pennsylvania's version of the tort requires: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). Similarly, the elements of the tort in Alaska are: "First, the tortfeasor must have made a statement in the course of business, employment, or some other enterprise in which he had a pecuniary interest. Second, the statement must have been false when the tortfeasor made it. Third, the victim must have justifiably relied upon the statement to his detriment. Fourth, the tortfeasor must have failed to exercise reasonable care when making the statement." *S. Alaska Carpenters Trust Fund v. Jones*, 177 P.3d 844, 857 (Alaska 2008). As with any action grounded in negligence, there must exist a duty owed by one party to the other. *Bortz*, 729 A.2d at 561; *See Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 671-72 (Alaska 2002).

The Amended Complaint identifies two alleged misrepresentations:

- that AGL concealed the fact that Tremont allegedly invested 23% of its assets with funds that invested in the same manager, when previously AGL had represented that a significantly lower percentage would be ultimately entrusted with any one manager. Am. Compl. ¶¶22, 114.
- that AGL "mislead [sic], misrepresented and deceived Plaintiff by referring to the Madoff accounts as 'equity market neutral.'" Am. Compl. ¶115.

*First*, as discussed above, AGL owed no duties outside of the Policy to Plaintiff that would give rise to an obligation to disclose the investment allocations of the Tremont Fund.

*Second*, with regard to the first statement, Plaintiff has made no allegations to support the conclusion that AGL knew that some of the Rye Funds invested with the same ultimate manager—Madoff. As the Court found in its dismissal of Plaintiff's securities fraud claims, "AGL lacked any knowledge that Madoff was managing any of Plaintiff's investments, let alone that he was running a Ponzi scheme." Ct. Mem. 20.[4] With regard to the "equity market neutral" statement, there are no allegations that it was false or, assuming the statement could be considered false, that AGL was aware of its falsity.

*Third*, there are no allegations to support a finding that the alleged "equity market neutral" statement—even if it was false and known to be so—actually caused Plaintiff's loss. To the contrary, as the Amended Complaint makes clear, the losses in value to Tremont's investments were caused by Madoff's fraud, not exposure to the securities markets.

*Fourth*, Plaintiff's claim fails because it is facially implausible that Plaintiff would have credited, much less relied, on either statement. Plaintiff's claim must be facially plausible, not merely possible, to withstand a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.

Plaintiff could not have relied on an oral statement that only up to 7% of the Tremont Fund's assets would ever be invested with a single fund manager. The Policy and PPMs comprising the parties' integrated agreement did not guarantee a specific degree of diversification, other than providing that one investment could, under applicable regulations, constitute up to 55% of the Fund. Tremont PPM, p. 4. It is implausible that Plaintiff would have

[4] In addition, Alaska's parol evidence rule renders the first alleged misrepresentation non-actionable because it is based on an alleged statement made prior to the execution of the parties' integrated written agreement. *See* Ct. Mem. 14-15. Pennsylvania law is in accord. *Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425, 436 (Pa. 2004).

relied on a parol statement allegedly made months before the receipt, and in the face, of a contradicting PPM. *See* Ct. Mem. 15.

It is also implausible that Plaintiff could have relied on an oral statement that his investment would be "equity market neutral." The objectives of an investment—such as the objective to resist market volatility—are not statements upon which investors may reasonably rely. *See In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 338-39 (S.D.N.Y. 1996) (holding that statement of investment objective identified in prospectus was not a material misrepresentation because it was "simply not the kind of statement which a reasonable investor would consider important in deciding whether or not to invest," and reasoning "if it were reasonable for an investor to consider such a statement, the Court presumes that many, if not most securities offerings would expose their issuers to federal securities law liability").

*D. Plaintiff Has Alleged No Facts To Support An Unjust Enrichment Claim*

The elements of unjust enrichment are the same in Alaska and Pennsylvania. *Compare Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) (plaintiff must show: "1) the plaintiff conferred benefits upon the defendant; 2) the defendant appreciated and accepted such benefits; 3) it would be inequitable for the defendant to retain the benefit without payment of the value") *with Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987) (same).

