IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MICHAEL S. RULLE | : | |
| FAMILY DYNASTY TRUST, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AGL LIFE ASSURANCE COMPANY, | : | No. 10-231 |
| Defendant. | : | |

# MEMORANDUM

**Schiller, J.**                                                                                                   September 8, 2010

The Michael S. Rulle Family Dynasty Trust ("Rulle Trust") is the contract holder of a life insurance policy ("the Policy") issued by Defendant AGL Life Assurance Company ("AGL") on which Michael S. Rulle is the named insured. The value of Plaintiff's account decreased significantly when Plaintiff's premiums ultimately ended up in the hands of Bernard Madoff. The Amended Complaint alleged violations of federal and state securities laws, breach of contract, breach of fiduciary duty, negligence, negligent misrepresentation, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. In a Memorandum dated July 7, 2010, the Court dismissed a number of claims against AGL for failure to state a claim. However, the Parties disputed whether Alaska or Pennsylvania law applied to a number of claims. The Court ordered additional briefing to properly determine if: (1) the law of Alaska and Pennsylvania differ with respect to Plaintiff's negligence, breach of fiduciary duty, and unjust enrichment claims; and (2) assuming the laws differ, which state's law should apply to each of these claims. The Court will now dismiss the remainder of Plaintiff's Amended Complaint for failure to state a claim.[1]

---

[1] The Court recited the relevant facts in its Memorandum of July 7, 2010, and will not repeat those facts in this Memorandum.

**I.     DISCUSSION**

    **A.     Choice of Law**

Because this Court is exercising diversity jurisdiction over the claims, the Court must apply the choice of law rules of the forum state, Pennsylvania. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania choice of law rules require courts to apply a flexible three-step test combining the "governmental interest analysis" with the Restatement (Second) of Conflicts approach. *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219-20 (3d Cir. 2005). First, a court must decide whether there is an actual or real conflict between the potentially applicable laws. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (citing *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 272 F. Supp. 2d 482, 490 n.9 (E.D. Pa. 2003)). If the result would be the same regardless of which jurisdiction's law applied, no conflict exists and a choice of law analysis is unnecessary. *Id*. If, however, there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as "true," "false," or "unprovided-for." *Id*. A false conflict exists if "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws." *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). An "unprovided-for" case exists if neither state's interests would be impaired if its laws were not applied. *Garcia*, 421 F.3d at 220. Only if a true conflict exists does the court turn to the third step and conduct a more extensive choice of law analysis. *Hammersmith*, 480 F.3d at 230 (citing *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)). A true conflict exists if "both jurisdictions' interests would be impaired by the application of the other's laws." *Id*. If a true conflict exists, the court must decide which state has the "greater interest in the application of its law." *Id*. at 231 (quoting *Cipolla*, 267 A.2d at 856).

When faced with a choice of law analysis on a tort claim, the relevant factors to consider include the place of injury, the location where the injury-causing conduct occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship between the parties is centered. *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 91 n.4 (3d Cir. 2008).

Because the Court finds that Plaintiff's claims would fail under both Alaska and Pennsylvania law, no conflict of law exists and a choice of law analysis is unnecessary.

### B.  Unjust Enrichment

The elements of an unjust enrichment claim under Alaska and law are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof. *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987). Under Alaska law, however, unjust enrichment does not depend on any actual contract or agreement between the parties, either objective or subjective. *Darling v. Standard Alaska Prod. Co.*, 818 P.2d 677, 679 (Alaska 1991).

The elements of unjust enrichment under Pennsylvania law are the same as those under Alaska law. *Cf. Sovereign Bank v. B.J.'s Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (citing *Limbach Co. v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006)). Under Pennsylvania law, however, it is well established that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton,* 895 A.2d 1250, 1254 (Pa. 2006); *Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa. 1945). The doctrine of

unjust enrichment applies only to situations where there is no legal contract. *Wingert v. T.W. Phillips Gas & Oil Co.*, 157 A.2d 92, 94 (Pa. 1959). Here, it is undisputed that the relationship between the parties is founded upon a written contract. Thus, under Pennsylvania law, Plaintiff is not entitled to any remedy under the doctrine of unjust enrichment and its claim fails as a matter of law.

The unjust enrichment claims also fails on the merits under both Alaska and Pennsylvania law. The claim stems from AGL benefitting financially "from its unlawful acts as it collected improper management fees based upon the Policy's net asset values." (Am. Compl. ¶ 119.) Plaintiff does not further elaborate on these "improper management fees." As this Court held in its previous Memorandum, AGL committed no "unlawful acts" nor did it breach its contract by incorrectly valuing Plaintiff's account. Thus, Plaintiff is unable to point to any benefit it conferred on Defendant that it would be inequitable for AGL to retain.