Plaintiff has not pled any allegations that entitle it to relief. Plaintiff never identifies the supposed "management fees" about which it complains; it only alleges that the fees were "improper." Am. Compl. ¶119. That is not a factual allegation but a conclusion "not entitled to the assumption of truth," especially since the documents that are the font of Plaintiff's claims clearly describe any fees. *Iqbal*, 129 S. Ct. at 1951. Plaintiff alleged, for the first time through its prior opposition brief, that "[t]he Policy and PPM did not set forth what Defendant was to do in

exchange for the management fees," which rendered AGL's receipt of the fees unjust. P.Mem. 34. Yet, Plaintiff does not dispute that the offending fees were disclosed in the Policy and PPM; it only alleges that the details of AGL's services were not fully described. In fact, the Policy and PPM disclosed the nature of the various fees to be charged to Plaintiff's account, including those that were assessed by Tremont's General Partner and passed on to policyholders in the form of an Asset Charge. Policy, p. 4; AGL PPM, pp. 25-26. By accepting the Policy, Plaintiff agreed to incur the fees disclosed by the Policy and PPM. Plaintiff cannot now, more than eight years following the issuance of the Policy, be heard to claim that those fees were unjust.

* * *

Because Plaintiff has failed to allege essential elements of its tort claims that are common to both Pennsylvania and Alaska law, this Court may and should dismiss those claims without having to confront other variations that may exist in the laws of these jurisdictions.

## III. Pennsylvania Law Applies To Plaintiff's Tort Claims

Pennsylvania law affords certain defensive doctrines not present or fully articulated in Alaska law that provide additional grounds for dismissal of Plaintiff's claims. These doctrines are the "gist of the action" doctrine, the economic loss doctrine and the rule that a claim for unjust enrichment cannot stand where an express contract between the parties governs the transfer at issue. The Court must therefore conduct a choice of law analysis to determine whether Pennsylvania or Alaska law applies if it determines that the claims cannot be dismissed for want of plausible factual allegations to support their elements. Analysis under Pennsylvania's choice of law rules leads to the application of Pennsylvania law, the implementation of Pennsylvania's defensive doctrines, and the resulting dismissal of Plaintiff's claims.

*A. The Policy's Choice Of Law Clause Does Not Govern The Tort Claims*

As a threshold matter, the Policy's choice of law clause selecting Alaska law to govern the contract does *not* govern Plaintiff's remaining tort claims. Under Pennsylvania law, where a choice of law provision is narrowly drafted to apply to the terms of the contract, the provision is limited to a plaintiff's contract claims. *Lincoln Benefit Life Co.*, 2009 U.S. Dist. LEXIS 24941, at *19 (holding that "[w]hile contractual claims are governed by choice of law provisions contained in an insurance contract, said provisions, 'do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship'") (citing *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994)).

The Policy's choice of law clause reads: "This Contract . . . is governed by the laws of the Governing Jurisdiction," which the parties agree is Alaska. Policy, pp. 1, 3, 9. Courts applying Pennsylvania law routinely hold that clauses substantively identical to this one do not apply to tort claims. *Black Box Corp. v. Markham*, 127 Fed. App'x 22, 25-26 (3d Cir. 2005) (holding that arbitral panel did not manifestly disregard the law when it determined that provision stating that "*this agreement* will be governed by, and construed and enforced in accordance with the laws of [Pennsylvania]," did not cover claimant's non-contractual claim) (emphasis in original); *Lincoln Benefit Life Co.*, 2009 U.S. Dist. LEXIS 24291, at *19-20 (holding that provision stating "*this policy* is subject to the laws of the state where the app [sic] was signed," clearly covered only contract claims) (emphasis in original) (citations omitted); *Grimm v. Discover Fin. Serv.*, Civ. A. Nos. 08-747, 08-832, 2008 U.S. Dist. LEXIS 89709, 2008 WL 4821695, at *21-26 (W.D. Pa. Nov. 4, 2008)) (holding that provision stating "[t]his Agreement will be governed by the laws of [Delaware] and applicable federal laws" did not cover tort claims); *Coram Healthcare Corp. v. Aetna U.S. Healthcare*, 94 F. Supp. 2d 589, 593

(E.D. Pa. 1999) (holding that provision stating "This Agreement shall be governed by the laws of [Delaware]" was not broadly drafted to apply to tort claims).