B. **Breach of Fiduciary Duty**

Plaintiff's breach of fiduciary duty claim rests upon whether a fiduciary relationship existed between it and AGL. *See Health Robotics, LLC v. Bennett*, Civ. A. No. 09-627, 2009 WL 5033966, at *2 (E.D. Pa. Dec. 22, 2009) ("In order to state a claim for breach of fiduciary duty, a plaintiff must show, first, that a fiduciary relationship existed between the parties.") (citing *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1119-22 (Pa. 2000)). Under Pennsylvania law, a fiduciary relationship does not rest on a specific association between the parties. *See Vicki M. v. Ne. Educ. Intermediate Unit*, 689 F. Supp. 2d 721, 739 (M.D. Pa. 2009) (citing *Leedom v. Palmer*, 117 A. 410, 411 (Pa. 1922)). Rather, a fiduciary relationship exists upon a showing that the parties have "reposed a special confidence in each another to the extent that the parties do not deal with each other on equal terms." *Brandow Chrysler Jeep Co. v. Datascan Techs.*, 511 F. Supp. 2d 529, 538-39 (E.D. Pa. 2007)

(quoting *In re Clark's Estate*, 359 A.2d 777, 781 (Pa. 1976)). "The special confidence required of the parties can be satisfied by 'an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other.'" *Id*. at 539 (quoting *Clark's Estate*, 359 A.2d at 781). Pennsylvania law is clear that a fiduciary relationship does not exist merely because one party relies on the superior skill of another. *See eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22-23 (Pa. Super. Ct. 2002). "[T]he critical question is whether the relationship goes **beyond** mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side." *eToll*, 811 A.2d at 23 (quoting *Basile*, 777 A.2d at 101) (emphasis in original). "A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power." *Id*. (citing *Basile*, 777 A.2d at 102).

Plaintiff asserts a number of bases for its assertion that a fiduciary relationship existed between the Rulle Trust and AGL. First, Plaintiff claims that every insurance policy gives rise to a fiduciary duty under Alaska law. (Pl.'s Mem. of Law in Accordance with the Court's Order [Pl.'s Supplemental Mem.] at 5.) As this Court stated in its previous Memorandum, this case does not involve an insurance dispute and the policy reasons Alaska courts have outlined for finding a fiduciary duty in insurance policies is inapplicable in this context.

Plaintiff's breach of fiduciary duty claim, as outlined in the Amended Complaint, rests on the exclusive control AGL purportedly exercised over the investment account. But, as made clear by the Court in its previous Memorandum, AGL did not maintain exclusive control over the investment decisions. *Michael S. Rulle Family Dynasty Trust v. AGL Life Assurance Co.*, Civ. A.

No. 10-231, 2010 WL 2721029, at **9, 12 (E.D. Pa. July 7, 2010). The Parties are sophisticated entities that entered into a complicated financial relationship. Indeed, Rulle created the Rulle Trust solely for the purpose of purchasing the Policy. The Policy was available only to a select group of persons and entities that met certain qualifications. Rulle determined where his premiums would be directed. As a matter of law, the Court sees no basis for holding that the Parties entered into a fiduciary relationship.

Plaintiff also claims that AGL owed it a fiduciary duty by virtue of its status as an investment adviser and/or broker-dealer. But the Amended Complaint alleges that AGL is "an insurance and financial services organization." (Am. Compl. ¶ 3.) The Rulle Trust attempts to paint AGL as a broker-dealer by virtue of its alleged ties to Phoenix Equity Planning Corporation, a broker-dealer licensed by the SEC. (*Id*. ¶ 4.) "Both Defendants AGL and Phoenix Equity are sister companies under common control by the same holding company." (*Id*. ¶ 5.) According to the Amended Complaint, AGL sells its variable life insurance securities products through Phoenix Equity as the licensed broker-dealer; AGL and Phoenix Equity are thus "joint actors and alter egos of each other." (*Id*. ¶¶ 6, 9.)

Phoenix Equity is not a party to this action and Plaintiff's mere speculation that AGL can serve as a substitute for Phoenix Equity because its shares certain directors and officers is insufficient to withstand a motion to dismiss. Furthermore, the Amended Complaint includes no allegations that Phoenix Equity played any role in Plaintiff's policy. Thus, Plaintiff's attempt to characterize AGL as a broker-dealer by reference to another broker-dealer that is not before the Court and played no role in the events underlying this litigation is insufficient to create a duty. The Rulle Trust's breach of fiduciary duty claim fails regardless of whether Pennsylvania or Alaska law

applies.