*B. The Conflict Between Pennsylvania And Alaska Law: Pennsylvania's Defensive Doctrines*

Pennsylvania's "gist of the action" doctrine, which applies to Plaintiff's fiduciary duties, negligence and negligent misrepresentation claims, bars claims in tort "when the parties' obligations are defined by the terms of [a contract] and not by the larger social policies embodied in the law of torts." *Rock v. Voshell*, 397 F. Supp. 2d 616, 627 (E.D. Pa. 2005). Alaska law does not appear to contain a doctrine as broad as Pennsylvania's, although Alaska's courts do frown on plaintiffs attempting to disguise contractual claims as torts. *Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 946 (Alaska 1990) ("[p]romises set forth in a contract must be enforced by an action on that contract"); *see also Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 664 (3d Cir. 1993) ("breach of contract, without more, is not a tort"). Here, the entirety of the parties' relationship was governed by the Policy and PPMs. Plaintiff's remaining claims simply recast its already-dismissed breach of contract claim, which similarly sought to thrust liability on AGL for breach of a duty not provided for and fundamentally at odds with the parties' express contract. The "gist of the action" doctrine, if applicable, clearly forecloses this gambit. *Specialty Ins. v. Royal Indem. Co.*, 324 F. Supp. 2d 674, 678 n.5 (E.D. Pa. 2004) (dismissing negligence claim arising from same set of facts as contract claim under "economic loss" and "gist of the action" doctrines); *Atchison Casting Corp. v. Deloitte & Touche, LLP*, No. 003193, 2003 WL 1847665, at *3 (Pa. Com. Pl. Mar. 14, 2003) (contribution claim dismissed because "gist of the action" doctrine barred tort cause of action where third party defendants' alleged fiduciary duties arose out of their employment relationship, which was governed by contract with third party plaintiff); *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*,

246 F. Supp. 2d 394, 402-03 (E.D. Pa. 2002) (dismissing on summary judgment negligent misrepresentation claims under "economic loss" and "gist of the action" doctrines); *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999) ("gist of the action doctrine" bars a tort claim "when that theory is 'merely another way of stating its breach of contract claim . . .'") (citations omitted).

Pennsylvania's economic loss doctrine, which applies to Plaintiff's negligence and negligent misrepresentation claims, provides that "'no cause of action [can] be maintained in tort for negligence or strict liability where the only injury [is] economic loss—that is, loss that is neither physical injury nor damage to tangible property.'" *Rock*, 397 F. Supp. at 627 (citing *2-J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997)); *see also Specialty Ins.*, 324 F. Supp. 2d at 678 n.5 (dismissing negligence claim arising from same set of facts as contract claim under "economic loss" and "gist of the action" doctrines); *Blue Mountain Mushroom Co.*, 246 F. Supp. 2d at 402-03 (dismissing on summary judgment negligent misrepresentation claims under "economic loss" and "gist of the action" doctrines). Alaska has rejected the economic loss doctrine. *Mattingly v. Sheldon Jackson Coll.*, 743 P.2d 356, 359-61 (Alaska 1987). Plaintiff alleges no injuries other than the reduced value of its Policy account, and thus, the negligence-based claims would be barred under Pennsylvania law.

Pennsylvania law forbids the maintenance of an unjust enrichment claim where the substance of the claim is governed by an express contract between the parties. An unjust enrichment claim asks the court to imply a "'quasi-contract' [which] imposes a duty 'not as the result of any agreement, whether express or implied, but in spite of the absence of an agreement' where the circumstances demonstrate that it would be inequitable for the defendant to retain the benefit conferred without payment." *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. Ct.

2004) (citations omitted). As such, "[a] plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties." *Alpart*, 574 F. Supp. 2d at 507 (citation omitted); *Villoresi*, 856 A.2d at 84. Alaskan courts do not appear to have articulated this doctrine.