    **C.    Negligence Claims**

The Parties agree that the laws of Alaska and Pennsylvania are similar with respect to Plaintiff's negligence and gross negligence claims. (*Compare* Pl.'s Supplemental Mem. at 10 ("Pennsylvania law with respect to negligence and gross negligence is similar to that of Alaska.") *with* Def.'s Mem. on Choice of Law in Supp. of Mot. to Dismiss Am. Compl. [Def.'s Supplemental Mem.] at 8 ("Under both Pennsylvania and Alaska law, to support a claim for negligence, including gross negligence and professional negligence, Plaintiff must allege facts showing that AGL owed and breached a duty to Plaintiff.").)

To recover for negligence under Pennsylvania law, a plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach resulted in injury to the plaintiff; and (4) the plaintiff suffered an actual loss or damage. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). Gross negligence is defined as "a want of even scant care, but something less than intentional indifference to consequences of actions." *Fid. Leasing Corp. v. Dun & Bradstreet, Inc.*, 494 F. Supp. 786, 790 (E.D. Pa.1980). "Gross negligence also has been defined as 'a failure to perform a duty in reckless disregard of the consequences or with such want of care and regard for the consequences as to justify a presumption of willfulness of wantonness.'" *Royal Indem. Co. v. Sec. Guards, Inc.*, 255 F. Supp. 2d 497, 505 (E.D. Pa. 2003) (quoting *Williams v. State Civil Serv. Comm'n*, 306 A.2d 419, 422 (Pa. Commw. Ct. 1973)). Gross negligence demands a finding of an extreme departure from ordinary care. *Id*. Regardless of how the negligence claim is framed, a plaintiff must establish a breach of a legal duty as a condition precedent to a finding of negligence. *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. Ct. 2005).

Under Alaska law, a cause of action for negligence requires the plaintiff to prove that: (1) the defendant owed him a duty; (2) the defendant breached that duty; (3) that he was injured; and (4) the breach of duty was the proximate cause of his injury. *Edenshaw v. Safeway, Inc.*, 186 P.3d 568, 571 (Alaska 2008).

Plaintiff cannot sustain any type of negligence claim against AGL for the same reason it cannot sustain a breach of fiduciary duty claim against AGL: absent a showing that Defendant owed Plaintiff a duty, there is no basis to impose tort liability upon AGL.

### D. Negligent Misrepresentation

The elements of a negligent misrepresentation claim under Pennsylvania law are: (1) a misrepresentation of a material fact; (2) made under circumstances under which the defendant should have known of its falsity; (3) with an intent to induce action upon the misrepresentation; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005). Alaska law requires the following to establish a negligent misrepresentation claim: (1) the party accused of the misrepresentation must have made the statement in the course of his business, profession or employment, or in any other transaction in which he had a pecuniary interest; (2) the representation must supply false information; (3) there must be justifiable reliance on the false information supplied; and (4) the accused party must have failed to exercise reasonable care or competence in obtaining or communicating the information. *Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 670-71 (Alaska 2002).

Plaintiff's claim fails under either iteration. The Amended Complaint contains no well-pled allegations that Defendant made any false statements, let alone that it was aware, or should have

been aware that it made any false misrepresentations. Plaintiff points to two specific representations in its Amended Complaint upon which it rests its negligent misrepresentation claim: (1) "Among the facts concealed by Defendant was the fact that approximately 23% of Plaintiff's account had been invested in a single fund. The Defendant had affirmatively represented that a significantly less percentage of the aggregate of such funds would be invested with any one investment manager;" and (2) "Defendant further misled, misrepresented and deceived Plaintiff by referring to the Madoff accounts as 'equity market neutral' when they were not." (Am. Compl. ¶¶ 114-15.) The problem with Plaintiff's negligent misrepresentation claim is that the record clearly indicates that Defendant did not make the ultimate decision to invest with Madoff and it was Madoff's illegal acts that caused a decrease in the value of the investment account. Furthermore, the documents in this case reveal that Defendant guaranteed no set percentage of diversification. The Court can discern no false statement made by AGL that resulted in injury to Plaintiff because the injury was attributable to Madoff's conduct.

## II.   CONCLUSION

For the reasons stated above, the Court will dismiss the remainder of Plaintiff's claims. An Order consistent with this Memorandum will be docketed separately.