Plaintiff's argument that the existence of the parties' express agreement is not fatal to its unjust enrichment claim because the fees at issue somehow fell outside of the parties' contractual relationship is meritless. The sole supporting allegation (which Plaintiff improperly presented for the first time in its opposition brief) is that "[t]he Policy and PPM did not set forth what Defendant was to do in exchange for the management fees." P.Mem. 34. As discussed *supra* at pp. 11-12, it is undisputed that the "management fees" about which Plaintiff complains were disclosed in the Policy and AGL PPM. Regardless of how clearly their purposes were described, the fees indisputably were disclosed and called for by the parties' express agreement, and therefore, Plaintiff's unjust enrichment claim cannot be sustained.[5]

*C. Pennsylvania Is Interested In The Application Of Its Defensive Doctrines In This Case*

Pennsylvania's defensive doctrines protect defendants from duplicative claims that seek tort damages where the cause of action appropriately sounds in contract. *See Blue Mountain Mushroom Co.*, 246 F. Supp. 2d at 402 ("Like the economic loss doctrine, the gist of the action doctrine's purpose is 'maintaining the separate spheres of the law of contract and tort.'"); *Rock*, 397 F. Supp. 2d at 627 ("the economic loss doctrine prohibits plaintiffs from recovering in tort

[5] Plaintiff mistakenly relies on *Essex Ins. Co. v. RMJC, Inc.*, 306 Fed. App'x 749 (3d Cir. 2009). In *Essex*, the court allowed an insurer's claim for restitution against an insured for reimbursement of payments the insurer made without obligation on behalf of the defendant because the parties' "contract was silent on the question of reimbursement for unobligated payments." *Essex Ins. Co.*, 306 Fed. App'x at 753. The defendant in that case apparently did not dispute that it was unjustly enriched by the plaintiff's payments. *Id.* Here, unlike in *Essex*, the payments at issue were covered by the parties' express, written agreement, and there is consequently nothing inequitable about AGL's retention of them.

economic losses to which their entitlement flows only from a contract"); *Alpart*, 574 F. Supp. 2d at 507 ("A plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties.") (citations omitted). Pennsylvania has a clear interest in providing the benefit of these defensive doctrines to AGL, a Pennsylvania defendant, in a case that, as described below, predominantly involves accounts and conduct in Pennsylvania. On the other hand, Alaska's contacts with this case are tenuous, and that jurisdiction has little interest in forbidding the application of Pennsylvania's doctrines in this case.

*D. Pennsylvania Has The Most Significant Connections To The Action, Whereas Alaska's Connections Are Minimal*

In case of a true conflict between two states' articulations of a tort, Pennsylvania courts generally assess the action's connections to the states according to the contacts described in Restatement 2d. §145. *Zavecz*, 179 Fed. App'x at 120 (citing *Troxel v. A.I. duPont Inst.*, 636 A.2d 1179, 1180-81 (Pa. Super. Ct. 1994)). Section 145 provides that the following contacts generally should be considered in the analysis for tort claims: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971). In the alternative, if the Restatement 2d. contains a section more tailored to a particular tort, a court may analyze the jurisdictional connections through the lens of the more specific section. Plaintiff has suggested the applicability of Restatement 2d. §148, which covers "Fraud and Misrepresentation," to its negligent misrepresentation claim. Section 148 directs courts to look at the following contacts: "(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil,

residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." *Id.* at § 148.

Although analysis under either section 145 or 148 supports the application of Pennsylvania law, section 145, the general section for torts, provides the most appropriate standard for this case, the existence of Plaintiff's negligent misrepresentation claim notwithstanding. Section 148 is of little relevance here because the affirmative elements of the negligent misrepresentation tort are, in relevant respects, the same in each jurisdiction. Rather, at issue is the availability of Pennsylvania's defensive doctrines to Plaintiff's various tort claims.

Under section 145, both the quantity and quality of Pennsylvania's contacts with this case require application of Pennsylvania law. Pennsylvania is the place where the alleged injury occurred, as it is the situs of the Variable Account and Investment Account that were allegedly devalued improperly (Policy, pp. 5, 9). Pennsylvania is also the place where the alleged conduct causing the alleged injury occurred because AGL's administration of the Policy and its accounts took place in Pennsylvania, and AGL issued its communications from this state. Pennsylvania is also the place of incorporation and place of business of the Defendant, AGL, giving Pennsylvania a primary interest in having AGL's conduct regulated by Pennsylvania statutes, rules and commerce law. AGL executed the Policy in Pennsylvania, and issued endorsements to the Policy from this state. Policy, p. 1; Am. Compl., Ex. A, pp. 56-58. Plaintiff also sent its Policy premiums to Pennsylvania.

By comparison, Alaska is relevant only because it is the place of the Policy's delivery and the residence of the Rulle Trust. Yet, while the Trust is legally sited in Alaska, none of the

material contacts relating to the Trust's purchase of the Policy relate to that state. To the contrary, as the Application (Am. Compl. Ex. A, pp. 59-64) and Trust instrument[6] demonstrate: (1) Michael Rulle and his wife were residents of New Jersey at the time the application for the Policy was sent to Pennsylvania; (2) while the initial application for the Policy was submitted in April 2001, the Trust was not formed until September 27, 2001 for the purpose of holding insurance policies, just days before the Policy was issued and delivered but long after the alleged misrepresentations emanated from Pennsylvania; (3) the only Alaska resident was the Administrative Trustee; (4) subject to certain restrictions, Michael Rulle had power during his lifetime to distribute net income and principal to the beneficiaries of the Trust, which included himself, his wife and children, none of whom was in Alaska; and (5) with the exception of the Alaska Trust Company, the parties to the agreement executed it outside of Alaska. Not least important, even on Rulle's account of events, he began considering an investment in the Tremont Fund through a variable policy long before the Trust was created. AGL's communications with Rulle about the policy under consideration issued from Pennsylvania while Rulle resided in New Jersey. *See* Rulle Aff. ¶¶10-11.

As discussed *supra*, application of Restatement 2d.§ 148 for Plaintiff's negligent misrepresentation claims is not appropriate in this case. Nevertheless, analysis of the quality of the jurisdictional contacts, even under section 148, yields a result favoring the application of Pennsylvania law. Although the Policy was formally issued to the Rulle Trust in Alaska, the Trust is not alleged to have ever actually received the alleged misrepresentations, nor did the Trust make the decision to invest in the Policy. Rather, Rulle, who did not reside in Alaska, was the person who allegedly received the alleged misrepresentations from Pennsylvania, and it was

[6] The Michael S. Rulle Family Dynasty Trust Agreement of 2001 was exhibited at Mem. Ex. 6 for the purposes of choice of law analysis only.

Rulle who chose to invest in a Policy issued by a Pennsylvania insurer. The alleged misrepresentations were made on telephone calls by John Hillman that issued from Pennsylvania, which is AGL's domicile and place of business. The tangible things at the heart of the dispute—the Variable Account and the Investment Account—which lost value when Tremont suffered losses, were located in Pennsylvania. Finally, Plaintiff rendered performance under the Policy through payments of premiums and fees sent to AGL in Pennsylvania.

Whether analyzed solely under §145, or under both §145 and §148, in view of the minimal, non-material contacts with Alaska, and the axis of contacts with Pennsylvania, Pennsylvania law should govern all of Plaintiff's remaining tort claims. Consequently, the gist of the action doctrine bars Plaintiff's fiduciary duties, negligence and negligent misrepresentation claims; the economic loss doctrine alternatively bars the negligence and negligent misrepresentation claims; and the unjust enrichment claim is precluded because an express written contract covers the transfers at issue.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the remainder of the Amended Complaint be dismissed.

Dated: July 28, 2010

Respectfully submitted,

/s

Mathieu J. Shapiro
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pennsylvania 19103-1895
Phone: (215) 665-3000
Fax: (215) 665-3165

*Attorneys for Defendant, AGL Life Assurance Company*

-- and --
Of Counsel:
Joseph P. Moodhe
John C. Dockery
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
Fax: (212) 909-6836

**CERTIFICATE OF SERVICE**

I, Mathieu J. Shapiro, hereby certify that a true and correct copy of the foregoing Defendant AGL Life Assurance Company's Motion to Dismiss was electronically filed on July 28, 2010 using CM/ECF which will send notification of such filing to the following counsel of record:

Nicholas Noel, III
nnoel@noelandkovacs.com

William R. Connelly
wconnelly@connellylaw.net

/s
______________________________
MATHIEU J. SHAPIRO